**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Lynchburg Division**

| | |
|---|---|
| **ELLENOR ZINSKI** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **LIBERTY UNIVERSITY, INC.** | ) |
| | ) |
| **Defendant.** | ) |

Civil Action No. 6:24-cv-41-NKM

**<u>PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT LIBERTY UNIVERSITY, INC.'S MOTION TO DISMISS</u>**

## <u>TABLE OF CONTENTS</u>

**INTRODUCTION** ........................................................................................................... 1

**STATEMENT OF FACTS** ............................................................................................. 1

**STANDARD OF REVIEW** ........................................................................................... 2

**ARGUMENT** ................................................................................................................. 3

    I.   The Court should not consider the exhibits attached to Liberty's Memorandum of Law in Support of Motion to Dismiss because they are not integral to the Complaint and not dispositive of the Motion to Dismiss ........................................................................... 3

    II.   A plain reading of Section 702, case law, and its legislative history definitively prohibits Liberty from discriminating against Ms. Zinski ................................................................ 4

        A.   Courts have uniformly held that the Section 702 exception only allows for discrimination based on religion, not on the basis of any other protected class ..................... 5

        B.   Ms. Zinski alleges sex-based discrimination that Liberty cannot recharacterize as religious discrimination. ....................................................................................... 7

    III.   Similar to Section 702, Section 703 permits religious institutions to discriminate on the basis of religion, not sex ............................................................................................... 10

    IV.   The Ecclesiastical Abstention Doctrine is inapplicable ........................................... 12

    V.   Plaintiff's claim is not barred by the Religious Freedom Restoration Act ............... 14

        A.   RFRA does not apply in cases between private parties ................................. 14

        B.   Even if RFRA did apply in this case, Title VII survives RFRA's strict scrutiny analysis. .......................................................................................................... 17

    VI.   The ministerial exception does not apply to Plaintiff ............................................... 20

        A.   The ministerial exception is an affirmative defense and should be resolved no earlier than the summary judgment stage ........................................................................... 21

        B.   Nothing in the factual record before the Court establishes the Plaintiff as a minister for purposes of the exception ..................................................................................... 23

        C.   This Court is not required to hold an evidentiary hearing on whether Ms. Zinski is a "minister." Doing so will unnecessarily duplicate discovery efforts .................................. 25

    VII.   Defendant does not have an Expressive-Association right to discriminate against non-ministerial employees on the basis of sex ........................................................................ 27

        A.   An employer-employee relationship is not an Expressive Association ......................... 28

        B.   Any burden on Defendant's Expressive Association satisfies strict scrutiny .............. 31

**CONCLUSION** ........................................................................................................... 33

## **TABLE OF AUTHORITIES**

**Cases**

*Adams v. Bain*, 697 F.2d 1213 (4th Cir. 1982) ............................................................. 26

*Alicea-Hernandez v. Archdiocese of Chicago*, No. 01 C 8374, 2002 WL 598517 (N.D. Ill. Apr.

18, 2002)......................................................................................................................... 23

*Alicea-Hernandez v. Cath. Bishop of Chicago*, 320 F.3d 698 (7th Cir. 2003) ............................. 23

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................................ 3

*Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. Four-C-Aire, Inc.*, 929 F.3d 135 (4th

Cir. 2019) ....................................................................................................................... 3

*Bear Creek Bible Church v. EEOC*, 571 F. Supp. 3d 571 (N.D. Tex. 2021) .............................. 29

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................................ 2

*Bell v. Presbyterian Church (U.S.A.)*, 126 F.3d 328 (4th Cir. 1997)......................................... 21

*Billard v. Charlotte Catholic High* 3:17-CV-00011, 2021 WL 4037431 (W.D. N.C. Sept. 3,

2021)............................................................................................................................ passim

*Billard v. Charlotte Catholic High Sch.*, 101 F.4th 316 (4th Cir. 2024) ..................... 7, 10, 17, 19

*Bostock v. Clayton County*, 590 U.S. 644 (2020) ............................................................ passim

*Boy Scouts of Am. v. Dale*, 530 U.S. 640 (2000) ............................................................ 27, 29

*Braidwood Mgmt., Inc. v. EEOC*, 70 F.4th 914 (5th Cir. 2023)............................................... 29

*Brooks v. Branham*, 675 F. Supp. 3d 624 (W.D. Va. 2023) ...................................................... 26

*Bryce v. Episcopal Church in Diocese of Colorado*, 121 F. Supp. 2d 1327 (D. Colo. 2000) ...... 27

*Bryce v. Episcopal Church in the Diocese of Colorado*, 289 F.3d 648 (10th Cir. 2002)............. 27

*Burwell v. Hobby Lobby*, 573 U.S. 682 (2014)....................................................................... 18, 32

*Califano v. Roman Cath. Diocese of Rockville Ctr., New York*, No. 24-CV-04346, 2024 WL
4276170 (E.D.N.Y. Sept. 24, 2024) ........................................................................ 13

*Christians v. Crystal Evangelical Free Church*, 521 U.S. 1114 (1997) ....................................... 15

*Corp. of Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints v. Amos*, 483 U.S.
327 (1987) .............................................................................................................. 4

*Darren Patterson Christian Acad. v. Roy*, 699 F. Supp. 3d 1163 (D. Colo. 2023) ...................... 29

*Davis v. Baltimore Hebrew Congregation*, 985 F. Supp. 2d 701 (D. Md. 2013) ......................... 20

*Demkovich v. St. Andrew the Apostle Par., Calumet City*, 3 F.4th 968 (7th Cir. 2021) ............... 23

*DeWeese-Boyd v. Gordon Coll.*, 487 Mass. 31 (2021) ................................................................ 24

*Doe v. Cath. Relief Servs.*, 618 F. Supp. 3d 244 (D. Md. 2022) ........................................... passim

*Dole v. Shenandoah Baptist Church*, 899 F.2d 1389 (4th Cir. 1990) .............................. 19, 21, 33

*E.E.O.C. v. Roman Cath. Diocese of Raleigh, N.C.*, 48 F. Supp. 2d 505 (E.D.N.C. 1999) ......... 23

*Edwards v. City of Goldsboro*, 178 F.3d 231 (4th Cir. 1999) ......................................................... 3

*EEOC v. Catholic Univ. Of Am.*, 83 F.3d 455 (D.C. Cir. 1996) .................................................. 16

*EEOC v. Freemont Christian Sch.*, 781 F.2d 1362 (9th Cir. 1986) ................................................ 9

*EEOC v. Pacific Press Pub. Assoc.*, 676 F.2d 1272 (9th Cir. 1982) ............................................. 9

*EEOC v. R.G. &. G.R. Harris Funeral Homes, Inc.*, 884 F.3d 560 (6th Cir. 2018) ..................... 32

*EEOC v. Roman Cath. Diocese of Raleigh, N.C.*, 213 F.3d 795 (4th Cir. 2000) ....... 12, 19, 25, 28

*Ference v. Roman Cath. Diocese of Greensburg*, No. CV 22-797, 2023 WL 3876584 (W.D. Pa.
Jan. 18, 2023) ........................................................................................................ 13

*Fitzgerald v. Roncalli High Sch., Inc.*, 73 F. 4th 529 (7th Cir. 2023) ........................................... 8

*Garrick v. Moody Bible Inst.*, 494 F. Supp. 3d 570 (N.D. Ill. 2020) ............................................. 9

*Gen. Conf. Corp. of Seventh-Day Adventists v. McGill*, 617 F.3d 402 (6th Cir. 2010) .......... 15, 16

*Goddard v. Apogee Retail LLC*, No. 19-cv-3269-DKC, 2021 WL 2589727 (D. Md. June 24, 2021) .................................................................................................... 17

*Goodman v. Archbishop Curley High Sch.*, 149 F. Supp. 3d 577 (D. Md. 2016) ...................... 20

*Hall v. Baptist Mem'l Health Care Corp.*, 215 F.3d 618 (6th Cir. 2000) ................................... 11

*Hall v. DIRECTV, LLC*, 846 F.3d 757 (4th Cir. 2017) ................................................................. 3

*Hammons v. Univ. of Maryland Med. Sys. Corp.*, 649 F. Supp. 3d 104 (D. Md. 2023) .............. 17

*Hankins v. Lyght*, 441 F.3d 96 (2d Cir. 2006) ............................................................................. 16

*Hayth v. VA Veterans Care Ctr.*, No. 7:23-CV-757, 2024 WL 4165084 (W.D. Va. 2024) .......... 2

*Heretick v. Amberley Shipping Corp.*, 227 F. Supp. 2d 575 (E.D. Va. 2002) .............................. 4

*Herx v. Diocese of Ft. Wayne-South Bend Inc.*, 48 F. Supp. 3d 1168 (N.D. Ind. 2014) ........... 8, 9

*Hishon v. King & Spalding*, 467 U.S. 69 (1984) .................................................................. 28, 30

*Holloway v. Pagan River Dockside Seafood, Inc.*, 669 F.3d 448 (4th Cir. 2012) ........................ 2

*Holt v. Hobbs*, 574 U.S. 352 (2015) .................................................................................... 14, 17

*Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171 (2012) ....... passim

*In re Schoenewerk*, 304 B.R. 59 (Bankr. E.D.N.Y. 2003) ......................................................... 15

*In re Young*, 82 F.3d 1407 (8th Cir. 1996) ................................................................................. 15

*Kedroff v. Saint Nicholas Cathedral of Russian Orthodox Church in N. Am.*, 344 U.S. 94 (1952)

.................................................................................................................................. 12, 13

*Kennedy v. St. Joseph's Ministries, Inc.*, 657 F.3d 189 (4th Cir. 2011) ............................... 5, 6, 10

*Kerns v. United States*, 585 F.3d 187 (4th Cir. 2009) ................................................................. 26

*King v. Rubenstein*, 825 F.3d 206 (4th Cir. 2016) ...................................................................... 3

*Liberty Univ., Inc. v. Bowes*, 144 S. Ct. 1030 (2024) ........................................................... 21, 22

*Listecki v. Official Comm. Of Unsecured Creditors*, 780 F.3d 731 (7th Cir. 2015) .............. 15, 16

*Little v. St. Mary Magdalene Parish*, 739 F. Supp. 1003 (W. D. Pa. 1990). ................................. 8

*Little v. Wuerl*, 929 F.2d 944 (3d Cir. 1991) ................................................................................... 8

*Longo v. Regis Jesuit High Sch. Corp.*, No. 02-CV-001957-PSF-OES, 2006 WL 197336 (D.

    Colo. Jan. 25, 2006) ...................................................................................................... 26

*Mahoney v. Doe*, 642 F.3d 1112 (D.C. Cir. 2011) ........................................................................ 18

*McCallum v. Billy Graham Evangelistic Ass'n*, 824 F. Supp. 2d 644 (W.D.N.C. 2011) ............. 20

*McClure v. Salvation Army,* 460 F.2d 553 (5th Cir. 1972) ............................................................ 23

*McMahon v. World Vision, Inc.*, 704 F. Supp. 3d 1121 (W.D. Wash. 2023) ............................... 30

*Natal v. Christian & Missionary All.*, 878 F.2d 1575 (1st Cir. 1989) .......................................... 23

*Norwood v. Harrison*, 413 U.S. 455 (1973) ................................................................................. 30

*Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 591 U.S. 732 (2020) .................... 21, 22, 23, 25

*Palmer v. Liberty Univ., Inc.*, 72 F.4th 52 (4th Cir. 2023) ...................................................... 21, 22

*Patsakis v. Greek Orthodox Archdiocese of Am.*, 339 F. Supp. 2d 689 (W.D. Pa. 2004) ........... 26

*Petruska v. Gannon Univ.*, 462 F.3d 294 (3d Cir. 2006) ............................................................... 10

*Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176 (4th Cir. 2009) (emphasis added) ...................... 4

*Preece v. Covenant Presbyterian Church*, No. 8:13CV188, 2015 WL 1826231 (D. Neb. Apr. 22,

    2015) ............................................................................................................................. 26

*Ray v. Roane*, 948 F.3d 222 (4th Cir. 2020) .................................................................................. 3

*Rayburn v. General Conference of Seventh-Day Adventists*, 772 F.2d 1164 (4th Cir. 1985)

    .................................................................................................................. passim

*Richardson v. Nw. Christian Univ.*, 242 F. Supp. 3d 1132 (D. Or. 2017) .................................... 31

*Ritter v. Mt. St. Mary's Coll.*, 495 F. Supp. 724 (D. Md. 1980 ..................................................... 11

*Roberts v. U.S. Jaycees*, 468 U.S. 609 (1984) ........................................................... 27, 28, 31, 32

*RSC Equip. Rental, Inc. v. Cincinnati Ins. Co.*, 54 F. Supp. 3d 480 (W.D. Va. 2014) .................. 4

*Rweyemamu v. Cote*, 520 F.3d 198 (2d Cir. 2008) ........................................................ 16

*Schleicher v. Salvation Army*, 518 F.3d 472 (7th Cir. 2008) ........................................ 26

*Shaliehsabou v. Hebrew Home of Greater Washington, Inc.*, 363 F.3d 299 (4th Cir. 2004) ....... 22

*Shing v. Md. Developmental Disabilities Admin.*, 698 Fed. Appx. 70 (4th Cir. 2017) ................ 2

*Simpson v. Wells Lamont Corp.*, 494 F.2d 490 (5th Cir. 1974) ...................................... 23

*Slattery v. Hochul*, 61 F.4th 278 (2d Cir. 2023) ...................................................... 30

*Snyder v. Phelps*, 562 U.S. 443 (2011) .................................................................. 31

*St. Mary Cath. Par. in Littleton v. Roy*, No. 23-CV-02079-JLK, 2024 WL 3160324 (D. Colo.

    June 4, 2024) ........................................................................................ 29

*Starkey v. Roman Catholic Archdiocese of Indianapolis, Inc*., 41 F. 4th 931 (7th Cir. 2022) . 8, 22

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998)) ........................................ 2

*Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826 (9th Cir. 1999) ............................ 17

*Tobey v. Jones*, 706 F.3d 379 (4th Cir. 2013) .......................................................... 3

*Tomic v. Catholic Diocese of Peoria*, 442 F.3d 1036 (7th Cir. 2006) ................................ 16

*Watson v. Jones*, 80 U.S. 679 (1871) .................................................................... 12

*Wisconsin v. Mitchell*, 508 U.S. 476 (1993) ...................................................... 28, 30

*Worldwide Church of God v. Phila. Church of God, Inc.*, 227 F.3d 1110 (9th Cir. 2000) .......... 17

**Statutes**

42 U.S.C. § 2000bb-2 .................................................................................... 15

42 U.S.C. § 2000bb-1 .................................................................................... 14

42 U.S.C. § 2000e-1 .................................................................................. 4, 5

42 U.S.C. § 2000e-2 .................................................................................... 10

vii

Religious Freedom Restoration Act ("RFRA") ................................................................. passim

Religious Land Use and Institutionalized Persons Act ("RLUIPA") ........................................... 14

Section 702 of the Civil Rights Act of 1964 ("Section 702")................................................ passim

Section 703 of Title VII ............................................................................................. passim

Title VII of the Civil Rights Act of 1964........................................................................... passim

### Other Authorities

Chan Tov McNamarah, *Some Notes on Courts and Courtesy*, 107 Va. L. Rev. Online 317 (2021)

........................................................................................................................... 1

Peter J. Smith and Robert W. Tuttle, *Civil Procedure and the Ministerial Exception*, 86 Fordham

L. Rev. 1847 (2018) ............................................................................................. 21

**INTRODUCTION**

Plaintiff Ellenor Zinski ("Ms. Zinski") is an IT professional who—despite her[1] glowing performance reviews—was terminated from her employment solely on the basis of sex. She brought suit against her former employer, Defendant Liberty University, Inc. ("Liberty" or "the University"), alleging that it violated Title VII of the Civil Rights Act of 1964 ("Title VII"). Liberty does not dispute Ms. Zinski's factual allegations. Instead, Liberty asserts in the memorandum supporting its Motion to Dismiss that a slew of inapplicable legal doctrines protect its discriminatory conduct. ECF No. 12 (hereinafter "Def. Mem."). Plaintiff disagrees. Plaintiff respectfully requests that this Court reject Defendant's arguments and deny its Motion to Dismiss for the reasons set forth herein.

**STATEMENT OF FACTS**

Ms. Zinski filed a single count lawsuit against Liberty for discrimination on the basis of sex in violation of Title VII. Compl. ¶¶ 20–24. Ms. Zinski was hired in February 2023 as a full-time Information Services Apprentice at the IT helpdesk at Liberty University. Compl. ¶ 10. When she was first hired, Ms. Zinski went by the name Jonathan Zinski. *Id.* Ms. Zinski succeeded in her role, assisting students and staff with IT issues, trouble-shooting problems with classroom equipment, and performing computer-related administrative tasks (e.g., refilling printer paper). *Id.* ¶ 11. On July 5, 2023, Ms. Zinski notified Liberty that she identified as a transgender woman and she would be legally changing her name to Ellenor. *Id.* ¶ 14. On August 8, 2023, Liberty called a

---

[1] Plaintiff Ellenor Zinski is a transgender woman who uses the pronouns "she," "her," and "hers" when being referred to in the third person. As such, this brief will use those pronouns to refer to Ms. Zinski. Plaintiff respectfully requests this Court extend Ms. Zinski the courtesy of referring to her using the pronouns that comport with her gender identity. Chan Tov McNamarah, *Some Notes on Courts and Courtesy*, 107 Va. L. Rev. Online 317, 334 (2021)

meeting between Ms. Zinski, Chief Information Officer and Executive VP for Analytics, John Gauger, and Executive Vice President of Human Resources, Steve Foster. *Id.* ¶ 18. Mr. Foster advised Ms. Zinksi that her employment was terminated effective immediately because of her transition from her sex/gender assigned at birth (male) to the sex/gender that she identified with (female). *Id.* Liberty provided Ms. Zinski with a letter outlining its decision and advising her that her employment was terminated. *Id.*

## STANDARD OF REVIEW

Defendant files its Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). A Motion to dismiss brought under 12(b)(1) challenges the Court's jurisdiction and thus "the right of a plaintiff to even be heard in federal court". Fed. R. Civ. P. 12(b)(1); *Hayth v. VA Veterans Care Ctr.*, No. 7:23-CV-757, 2024 WL 4165084, *2 (W.D. Va. 2024). The Court must determine "whether 'plaintiff's allegations standing alone and taken as true plead jurisdiction and a meritorious cause of action.'" *Id.* (internal citations omitted). "The failure to state the elements of a federal claim can form the basis of a Rule 12(b)(1) motion 'only when the claim is so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'" *Shing v. Md. Developmental Disabilities Admin.*, 698 Fed. Appx. 70, 71 (4th Cir. 2017) citing *Holloway v. Pagan River Dockside Seafood, Inc.*, 669 F.3d 448, 452 (4th Cir. 2012) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998)).

A party moving to dismiss a complaint pursuant to Rule 12(b)(6) bears the burden of demonstrating that the plaintiff's claims are legally insufficient, and that the plaintiff has stated no claim for relief that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible if the complaint contains "factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A complaint need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (alteration in original) (quoting *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013)). In considering a Rule 12(b)(6) motion, the court must "accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). The court does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses" through a Rule 12(b)(6) motion. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (citation omitted). The court must also "construe the complaint 'liberally so as to do substantial justice.'" *Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. Four-C-Aire, Inc.*, 929 F.3d 135, 152 (4th Cir. 2019) (quoting *Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017)).

## ARGUMENT

I.  **The Court should not consider the exhibits attached to Liberty's Memorandum of Law in Support of Motion to Dismiss because they are not integral to the Complaint and not dispositive of the Motion to Dismiss.**

Defendant attaches to its Memorandum:  1. an email from Ms. Zinski to Liberty, 2. Liberty's letter in response provided to Ms. Zinski at the time of termination, and 3. EEOC's Notice of Right to Sue. Def. Mem. Ex. A–C. Defendant then cites to and relies on the exhibits throughout the Memorandum. Def. Mem. at 2–6, 11–14, 16–17, 21–22, 35–36. These documents were not attached as exhibits to the Complaint but are referenced in the Complaint. Compl. ¶¶ 7, 14–18. The Fourth Circuit dictates that courts may "consider documents attached to the complaint, see Fed. R. Civ. P. 10(c), as well as those attached to the motion to dismiss, so long as they are *integral* to the complaint and authentic." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th

Cir. 2009) (emphasis added). "'[T]he court may consider *dispositive* documents that are either attached to, or referenced, in the complaint' during the motion to dismiss phase.'" *RSC Equip. Rental, Inc. v. Cincinnati Ins. Co.*, 54 F. Supp. 3d 480, 484 n.2 (W.D. Va. 2014) (quoting *Heretick v. Amberley Shipping Corp.*, 227 F. Supp. 2d 575, 577 (E.D. Va. 2002)) (emphasis added). As addressed via the substantive arguments below, the exhibits filed and relied on by Liberty are neither integral nor dispositive to the legal issues properly before the Court at the Motion to Dismiss stage and therefore should not be considered by the Court.[2]

## II.    A plain reading of Section 702, case law, and its legislative history definitively prohibits Liberty from discriminating against Ms. Zinski.

Title VII prohibits discrimination in employment, including on the basis of sex. 42 U.S.C. §§ 2000e *et seq.*; *Bostock v. Clayton County*, 590 U.S. 644 (2020). Section 702 of the Civil Rights Act of 1964 ("Section 702") "exempts religious organizations from Title VII's prohibition against discrimination in employment on the basis of *religion*." *Corp. of Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints v. Amos*, 483 U.S. 327, 329 (1987) (emphasis added); *see also* 78 Stat. 255, as amended, 42 U. S. C. § 2000e-1. The text of Section 702 provides:

> This subchapter shall not apply to an employer with respect to the employment of aliens outside any State, or to a religious corporation, association, educational institution, or society *with respect to the employment of individuals of a particular religion* to perform work connected with the carrying on by such corporation, association, educational institution, or society of its activities.

Section 702(a): § 2000e-1(a) (emphasis added).

---

[2] In the abundance of caution, Plaintiff also objects to the Court converting the Motion to Dismiss to a Motion for Summary Judgement. Fed. R. Civ. P. 12(d); *RSC Equip. Rental, Inc. v. Cincinnati Ins. Co.,* 54 F. Supp. 3d 480, 484 (W.D. Va 2014) ("I note that I may properly consider Cincinnati's March 2, 2011 correspondence without converting the motion to dismiss into a motion for summary judgment, because 'the court may consider dispositive documents that are either attached to, or referenced, in the complaint' during the motion to dismiss phase.").

Religious institutions are, nevertheless, subject to Title VII's prohibition on sex discrimination. *Rayburn v. General Conference of Seventh-Day Adventists*, 772 F.2d 1164, 1166–67 (4th Cir. 1985) (internal citations omitted); *see also Kennedy v. St. Joseph's Ministries, Inc.*, 657 F.3d 189, 192 (4th Cir. 2011). Liberty does not cite a single case in which a court permitted a religious institution to discriminate on the basis of sex under Section 702. Liberty's Motion asks this Court to do just that, thereby creating a new legal standard, notwithstanding the text of the statute, its legislative history, and case law to the contrary.

### A. Courts have uniformly held that the Section 702 exception only allows for discrimination based on religion, not on the basis of any other protected class.

Though Section 702 permits religious organizations to hire co-religionists, Liberty attempts to drastically expand, and essentially redefine, this narrow exemption to also allow for discrimination on the basis of sex.

The Fourth Circuit evaluated the parameters of the Section 702 exemption in *Rayburn,* holding that:

> While the language of § 702 makes clear that religious institutions may base relevant hiring decisions upon religious preferences, Title VII does not confer upon religious organizations a license to make those same decisions on the basis of race, sex, or national origin. The statutory exemption applies to one particular reason for employment decision -- that based upon religious preference. It was open to Congress to exempt from Title VII the religious employer, not simply one basis of employment, and Congress plainly did not.

772 F.2d at 1166–67 (internal citations omitted); *see also Kennedy*, 657 F.3d at 192 ("Section 2000e-1(a) does not exempt religious organizations from Title VII's provisions barring discrimination on the basis of race, *gender*, or national origin." (emphasis added)).

The Supreme Court's subsequent decision in *Bostock*, was unequivocal that discriminating against an individual because they are transgender is inherently sex-based discrimination. 590 U.S.

644 (2020). Justice Gorsuch, applying the "but for causation" standard, analyzed the very example before this Court:

> [T]ake an employer who fires a transgender person who was identified as a male at birth but who now identifies as a female. If the employer retains an otherwise identical employee who was identified as female at birth, the employer intentionally penalizes a person identified as male at birth for traits or actions that it tolerates in an employee identified as female at birth. Again, the individual employee's sex plays an unmistakable and impermissible role in the discharge decision.

*Id.* at 660. Justice Gorsuch continued: "[w]hen an employer fires an employee for being homosexual or transgender, it necessarily and intentionally discriminates against that individual in part *because of sex.* And that is all Title VII has ever demanded to establish liability." *Id.* at 661 (emphasis added). But for Ms. Zinski identifying as female, Liberty would not have terminated her. Defendant clearly stated as much in its letter to Ms. Zinski. Thus, as in *Bostock,* "[b]y discriminating against transgender persons, the employer unavoidably discriminates against persons with one sex identified at birth and another today." *Id.* at 669. Regardless of Liberty's religious beliefs, Ms. Zinski's sex was a "but-for" reason for the termination.

Courts in the Fourth Circuit have echoed this analysis from *Bostock*. In *Doe v. Cath. Relief Servs.*, the religious employer terminated spousal health insurance benefits because the plaintiff was a gay man married to another man. 618 F. Supp. 3d 244, 249 (D. Md. 2022)*.* In holding that Section 702 does not exempt sex discrimination, the court relied on the Fourth Circuit's precedent in *Rayburn* and *Kennedy.* It reasoned: "[a] plain reading of § 702(a) reveals Congress's intent to protect religious organizations seeking to employ co-religionists, but the reading urged by CRS would cause a relatively narrowly written exception to swallow all of Title VII, effectively exempting religious organizations wholesale. Had Congress wished to exempt religious organizations in this manner, it could have done so, but it 'plainly did not.'" *Cath. Relief Servs.*,

618 F. Supp. 3d at 253 (quoting *Rayburn* at 1166–67). Accordingly, Section 702 could not shield the religious entity from liability, *id.*, and it fails to shield Liberty's actions here.

Furthermore, *Billard v. Charlotte Catholic High School* held that Section 702 and 703 exemptions provide that "religious institutions may employ those with similar faiths, but they *may not discriminate against other protected classes.*" No. 3:17-CV-00011, 2021 WL 4037431, *11 (W.D. N.C. Sept. 3, 2021) (emphasis added). On appeal, the Fourth Circuit decided the case on other grounds, but it highlighted the potentially "wide ranging" consequences of the religious employer's Section 702 arguments, stating that the "exemption would apply equally to all employees of qualifying religious institutions — not only the relatively small number of employees with a claim to ministerial status, but also the hundreds of thousands of groundskeepers, custodians, administrative personnel, and the like that all agree fall outside the ministerial exception.  And it would deprive those employees not only of Title VII's protections against religious discrimination, but also Title VII's protections against sex discrimination and, at least presumptively, those against race and national-origin discrimination, as well." *Billard v. Charlotte Catholic High Sch.*, 101 F.4th 316, 327–328 (4th Cir. 2024) (internal citations omitted). As discussed *infra*, Ms. Zinski is one of the "hundreds of thousands" of non-ministerial staff that the Court cautioned would be subject to discrimination on the basis of protected statuses if it were to drastically expand this narrow exemption.  Because Section 702 provides no license to religious institutions to discriminate on the basis of sex, this Court should reject Defendant's reliance on it to excuse its sex-based discrimination.

### B.    Ms. Zinski alleges sex-based discrimination that Liberty cannot recharacterize as religious discrimination.

Still, Defendant argues that its termination of Ms. Zinski falls under Section 702 because its religious beliefs condemn the existence of transgender people. Liberty relies on a single

majority opinion to support this assertion: *Little v. Wuerl*, 929 F.2d 944, 946 (3d Cir. 1991). In *Little v. Wuerl*, a Protestant, non-Catholic teacher was terminated for failing to annul her first marriage before remarrying. *Id*. But the district court in *Little v. St. Mary Magdalene Parish* acknowledged that "both parties agree[d] that Little's employment contract was not renewed because of her religion. Therefore, the Parish's decision not to renew the employment contract of one of its employees because of her religion falls within the § 702 exemption of Title VII." 739 F. Supp. 1003, 1005 (W. D. Pa. 1990). As the court stated plainly, Little was terminated by a Catholic school because she was not a co-religionist; which is permissive under Section 702. This case does not hold Section 702 allows discrimination for any other reason protected under Title VII.

Liberty also relies on two concurrences out of the Seventh Circuit to support its position: *Starkey v. Roman Catholic Archdiocese of Indianapolis, Inc.* and *Fitzgerald v. Roncalli High Sch., Inc.* Neither concurrence won the day. Both of those cases were decided on the ministerial exception and neither court reached the Section 702 question. *Starkey v. Roman Catholic Archdiocese of Indianapolis, Inc*., 41 F. 4th 931, 942 (7th Cir. 2022); *Fitzgerald v. Roncalli High Sch., Inc*., 73 F. 4th 529, 534 (7th Cir. 2023).

District court decisions in the Seventh Circuit have flatly disagreed with the reasoning set forth in the *Starkey* and *Fitzgerald* concurrences. In *Herx v. Diocese of Ft. Wayne-South Bend Inc.*, the Diocese and religious school claimed they declined to renew Ms. Herx's contract because the Catholic Church views in vitro fertilization as gravely immoral. 48 F. Supp. 3d 1168, 1170 (N.D. Ind. 2014). Mrs. Herx sued the Diocese and the religious school, claiming the nonrenewal was based on her sex and her disability (infertility). *Id*. The Defendants moved for summary judgment, arguing that they had a religious reason for the employment decision. *Id*. at 1170–71. The Court disagreed, holding that "Title VII doesn't give religious organizations freedom to make

8

discriminatory decisions on the basis of race, sex, or national origin. Title VII's exemptions are limited specifically *to claims of discrimination premised upon religious preferences*, and Mrs. Herx isn't complaining about religious preference." *Id.* at 1175 (emphasis added) (internal citations omitted); *see also Garrick v. Moody Bible Inst.*, 494 F. Supp. 3d 570, 576 (N.D. Ill. 2020) ("Because Garrick pleads that Moody fired her as a result of her gender, and not her religious beliefs . . . her claims falls (*sic*) outside the scope of the religious organization exemption. None of the authorities Moody cites persuades the Court to depart from its previous reading of Title VII. If anything, those cases confirm that the statute only precludes claims predicated on discrimination based on one's religious beliefs and practices.").

The Ninth Circuit has also ruled that when religious discrimination implicates another protected category, Section 702 explicitly does not apply. *EEOC v. Freemont Christian Sch.*, 781 F.2d 1362, 1366 (9th Cir. 1986); *EEOC v. Pacific Press Pub. Assoc.*, 676 F.2d 1272, 1276 (9th Cir. 1982). Those cases, and the Courts in *Herx.* and *Rayburn,* all arrived at the conclusion that Section 702 does not permit other types of discrimination disallowed by Title VII in part by looking to the legislative intent underlying Section 702.

> The legislative history reinforces the plain meaning of the statutory text. The original Act passed by the House in 1964 excluded religious employers from coverage altogether. The final version excluded such employers only with respect to discrimination based on religion, and then only with respect to persons hired to carry out the employer's "religious activities." In 1972 the statute was amended to delete the word "religious," but Congress specifically rejected proposals to broaden further the scope of the exemption. To the contrary, the analysis pertaining to § 702 states clearly that "such organizations remain subject to the provisions of Title VII with regard to race, color, sex or national origin."

*Rayburn,* 772 F.2d at 1167 (internal citations omitted); *accord EEOC v. Freemont Christian Sch.*, 781 F.2d at 1366.

9

Liberty asks this Court to rule in contravention of Section 702's plain text, ample case law, and legislative history. It asks this Court to expand "the narrowly written exception" in Section 702 "to swallow all of Title VII, and effectively exempt religious organizations wholesale." *Catholic Relief Servs.,* 618 F. Supp. 3d at 253. That is not the law in this Circuit nor any circuit. For the forgoing reasons, Plaintiff respectfully requests that this Court reject Liberty's Motion.

### III.    Similar to Section 702, Section 703 permits religious institutions to discriminate on the basis of religion, not sex.

Next, Liberty argues that Section 703 of Title VII ("Section 703") provides "religious educational institutions with their own unique statutory exemption for the hiring and retention of only those who share their religious values and convictions." Def. Mem. at 12. This argument patently misstates the text of Section 703. Nowhere does Section 703 refer to "religious values and convictions." Rather, Section 703, like Section 702, provides for the hiring and retention of co-religionist or "employees of a particular religion." It states, in pertinent part: "[I]t shall not be an unlawful employment practice for a school, college, university, or other educational institution or institution of learning to hire and employ employees of a particular religion" if that educational institution is "owned, supported, controlled, or managed by a particular religion" or religious entity. 42 U.S.C. § 2000e-2(e)(2).

The Fourth Circuit stated clearly in *Billard*, treating Section 702 and Section 703 together, that it "understood [those] exemption[s] to operate as a defense only to claims of *religious* discrimination—allowing religious institutions to favor co-religionists in hiring—and *not to claims of race or sex discrimination*." *Billard v. Charlotte Catholic High Sch.*, 101 F.4th at 322–323 (emphasis added) (citing *Rayburn*, 772 F.2d at 1166, then citing *Kennedy*, 657 F.3d at 192); *see also Petruska v. Gannon Univ.*, 462 F.3d 294, 303 (3d Cir. 2006) (holding that both Section 702 and Section 703 permit religious organizations to make employment decisions based on

individual's religion, but not on the basis of race, sex, or national origin). Defendant contradicts Fourth Circuit precedent in arguing anything otherwise. Ms. Zinski alleges discrimination on the basis of sex, not religion. Compl. ¶ 23. Ms. Zinski was terminated not because of her religion, but on the basis of her sex, which federal law expressly disallows.

Liberty's argument that Section 703 precludes Ms. Zinski's claims runs far afield of the prevailing interpretation of the statute's text.   To begin, Defendant's reliance on *Ritter* is misguided. *Ritter* clearly states that "it is thus clear that Congress exempted religiously affiliated schools only from religious discrimination." *Ritter v. Mt. St. Mary's Coll.*, 495 F. Supp. 724, 727 (D. Md. 1980). The Court further noted that, "[h]ad Congress intended to exempt religious organizations from other forms of discrimination, the United States Court of Appeals for the District of Columbia has noted in strong dicta that section 702 might be constitutionally infirm." *Id.* at n. 4 (collecting cases). Thus, *Ritter* actually stands for the principle that Section 703 does not shield Liberty's discrimination on the basis of sex in the instant case.

Next, Liberty cites to *Hall v. Baptist Mem'l Health Care Corp.*, 215 F.3d 618 (6th Cir. 2000) for the proposition that an employer can terminate an employee for "conduct or religious beliefs" that are inconsistent with the beliefs of the employer. But *Hall*, like the other cases Defendant cites, is a religious discrimination case. 215 F.3d at 621. Here, Plaintiff alleged she was terminated based on her religion not her sex..

Simply put, if Ms. Zinski identified as a male, she would not have been terminated. Ms. Zinski was terminated not because of her religious beliefs; she was terminated because she announced that she identified as one gender rather than another gender. For the same reasons that Liberty's motion fails under Section 702, it also fails under Section 703. Accordingly, Plaintiff respectfully requests that this Court deny Liberty's Motion.

IV.    **The Ecclesiastical Abstention Doctrine is inapplicable.**

The First Amendment's Establishment Clause prohibits excessive government intrusion on religion, and the Free Exercise Clause protects a religious organization's right to decide important matters of faith, governance, and religious doctrine. *Billard*, 2021 WL 4037431 at *11 (citing U.S. Const. Amend. 1). This means that religious organizations should be free from secular control regarding ecclesiastical matters, such as theological controversy, church discipline, ecclesiastical government, or the conformity of members of the church to standards of morals required of them. *Kedroff v. Saint Nicholas Cathedral of Russian Orthodox Church in N. Am.*, 344 U.S. 94, 116 (1952); *Watson v. Jones*, 80 U.S. 679, 733 (1871).

Here, Liberty is not a church, and the case will not be decided on issues of church discipline, theological controversy or ecclesiastical governance; as such, the ecclesiastical abstention doctrine is inapplicable. Contrary to Liberty's arguments on brief, the Complaint does not ask the Court to determine if Ms. Zinski's interpretation of scripture is correct, does not ask the Court to determine if Liberty's Doctrinal Statement is incorrect, and does not ask the Court to determine if either party's interpretation of scripture compels or prohibits Ms. Zinski's employment at Liberty. Def. Mem. at 17. Instead, the Complaint seeks a determination that Liberty's termination of Ms. Zinski because she is transgender is unlawful discrimination in violation of Title VII. *Bostock*, 590 U.S. at 659.

Moreover, the law is clear that religious organizations may be subject to Title VII scrutiny where the decision does not involve the organization's spiritual functions. *Rayburn*, 772 F.2d at 1171; *EEOC v. Roman Cath. Diocese of Raleigh, N.C.*, 213 F.3d 795, 801 (4th Cir. 2000) ("Where no spiritual function is involved, the First Amendment does not stay the application of a generally applicable law such as Title VII to a religious employer unless Congress so provides.").

Freedom to select clergy is part of the free exercise of religion reserved to church autonomy and the type of issue the ecclesiastical abstention doctrine is intended to preclude courts from addressing. *Billard*, 2021 WL 4037431 at \*12 (citing *Kedroff*, 344 U.S. at 116). As such, the ministerial exception, discussed *infra*, was created to demarcate the line where a religious organization's First Amendment rights outweigh the government's compelling interest in combatting employment discrimination. *Billard*, 2021 WL 4037431 at \*12 (citing *Rayburn*, 772 F.2d at 1168–69); *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171 (2012). However, if the ecclesiastical abstention doctrine was as expansive as Liberty argues it is, there would be no need to have the ministerial exception (or Sections 702 and 703) because Title VII would not cover *any* employment decisions made by a religious employer. *Billard*, 2021 WL 4037431 at \*12.

This Court should decline Liberty's invitation to significantly expand constitutional immunity for religious institutions beyond the recognized categories of church governance and the ministerial exception. *See Ference v. Roman Cath. Diocese of Greensburg*, No. CV 22-797, 2023 WL 3876584 (W.D. Pa. Jan. 18, 2023). At the Rule 12(b) stage, the Court should simply hold that Ms. Zinski alleges plausible facts to support her claim that she was terminated from employment by Liberty in violation of Title VII.

Finally, other district courts have recently held that the ecclesiastical abstention doctrine is an affirmative defense and not appropriately raised at the motion to dismiss stage. *Califano v. Roman Cath. Diocese of Rockville Ctr., New York*, No. 24-CV-04346, 2024 WL 4276170 \*10 (E.D.N.Y. Sept. 24, 2024) (citing *Ference*, 2023 WL 3876584 at \*5). As such, any applicable First Amendment defense to the claim should be analyzed at the summary judgment stage and/or trial pursuant to the well-established ministerial exception. As explained *infra*, because Zinski was an

IT Helpdesk employee at a university, this Court should ultimately hold that Zinski was not a minister and no First Amendment defense applies.

**V.      Plaintiff's claim is not barred by the Religious Freedom Restoration Act.**

The Religious Freedom Restoration Act ("RFRA") does not bar Plaintiff's claims in this case because RFRA does not apply in cases between private parties. To establish a *prima facie* defense under RFRA, a party must show by a preponderance of the evidence that the applicable government action substantially burdens its exercise of a sincerely held religious belief. *See, e.g.*, *Holt v. Hobbs*, 574 U.S. 352, 357–58, 360–61 (2015).[3] If the party can make this showing, the burden shifts to the government to show that its actions were the least restrictive means of furthering a compelling governmental interest. *Id.* at 362–63. Even if RFRA did apply in suits between private parties, Plaintiff can easily establish that Title VII satisfies the strict scrutiny standard applied under RFRA's burden-shifting scheme.

**A.  RFRA does not apply in cases between private parties.**

When a statute's text is unambiguous, courts must apply the plain and ordinary meaning of its terms. *Bostock*, 590 U.S. at 673. The plain text of RFRA requires that the government be a party to a case in which its provisions are available to defendants as an affirmative defense. 42 U.S.C. § 2000bb-1(a) ("Government shall not substantially burden a person's exercise of religion . . ."); § 2000bb-1(b) (requiring the "[g]overnment" to meet its burden under the statute); *Id.* § 2000bb-1(c) (providing for "appropriate relief against a *government*" (emphasis added)). When the EEOC issued Ms. Zinski a right-to-sue letter, the government "*specifically chose not to enforce*

---

[3] While *Holt* was decided under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), RLUIPA was passed to address constitutional infirmities in RFRA's application to the states and their subdivisions and mirrors RFRA's burden shifting framework. *See Holt* at 357–58.

Title VII." *Billard*, 2021 WL 4037431, at *20 (emphasis original) (holding, after extensive analysis, that RFRA does not apply to cases between private parties), *rev'd and remanded on other grounds*, 101 F.4th 316 (4th Cir. 2024). Without any government involvement in this case, Liberty cannot invoke RFRA as a defense.

Defendant argues that RFRA can be invoked as a defense even in litigation between private parties because the judiciary may impose burdens on defendants in its adjudication of employment discrimination suits. Def. Mem. at 18. While the judiciary is certainly a "branch" of the government, 42 U.S.C. § 2000bb-2(1), it has only in limited circumstances been used as the hook for a RFRA defense between private parties. *See, e.g., In re Young*, 82 F.3d 1407, 1416–17 (8th Cir. 1996), *vacated, sub nom. Christians v. Crystal Evangelical Free Church*, 521 U.S. 1114 (1997), *reinstated, sub nom. In re Young*, 141 F.3d 854 (8th Cir. 1998) (allowing the RFRA defense in a bankruptcy case between a church and its members). United States trustees are part of the executive branch and protect the interests of the federal government in bankruptcy court. *See* 28 U.S.C. § 586(a); 11 U.S.C. §§ 701(a)(1), 703(b)–(c) and 704(9); *In re Schoenewerk*, 304 B.R. 59, 62–63 (Bankr. E.D.N.Y. 2003). As such, they are the type of "government" actors in whose cases a RFRA defense is appropriate. 42 U.S.C. § 2000bb-2(1). Contrary to Defendant's assertion, this Court's adjudication of Ms. Zinski's Title VII claim is not the type of "government" enforcement contemplated by the statute. *See, e.g., Gen. Conf. Corp. of Seventh-Day Adventists v. McGill*, 617 F.3d 402, 410 (6th Cir. 2010) (holding that the government cannot satisfy its burden under RFRA without being a party to the suit); *Listecki v. Official Comm. Of Unsecured Creditors*, 780 F.3d 731, 736 (7th Cir. 2015) (analyzing RFRA as a burden-shifting statute in which, after one party asserts RFRA as a defense, the burden of evidence and persuasion shifts to the government).

Defendant cites two primary cases to support its contention that RFRA is an available defense in a case between private parties: *EEOC v. Catholic Univ. Of Am.*, 83 F.3d 455 (D.C. Cir. 1996) and *Hankins v. Lyght*, 441 F.3d 96 (2d Cir. 2006). Both cases are inapposite.

As is evident by its own case title, *EEOC v. Catholic University* involved both an individual plaintiff *and* the EEOC as plaintiffs. The D.C. Circuit did not have to address whether RFRA applied to a case between private parties because the government was, indeed, a party. Nor did the court address whether RFRA would be available had the individual plaintiff sued on her own. Defendant argues that Liberty's ability to invoke RFRA as a defense should not be determined based on whether the EEOC or an individual plaintiff brings suit. But this distinction in how RFRA's protections change based on who is bringing suit is inherent to the text of the statute. Because the plain language of RFRA provides that its protections are available when the government brings suit, "there is no acceptable reading of the statute that would yield the kind of consistency the [Defendant] desires." *Hankins*, 441 F.3d at 115 (Sotomayor, J., dissenting).

*Hankins* is similarly unpersuasive. The Second Circuit has since called into question its own reasoning set forth in *Hankins* because the text of RFRA plainly requires the government to be a party to the case. *See Rweyemamu v. Cote*, 520 F.3d 198, 203–4, 203 n.2 (2d Cir. 2008) (explaining that because the statute places an evidentiary burden on the "government," the court "[did] not understand how it can apply to a suit between private parties."). The Sixth, Seventh, and Ninth Circuits have applied this same reasoning in denying RFRA's application between private parties. *McGill*, 617 F.3d at 410; *Listecki*, 780 F.3d at 736; *Tomic v. Catholic Diocese of Peoria*, 442 F.3d 1036, 1042 (7th Cir. 2006) (stating that "RFRA is applicable only to suits to which the government is party" and referring to the Second Circuit's decision in *Hankins* as "unsound"), *cert. denied,* 549 U.S. 881 (2006); *abrogated on other grounds by Hosanna-Tabor*, 565 U.S. 171

16

(2012); *Worldwide Church of God v. Phila. Church of God, Inc.*, 227 F.3d 1110, 1121 (9th Cir. 2000) (suggesting that RFRA should not apply to suits between private parties); *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 834–43 (9th Cir. 1999) (concluding that, in the absence of a nexus between a private party and the government, RFRA did not apply to that party).

In addition, district courts have "almost universally agreed" that RFRA does not apply to cases involving private parties. *Billard*, 2021 WL 4037431 at *17 (collecting cases); *see also Hammons v. Univ. of Maryland Med. Sys. Corp.*, 649 F. Supp. 3d 104, 127 (D. Md. 2023); *Catholic Relief Servs.*, 618 F. Supp. 3d 253–55; *Goddard v. Apogee Retail LLC*, No. 19-cv-3269-DKC, 2021 WL 2589727, at *8 (D. Md. June 24, 2021).

Critically, while the Fourth Circuit has not issued a ruling on this specific issue, it recently signaled its agreement with the majority of district and appellate courts. *Billard*, 101 F.4th at 324, 328 (noting that the district court held "consistent with the great weight of court authority" that RFRA does not apply to suits between private parties and "what exactly it would mean to expand RFRA's scope so dramatically [by agreeing with the defendants' arguments] is largely untested and difficult to anticipate").

In light of the plain text of the statute and the overwhelming body of authority that tips in Ms. Zinski's favor, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss on these grounds.

### B. Even if RFRA did apply in this case, Title VII survives RFRA's strict scrutiny analysis.

#### i. Liberty fails to meet its burden under RFRA because it makes no showing of how Title VII imposes a "substantial burden" on its religious exercise.

Asserting a successful RFRA defense first requires the claiming party to demonstrate that the government has substantially burdened its exercise of a sincerely held religious belief. *Holt*,

574 U.S. at 360–61. Only when that showing has been made by a preponderance of the evidence does the burden of proof shift to the government (or in this case, as Defendant claims is possible, to Ms. Zinski) to demonstrate that its action is the least restrictive means of achieving a compelling governmental interest. *Id.* at 362–63.

While Liberty spills considerable ink defending the sincerity of its belief that transgender employees violate Christian values,[4] Defendant spends no time explaining why retaining Ms. Zinski on staff substantially burdens its religious exercise. Briefly citing *Hobby Lobby*, Defendant contends that Title VII's application to its hiring practices would "in effect tell [Liberty] that [its] beliefs are flawed." *Burwell v. Hobby Lobby*, 573 U.S. 682, 724 (2014). Defendant fails to include that, in addition to their alleged dignitary harms, the plaintiffs in *Hobby Lobby* also faced massive tax implications, to the tune of hundreds of millions of dollars per year, if they were required to comply with the regulations set forth by the Department of Health and Human Services. *Id.* at 726. Liberty does not allege any such financial hardships that would result from Title VII's requirements, nor does it put forward any other reasons or case citations in advancing its "substantial burden" argument. Title VII's nondiscrimination provisions do not prevent the University "from engaging in conduct [its] religion requires," *Mahoney v. Doe*, 642 F.3d 1112, 1121 (D.C. Cir. 2011) (citation omitted). Nor does Title VII cause Liberty to "face serious disciplinary action" by keeping Ms. Zinski on staff. *Holt*, 574 U.S. at 361. Without any other argument that Ms. Zinski's employment causes a *substantial* burden to the University, Liberty cannot meet its evidentiary requirement under RFRA. And at the motion-to-dismiss stage,

---

[4] Plaintiff objects to Defendant's use of its Doctrinal Statement in its Motion to Dismiss as it is irrelevant. What, if any, Doctrinal Statement Ms. Zinski signed does not and cannot support Defendant's arguments because it has not been admitted into evidence. Without such support for Liberty's arguments, dismissal under 12(b)(6) grounds is inappropriate.

Defendant has virtually no factual record to support the ways in which Title VII purportedly burdens the University's religious exercise. As such, the Court's inquiry need not reach the question of whether Title VII satisfies strict scrutiny.

> ii. **As applied in this case, Title VII is the least restrictive means of achieving Congress's compelling interest in preventing discrimination on the basis of sex.**

Even if this Court finds that RFRA applies to private suits, and that Defendant has met its burden under the first part of the RFRA analysis, Plaintiff still prevails. The Fourth Circuit has routinely acknowledged that Title VII properly applies to the secular employment decisions of religious institutions. *See, e.g., Rayburn*, 772 F.2d at 1169; *E.E.O.C. v. Roman Cath. Diocese of Raleigh, N.C.*, 213 F.3d at 801 ("[T]he exception would not apply to employment decisions concerning purely . . . administrative personnel . . . . Where no spiritual function is involved, the First Amendment does not stay the application of a generally applicable law such as Title VII to the religious employer.").

"Title VII is an interest of the highest order." *Rayburn*, 772 F.2d at 1169. This Circuit has unequivocally held that it would "be difficult to exaggerate the magnitude of the state's interest in assuring equal employment opportunities for all, regardless of . . . sex." *Id*. at 1168; *see also Dole v. Shenandoah Baptist Church*, 899 F.2d 1389, 1398 (4th Cir. 1990) (same); *Billard*, 101 F. 4th at 324 ("[A]pplication of Title VII would be justified here by the government's compelling interest in protecting employees from sex discrimination."). This compelling government interest extends to preventing sex discrimination against non-ministerial employees of religious entities. *Cath. Relief Servs*., 618 F. Supp. at 252, *opinion vacated in part on reconsideration on other grounds*, No. CV CCB-20-1815, 2023 WL 155243 (D. Md. Jan. 11, 2023) (holding that adjudicating the denial of employment benefits to a data analyst and his same-sex husband did not unduly interfere

with the defendant's "spiritual or ministerial functions"); *Goodman v. Archbishop Curley High Sch.*, 149 F. Supp. 3d 577, 584 (D. Md. 2016) (finding that a school librarian, employed by a Catholic high school, did not qualify as a minister); *Davis v. Baltimore Hebrew Congregation*, 985 F. Supp. 2d 701, 711 (D. Md. 2013) (finding that the facilities manager at a synagogue did not fall within the ministerial exception); *McCallum v. Billy Graham Evangelistic Ass'n*, 824 F. Supp. 2d 644, 651 (W.D.N.C. 2011) (holding that an administrative assistant is not a "minister").

Title VII achieves this compelling interest by the least restrictive means. The Fourth Circuit has recognized the "incidental burdens on free exercise" imposed by Title VII's restrictions in secular employment decisions. *Rayburn*, 772 F.2d at 1169. It urges courts to distinguish between these legitimate employment restrictions and the impermissible "inroads on religious liberty" when government standards interfere with the selection of spiritual leaders. *Id.* In upholding this carve-out for religious entities to control their religious ministers, the Fourth Circuit has endorsed Title VII's narrowly tailored protections against sex discrimination without polluting the First Amendment rights of entities like Liberty.

In sum, Title VII satisfies strict scrutiny. Thus, Plaintiff requests that the Court deny Defendant's motion on these grounds.

## VI.    The ministerial exception does not apply to Plaintiff.

As an affirmative defense, the ministerial exception cannot form the basis of a 12(b)(1) motion and is very rarely appropriately addressed by a 12(b)(6) motion. Thus, it cannot defeat Plaintiff's Title VII claim at the motion-to-dismiss stage. Even if this court holds that the applicability of the ministerial exception can be properly determined at this phase of litigation, Ms. Zinski's claim should still survive because, as an IT professional, she is not a "minister" within the meaning of the exception.

The ministerial exception prohibits courts from adjudicating disputes "about the appointment and removal of ministers and persons in other positions of similar theological significance" within religious entities. *Bell v. Presbyterian Church (U.S.A.)*, 126 F.3d 328, 331 (4th Cir. 1997). The Supreme Court has highlighted "four relevant circumstances" in which person's employment may fit within the definition of a "minister." *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 591 U.S. 732, 750 (2020). An employee's title, religious job training, whether she has held herself out to the public as a minister, and her job duties all inform the Court's assessment of this issue. *Id.* at 750–51. To classify Ms. Zinski—whose position at Liberty was purely secular—as a "minister" under this test would "create an exception capable of swallowing up the rule." *Dole*, 899 F.2d at 1397 (quotation marks omitted).

### A. The ministerial exception is an affirmative defense and should be resolved no earlier than the summary judgment stage.

The ministerial exception is an affirmative defense, not a jurisdictional bar. *Hosanna-Tabor*, 565 U.S. at 195 n.4; *Palmer v. Liberty Univ., Inc.*, 72 F.4th 52, 68 (4th Cir. 2023), *cert. denied sub nom. Liberty Univ., Inc. v. Bowes*, 144 S. Ct. 1030 (2024) ("[T]he ministerial exception is an affirmative defense to liability — not a jurisdictional bar."). Affirmative defenses are typically pled in the answer and then resolved by a motion for summary judgment. *See* Fed. R. Civ. P. 8(c)(1) ("In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense."); Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."). For these reasons, "summary judgment will almost invariably be the appropriate mechanism for deciding whether the exception applies." Peter J. Smith and Robert W. Tuttle, *Civil Procedure and the Ministerial Exception*, 86 Fordham L. Rev. 1847, 1867 (2018).

Defendant inaccurately cites Judge Richardson's concurrence in *Palmer* to support its assertion that the applicability of the ministerial exception should be resolved by a motion to dismiss. Def. Mem. at 28–29. But the concurrence concerns whether the Fourth Circuit should have ruled on the merits of the Title VII claim before it, in accordance with constitutional avoidance principles, or to first address the ministerial exception. *Palmer,* 72 F. 4th at 83 ("Weighing in on the merits of Palmer's case—even if we ultimately side with Liberty—requires us to judge its motives, and thus make that inquiry . . . . Accordingly, while I would reach the same conclusion as the majority—Palmer's suit should be dismissed—I would do so on different grounds."). Nothing in the concurrence speaks to the necessity of addressing the ministerial exception through a motion to dismiss or the appropriateness of civil discovery in cases in which the affirmative defense is asserted.

The cases in which the Supreme Court of the United States articulated the ministerial exception were decided on summary judgement. *Our Lady of Guadalupe,* 591 U.S. at 742, 745, 756 ("There is abundant record evidence that they both performed vital religious duties."); *Hosanna-Tabor,* 565 U.S. at 180. The overwhelming majority of the Fourth Circuit cases cited by the Defendant were also decided on summary judgment, as was *Starkey*, on which the Defendant relies heavily. *Billard*, 101 F.4th at 322; *Palmer,* 72 F.4th at 60*, cert. denied sub nom. Liberty Univ., Inc. v. Bowes*, 144 S. Ct. 1030 (2024); *Shaliehsabou v. Hebrew Home of Greater Washington, Inc.*, 363 F.3d 299, 301 (4th Cir. 2004); *Starkey*, 41 F.4th at 938.

All cases cited by the Defendant as examples of the rare instance where a court ruled on the ministerial exemption on a motion dismiss either concerned an ordained minister or a pastor, involved a plaintiff who conceded their ministerial status, or were cases in which numerous affidavits and exhibits were properly before the court. *Natal v. Christian & Missionary All.*, 878

F.2d 1575, 1577 (1st Cir. 1989) (plaintiff ordained reverend); *Simpson v. Wells Lamont Corp.*, 494

F.2d 490, 492 (5th Cir. 1974) (plaintiff pastor of four churches); *McClure v. Salvation Army,* 460

F.2d 553, 554 (5th Cir. 1972) (plaintiff ordained minister); *Demkovich v. St. Andrew the Apostle*

*Par., Calumet City*, 3 F.4th 968, 974 (7th Cir. 2021) (controlling question of law certified to

Seventh Circuit whether ministerial exception bars hostile work environment claims, with plaintiff

conceding he was a minister for purposes of motion to dismiss); *E.E.O.C. v. Roman Cath. Diocese*

*of Raleigh, N.C.*, 48 F. Supp. 2d 505, 507 (E.D.N.C. 1999), *aff'd,* 213 F.3d 795 (4th Cir. 2000) (job

descriptions in record via affidavits attached to complaint);  *Alicea-Hernandez v. Archdiocese of*

*Chicago*, No. 01 C 8374, 2002 WL 598517, at *1 (N.D. Ill. Apr. 18, 2002), *aff'd sub nom. Alicea-*

*Hernandez v. Cath. Bishop of Chicago*, 320 F.3d 698 (7th Cir. 2003) (detailed position description

before court, along with affidavits discussing job duties). None of these conditions are present

here.

If the ministerial exception is raised as an affirmative defense in this case, summary

judgment is the proper mechanism by which the Defendant may do so.

### B. Nothing in the factual record before the Court establishes the Plaintiff as a minister for purposes of the exception.

If the Court chooses to consider the ministerial exception standard at this stage, there is

nothing in the record to support Defendant's assertion that Ms. Zinski qualifies as a minister.

Ministerial exception cases are highly fact-intensive, turning on consideration of a "variety of

factors" and "all relevant circumstances" rather than a bright-line rule or even a "rigid formula."

*Our Lady of Guadalupe*, 591 U.S. at 751, 758; *see also Billard v. Charlotte Cath. High Sch.*, 101

F.4th at 333 ("[E]ach case must be judged on its own facts to determine whether a particular

position falls within the exception's scope."  (internal quotations omitted)).

In ascertaining the boundaries of the ministerial exception, "[w]hat matters, at bottom, is what an employee *does*." *Our Lady of Guadalupe,* 591 U.S. at 753 (emphasis added). Following the Supreme Court's ruling in *Our Lady of Guadalupe*, job duties are paramount in drawing the boundaries of the ministerial exception. Here, Ms. Zinski's job description–which on its own would be insufficient–is not before the Court, let alone evidence of her actual duties.

In expanding the ministerial exception beyond ordained faith leaders to encompass some educators at religious institutions, courts have recognized that "teachers are different." *Billard v. Charlotte Cath. High Sch.*, 101 F.4th at 332–33. "[E]ducating young people in their faith, inculcating its teachings, and training them to live their faith are responsibilities that lie at the very core of the mission of a private religious school[.]" *Our Lady of Guadalupe,* 591 U.S. at 753–54. Though the ministerial exception remains narrow enough that not even all teachers are within its bounds. *See DeWeese-Boyd v. Gordon Coll.*, 487 Mass. 31, 47, 53 (2021) (Supreme Judicial Court of Massachusetts rejected a ministerial exception defense, finding "significant difference" from *Our Lady of Guadalupe* in that teacher did not "pray with her students, participate in or lead religious services, or take her students to chapel services.")

Defendant does not dispute that Ms. Zinski was employed by Liberty as an Information Services Apprentice at the IT Helpdesk, not as an educator. Compl. ¶ 10; Def. Mem. at 1. There is no evidence that Ms. Zinski taught students or conveyed doctrinal positions. Instead, "[i]n her role as an IT Apprentice, Ms. Zinski provided help to students and staff who walked into the office with computer issues, troubleshooted problems with classroom equipment, offered immediate assistance when IT issues occurred during classes, and completed technology related administrative tasks, such as restocking computer paper. Ms. Zinski's only contact with students concerned IT issues, and a significant portion of her time was spent speaking with other staff."

24

Compl. ¶ 11. Ms. Zinski's duties encompassed no "vital religious duties." *Cf. Our Lady of Guadalupe,* 591 U.S. at 756.

While "[s]ome religious institutions may ask all employees, whatever their roles, to model religious values", the Fourth Circuit has disclaimed the suggestion that "such an expectation would bring all such employees within the ministerial exception." *Billard,* 101 F.4th at 332. The ministerial exception does not reach employees with administrative roles such as Ms. Zinski's. *See E.E.O.C. v. Roman Cath. Diocese of Raleigh, N.C.*, 213 F.3d at 801 ("For instance, the exception would not apply to employment decisions concerning purely custodial or administrative personnel.") Only a "narrow category of employees who 'serve as a messenger or teacher of the faith'" is covered by the ministerial exception. *Billard,* 101 F.4th at 333, citing *Our Lady of Guadalupe*, 591 U.S. at 751.

On the record before the Court, Ms. Zinski is clearly outside the bounds of the ministerial exception. To hold otherwise would permit the exception to swallow the rule. *See id.* ("The ministerial exception remains just that – an exception.").

### C. This Court is not required to hold an evidentiary hearing on whether Ms. Zinski is a "minister." Doing so will unnecessarily duplicate discovery efforts.

Because the ministerial exception operates as an affirmative defense, not a jurisdictional bar, *Hosanna-Tabor*, 565 U.S. at 195 n. 4, this Court need not hold an evidentiary hearing on the issue of whether Ms. Zinski was a "minister" before the parties conduct discovery.[5]

Even if the ministerial exception were jurisdictional, this Court would have the discretion to choose whether to hold an evidentiary hearing on the matter. As Defendant cites in its brief: "If the defendant challenges the factual predicate of subject matter jurisdiction, 'a trial court *may* then

---

[5] For the reasons discussed *supra* in Section VI(b) and alleged in the Complaint ¶¶10–11, Plaintiff would expect to prevail at such a hearing if one were held.

go beyond the allegations of a complaint"' and hold an evidentiary hearing on the matter. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (emphasis added) (quoting *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)) (evaluating whether the facts of the case permitted the government defendant to invoke sovereign immunity); *see also Brooks v. Branham*, 675 F. Supp. 3d 624, 632 (W.D. Va. 2023) (Moon, J.) (evaluating at an evidentiary hearing whether the facts of the case permitted the plaintiffs' standing and the defendants' claim for tribal immunity).

No court in this circuit has held a separate evidentiary hearing on the issue of whether a person was a "minister" for purposes of a ministerial exception defense. Only two unpublished, out-of-circuit cases permitted an evidentiary hearing on the ministerial exception after the court denied the defendants' motion for summary judgment. *Preece v. Covenant Presbyterian Church*, No. 8:13CV188, 2015 WL 1826231, at *1 (D. Neb. Apr. 22, 2015) (allowing a hearing on whether the plaintiff was a "minister" after denying the defendants' motion to apply the ministerial exception at the summary judgment phase); *Longo v. Regis Jesuit High Sch. Corp.*, No. 02-CV-001957-PSF-OES, 2006 WL 197336, at *18 (D. Colo. Jan. 25, 2006) (ordering a scheduling conference to determine whether an evidentiary hearing on the ministerial exception was necessary after the court denied defendants' motion for summary judgment).

Plaintiff has only found three other courts that have ever held such an evidentiary hearing, all of which occurred before *Hosanna-Tabor* clarified that the ministerial exception was an affirmative defense, not a jurisdictional bar. *Cf. Schleicher v. Salvation Army*, 518 F.3d 472, 474 (7th Cir. 2008) (affirming the dismissal of a FLSA suit after an evidentiary hearing on the ministerial exception, reasoning that the exception applied and therefore the court lacked subject matter jurisdiction); *Patsakis v. Greek Orthodox Archdiocese of Am.*, 339 F. Supp. 2d 689, 690 (W.D. Pa. 2004) (allowing an evidentiary hearing on whether a church registrar was a "minister"

at the motion to dismiss stage because the court declared it was a jurisdictional issue); *Bryce v. Episcopal Church in Diocese of Colorado*, 121 F. Supp. 2d 1327, 1336 (D. Colo. 2000), *aff'd sub nom. Bryce v. Episcopal Church in the Diocese of Colorado*, 289 F.3d 648 (10th Cir. 2002) (converting the defendants' motion to dismiss into a motion for summary judgment on the grounds that the ministerial exception implicates the court's subject matter jurisdiction after hearing evidence on the ministerial exception at a motions hearing).

Beyond its lack of precedent, an evidentiary hearing on this issue would duplicate many of the questions better reserved for summary judgment and trial after the parties have conducted discovery. Moreover, Plaintiff would be prejudiced by a pre-discovery hearing on this issue because Defendant has greater access to information regarding its employment practices than Plaintiff does. To the extent the Court would permit limited discovery on the issue prior to the hearing, Plaintiff would still be prejudiced by a rushed discovery on such a defense. Defendant's argument that this issue "must be adjudicated" by a separate hearing, Def. Mem. at 37, is therefore unsupported by case law and would waste the Court's time and resources. As such, Plaintiff respectfully requests that the Court reject Liberty's request for an evidentiary hearing on the facts underlying this affirmative defense.

**VII.    Defendant does not have an Expressive-Association right to discriminate against non-ministerial employees on the basis of sex.**

Laws regulating an organization's membership or speech directly burden expressive association rights under the First Amendment, and thus trigger strict scrutiny. *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 648 (2000). However, laws regulating commercial conduct, such as hiring and firing employees, are judged by a far more deferential standard. *See Roberts v. U.S. Jaycees*, 468 U.S. 609, 634 (1984) (O'Connor, J., concurring in part and concurring in judgment). Defendant attempts to recharacterize a routine employer-employee relationship as expressive

27

association. This disregards well established precedent and would open the door to sweeping discrimination. Further, even if expressive association was implicated, any cognizable burden on Defendant's freedom of association with respect to non-ministerial employees would survive strict scrutiny.

### A. An employer-employee relationship is not an Expressive Association.

Defendant ignores controlling precedent that freedom of expressive association is inapplicable in commercial contexts where Title VII's antidiscrimination provisions apply and ignores critical aspects of the *Boy Scouts of Am. v. Dale* decision that make it inapplicable to this case.

The Supreme Court has held that Title VII does not infringe upon the First Amendment rights of employers. *Wisconsin v. Mitchell*, 508 U.S. 476, 487 (1993) ("In *Hishon*, we rejected the argument that Title VII infringed employers' First Amendment rights.") (citation omitted); *see also Hishon v. King & Spalding*, 467 U.S. 69, 78 (1984). "[T]here is only minimal constitutional protection of the freedom of commercial association" because "the State is free to impose any rational regulation on the commercial transaction itself." *Roberts* 468 U.S. at 634  (O'Connor, J., concurring in part and concurring in judgment).

"Where no spiritual function is involved, the First Amendment does not stay the application of a generally applicable law such as Title VII to the religious employer unless Congress so provides." *E.E.O.C. v. Roman Cath. Diocese of Raleigh, N.C.*, 213 F.3d 801. If the freedom of expressive association encompassed the same rights as the Constitution's Religious Clauses, "the First Amendment analysis [would] be the same," which would be a "result [that] is hard to square with the text of the First Amendment itself, which gives special solicitude to the rights of religious

28

organizations." *Hosanna-Tabor*, 565 U.S. at 189. Thus, where the ministerial exception does not apply, the First Amendment does not limit the application of Title VII.

The commercial nature of the employment relationship distinguishes Title VII from public accommodation laws regulating a voluntary association's membership or speech. *See, e.g.*, *Dale*, 530 U.S. 640 (forced inclusion of volunteer, unpaid scout leader). The Boy Scouts is a private organization in which the plaintiff was a *volunteer.* By contrast, the instant case involves an employment relationship. The Boy Scouts of America expressly acknowledged that their organization would have been subject to any employment laws which prevented discrimination based on sexual orientation. *Dale*, 530 U.S. at 672 (Stevens, J., dissenting) ("[W]e are unaware of any statute or ordinance ... which prohibits discrimination against individual's employment upon the basis of homosexuality.... *In the event that such a law was applicable, it would be necessary for the Boy Scouts of America to obey it.*") (quoting Boy Scouts President and Chief Scout Executive Letter on policies and procedures with regards to gay men in the Boy Scouts).

Defendant cites several other cases in support of its argument that are similarly unpersuasive. *Bear Creek Bible Church v. EEOC*, 571 F. Supp. 3d 571, (N.D. Tex. 2021), *aff'd in part Braidwood Mgmt., Inc. v. EEOC*, 70 F.4th 914 (5th Cir. 2023) relies almost exclusively upon *Dale* in holding that expressive association precluded liability under Title VII. For the reasons described above, relying on a decision concerning a voluntary membership association in the context of an employment dispute is misplaced. *Darren Patterson Christian Acad. v. Roy*, 699 F. Supp. 3d 1163, 1184–85 (D. Colo. 2023) suffers from the same flawed application of *Dale* outside its appropriate context, as noted by a district court which subsequently considered the same universal preschool program at issue in the case. *St. Mary Cath. Par. in Littleton v. Roy*, No. 23-CV-02079-JLK, 2024 WL 3160324 *28, *41 (D. Colo. June 4, 2024) (finding *Dale* "cannot and

should not be extended to the facts" of the case and noting that the court in *Patterson* granted a preliminary injunction on the expressive association claim without the benefit of defendant's merits arguments on the issue).

Defendant's reliance on *Slattery v. Hochul*, 61 F.4th 278 (2d Cir. 2023) is similarly unpersuasive. *Slattery* concerned whether an anti-abortion crisis pregnancy center plausibly stated a claim that a New York labor law unconstitutionally burdened its expressive association by prohibiting adverse action against employees based on their reproductive health decisions, including seeking abortions. The Second Circuit determined the statute imposed severe burdens on the center's expressive association by forcing it "to employ individuals who act or have acted against the very mission of its organization", which triggered strict scrutiny. *Id.* at 288. Foremost, the case fundamentally errs in disregarding the Supreme Court's holding in *Hishon* that "invidious private discrimination may be characterized as a form of exercising freedom of association protected by the First Amendment, but it has never been accorded affirmative constitutional protections." *Hishon v. King & Spalding*, 467 U.S. 69, 78 (1984) (quoting *Norwood v. Harrison*, 413 U.S. 455, 470 (1973)); *see also Mitchell*, 508 U.S. at 487. Further, the case is factually distinguishable from the instant case. The "very mission" of the anti-abortion crisis pregnancy center in *Slattery* was to encourage pregnant persons to choose paths other than abortion. *Slattery* at 284, 288. Liberty University is an educational institution. There is no evidence in the record that Liberty's "very mission" is to oppose transgender identity. *See McMahon v. World Vision, Inc.*, 704 F. Supp. 3d 1121, 1144–45 (W.D. Wash. 2023) (finding *Slattery's* reasoning inapplicable to the employment of an openly gay married woman by a Christian non-profit engaged in work with the poor and other oppressed groups, as its very mission was not to oppose or discourage same-sex marriage).

30

Finally, Defendant's assertion that it has a right to engage in employment discrimination as a form of expressive association would, if accepted, have sweeping consequences. Because "[t]he right to freedom of association is a right enjoyed by religious and secular groups alike," *Hosanna-Tabor*, 565 U.S. at 189, the "associational rights [of religious institutions] are no stronger than those of other private entities," *Richardson v. Nw. Christian Univ.*, 242 F. Supp. 3d 1132, 1153 (D. Or. 2017). Thus, if Defendant has a "freedom of association" right to engage in employment discrimination, non-religious expressive organizations would also have the same right to do so. And such a right would not be limited to issues of gender identity or sexual orientation. It would cover any organization with racist, misogynist, or xenophobic viewpoints because First Amendment rights do not depend on the courts' assessment of whether a particular viewpoint is worthy of protection. *Cf. Snyder v. Phelps*, 562 U.S. 443, 458 (2011) (extending the First Amendment's free speech protections to speech that society finds "offensive," "disagreeable," "misguided," "hurtful," or "outrageous" in setting aside verdict against anti-gay hate group that protested at the funerals of fallen soldiers).

**B.  Any burden on Defendant's Expressive Association satisfies strict scrutiny.**

Even if expressive association was implicated in the context of this employer-employee relationship, any cognizable burden on Defendant's freedom of association with respect to non-ministerial employees would survive strict scrutiny. "The right to associate for expressive purposes is not [] absolute." *Roberts,* 468 U.S. at 623. "Infringements on that right may be justified by regulations adopted to [1] serve compelling state interests, [2] unrelated to the suppression of ideas, that [3] cannot be achieved through means significantly less restrictive of associational freedoms." *Id*. Each of these requirements is satisfied here.

First, Title VII and other laws prohibiting sex discrimination in employment serve "an interest of the highest order" and may be "properly applied to the secular employment decisions of a religious institution." *Rayburn,* 772 F.2d at 1169. Prohibiting sex discrimination with respect to lesbian, gay, bisexual, and transgender people is equally compelling. *EEOC v. R.G. &. G.R. Harris Funeral Homes, Inc.*, 884 F.3d 560, 591 n.12 (6th Cir. 2018) ("*Harris Funeral*") ("Courts have repeatedly acknowledged that Title VII serves a compelling interest in eradicating all forms of invidious employment discrimination proscribed by the statute."), *aff'd sub nom. Bostock*, 590 U.S. at 644.

Second, Title VII and other prohibitions on discrimination in commercial transactions are viewpoint neutral and unrelated to the suppression of ideas. Like the public accommodations law in *Roberts*, Title VII's prohibition on employment discrimination "does not aim at the suppression of speech, does not distinguish between prohibited and permitted activity on the basis of viewpoint, and does not license enforcement authorities to administer the statute on the basis of such constitutionally impermissible criteria." 468 U.S. at 623.

Third, like the public accommodations law in *Roberts*, applying Title VII to prohibit discrimination in employment with respect to non-ministerial employees "responds precisely to the substantive problem which legitimately concerns the State and abridges no more speech or associational freedom than is necessary to accomplish that purpose." *Id.* at 628–29 (internal quotation marks omitted); *Cf. Hobby Lobby,* 573 U.S. at 733 ("The Government has a compelling interest in providing an equal opportunity to participate in the workforce without regard to race, and prohibitions on racial discrimination are precisely tailored to achieve that critical goal."). Protecting non-ministerial employees from sex discrimination in church-affiliated schools is an

interest "of the highest order" and "a less restrictive means of attaining its aims is not available."

*Dole*, 899 F.2d 1398 (citations omitted).

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss.

Respectfully,

*/s/ Wyatt S.M. Rolla*
Wyatt S.M. Rolla (VSB No. 85625)
Samantha Westrum (VSB No. 98453)
ACLU of Virginia
P.O. Box 26464
Richmond, Virginia 23261
Telephone: (804) 418-1980
Email: wrolla@acluva.org
Email: swestrum@acluva.org

Paul M. Falabella (VSB No. 81199)
Samantha Galina (VSB No. 96981)
Butler Curwood, PLC
140 Virginia Street, Suite 302
Richmond, Virginia 23219
Telephone: (804) 648-4848
Facsimile: (804) 237-0413
Email: paul@butlercurwood.com
Email: samantha@butlercurwood.com

*Counsel for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 31, 2024, I electronically filed the foregoing with the Clerk

of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to all

counsel of record.

<u>/s/ Wyatt S.M. Rolla</u>
Wyatt S.M. Rolla (VSB No. 85625)
*Counsel for Plaintiff*
