UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Lynchburg Division

| | |
|---|---|
| **ELLENOR ZINSKI**, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No.: 6:24-cv-41-NKM |
| | ) |
| **LIBERTY UNIVERSITY, INC.**, | ) |
| | ) |
| Defendant. | ) |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT LIBERTY UNIVERSITY, INC.'S MOTION TO STAY DISCOVERY
DEADLINES**

Plaintiff Ellenor Zinski ("Ms. Zinski") hereby files her opposition in response to Defendant Liberty University, Inc. ("Liberty" or "the University")'s Motion to Stay Discovery Pending Resolution of its Motion to Dismiss.

**BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff Ellenor Zinski is an IT professional who—despite her[1] glowing performance reviews—was terminated from her employment solely on the basis of sex. She brought suit against her former employer, Defendant Liberty, alleging that it violated Title VII of the Civil Rights Act of 1964 ("Title VII"). Compl. ¶¶ 1–24. On October 3, 2024, Liberty filed its Motion to Dismiss and supporting Memorandum (hereinafter "Motion to Dismiss") arguing that the Court ought to

---

[1] Plaintiff Ellenor Zinski is a transgender woman who uses the pronouns "she," "her," and "hers" when being referred to in the third person. As such, this brief will use those pronouns to refer to Ms. Zinski. Plaintiff respectfully requests this Court extend Ms. Zinski the courtesy of referring to her using the pronouns that comport with her gender identity. Chan Tov McNamarah, *Some Notes on Courts and Courtesy*, 107 Va. L. Rev. Online 317, 334 (2021)

1

dismiss Plaintiff's claim under a myriad of theories including the ecclesiastical abstention doctrine, ministerial exception, and 42 U.S.C. 2000e-1(a) and e-2(e) ("Sections 702 and 703 of Title VII"). *See* ECF No. 11; ECF No. 12 (hereinafter "Def. Mem."). On October 31, 2024, Plaintiff filed her Opposition. ECF No. 21. On November 8, 2024, Liberty filed a Motion to Stay Discovery and Memorandum in support (hereinafter "Motion to Stay") pending the resolution of its Motion to Dismiss. *See* ECF No. 25; ECF No.26.

## STANDARD OF REVIEW

Courts possess broad discretion in deciding whether a protective order is appropriate and what degree of protection is necessary. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984). Motions to stay discovery "'are generally disfavored because delaying discovery may cause case management problems as the case progresses.'" *Bennett v. Fastenal Co.*, No. CV 7:15-CV-00543, 2016 WL 10721816, at *1 (W.D. Va. Mar. 8, 2016) (quoting *Fed. Ins. Co. v. S. Lithoplate, Inc.*, 2013 WL 4045924, at *1 (E.D.N.C. Aug. 8, 2013)); *see also Ario Mins., LLC v. Diversified Prod. LLC*, 2024 WL 3488075 at * 4 (S.D.W.Va. July 19, 2024) ("motions to stay discovery are generally disfavored, and the burden on the moving party is relatively heavy").

A party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

2

While a district court may stay discovery during the pendency of a motion to dismiss, it must be for good cause shown. Fed. R. Civ. P. 26(c)(1). The burden rests with the moving party to justify its reason for the stay "by clear and convincing circumstances outweighing potential harm to the party against whom it is operative." *Williford v. Armstrong World Industries, Inc.*, 715 F.2d 124, 127 (4th Cir. 1983).

## **ARGUMENT**

Staying discovery in this case pending the outcome of Defendant's Motion to Dismiss would impose significant harm on the Plaintiff and unnecessarily delay the results of this litigation. "The mere filing of a dispositive motion, in and of itself, does not halt discovery obligations in federal court." *Califano v. Roman Cath. Diocese of Rockville Ctr.*, 2024 U.S. Dist. LEXIS 172627, *6 (E.D.N.Y Sept. 24, 2024). Liberty has not met its burden to establish the necessity of a stay.

Courts can evaluate a motion to stay discovery under two standards. On the one hand, Rule 26(c)(1) vests courts with the authority to issue a stay of discovery where the moving party shows good cause, as evaluated under a number of relevant factors, none of which alone is dispositive. Fed. R. Civ. P. 26(c)(1); *Blankenship v. Napolitano,* No. 2:19-CV-00236, 2019 WL 6173530, at *2 (S.D.W.Va. Nov. 19, 2019) (noting that these factors include "(1) the type of motion, (2) whether the motion is a legal challenge or dispute over the sufficiency of allegations, (3) the nature and complexity of the action, (4) whether counterclaims and/or cross-claims have been interposed, (5) whether other parties agree to the stay, (6) the posture or stage of the litigation, (7) the expected extent of discovery in light of the number of parties and complexity of the issues in the case, (7) and any other relevant circumstances").

Alternatively, courts have authority to grant a stay of discovery under similar factors established at common law, including "whether the defendant has made a strong showing that the

3

plaintiff's claim is unmeritorious; the breadth of discovery and the burden of responding to it; the risk of unfair prejudice to the party opposing the stay; the nature and complexity of the action; ... and the posture and stage of the litigation." *Colonial River Wealth Advisors, LLC v. Cambridge Inv. Rsch., Inc.,* No. 3:22-CV-717, 2023 WL 4936708, at *1 (E.D. Va. June 5, 2023); *see also Blankenship*, No. 2:19-CV-00236, 2019 WL 6173530, at *2 (evaluating a motion to stay under the 26(c)(1) factors, and then noting that judicial economy, harm to the moving party, and prejudice to the non-moving party are also relevant factors to the analysis).

Because there is significant overlap between the factors presented under 26(c)(1) and common law, and because no single factor is dispositive of the analysis, Plaintiff's argument proceeds under the factors at common law for the sake of simplicity. In doing so, Plaintiff does not waive her arguments against Defendant's contention that 26(c)(1) controls the issue here but argues that no combination of relevant factors can establish the need for a stay under either the Federal Rules or common law. As explained, *infra*, Liberty's Motion to Stay is not persuasive as to any of these factors.

### I. The ministerial exception and ecclesiastical abstention doctrine do not present jurisdictional bars to Plaintiff's claim and are thus not appropriately considered at the motion to dismiss stage

As a basis for Defendant's Motion to Stay, they continue to rely on arguments that were prematurely raised in the Motion to Dismiss. Defendant argues that the ministerial exception and ecclesiastical abstention doctrine are jurisdictional bars. Motion to Stay at 10-11. However, this argument fails on its face because both doctrines are affirmative defenses, not jurisdictional bars, and were improperly raised by the Defendant at the Motion to Dismiss stage, when these are arguments that should be raised at Summary Judgement. *See Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171, 195 n.4 (2012); *Doe v. Mercy High Sch., Inc.,*

4

2024 U.S. Dist. LEXIS 110364, at *33 (D. Md. June 24, 2004). *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (The Fourth Circuit held that "a motion to dismiss… generally cannot reach the merits of an affirmative defense", it is only in "relatively rare circumstances. . . where facts sufficient to rule on an affirmative defense . . . 'clearly appear[] on the face of the complaint'" such that the court may resolve the defense on a Rule 12(b)(6) motion to dismiss.). This is not one of those rare cases, accordingly, the Court should not lend credence to either argument.

Regardless of the fact that Plaintiff, an Information Services Apprentice at the IT helpdesk, is not a minister, the ministerial exception is an affirmative defense, not a jurisdictional bar and thus not appropriately raised at the Motion to Dismiss stage. *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC* at 195 n.4 (internal citations omitted) ("We conclude that the exception operates as an affirmative defense to an otherwise cognizable claim, not a jurisdictional bar. That is because the issue presented by the exception is 'whether the allegations the plaintiff makes entitle him to relief,' not whether the court has 'power to hear [the] case.'").

While the ecclesiastical abstention doctrine precludes Court's review of religious doctrine, the First Amendment "does not...remove all controversies involving religious institutions from the purview of civil courts." *Byrd v. DeVeaux*, No. DKC-17-3251, 2019 WL 1017602, at *5 (D. Md. Mar. 4, 2019) (citing *Jones v. Wolf*, 443 U.S. 595, 602-03 (1979). *See also Doe v. Mercy High Sch., Inc.,* 2024 U.S. Dist. LEXIS 110364, at *33 (D. Md. June 24, 2004). The ecclesiastical abstention doctrine does not create a jurisdictional bar because this controversy "can be decided without resolving an ecclesiastical controversy" and thus "a civil court may properly exercise jurisdiction." *Dixon v. Edwards*, 290 F.3d 699, 714 (4th Cir 2002). *See Edley-Worford v. Va. Conf. of the United Methodist Church,* 430 F. Supp. 3d 132, 138 (E.D. Va. 2019) (internal citations omitted) ("[T]he Court need not delve into an 'extensive inquiry ... into religious law and

5

polity.' Nor would a decision by this Court 'disturb the decisions of the highest ecclesiastical tribunal.'").

Moreover, Plaintiff is entitled to challenge the Defendant's religiously motivated explanation for her termination under the *McDonnell Douglas* burden-shifting analysis; nothing prevents a Court from asking whether the motive was pre-text for discrimination. *Goodman v. Archbishop Curley High Sch., Inc.,* 149 F. Supp. 3d 577, 586-88 (D. Md. 2016) "[C]ourts have recognized that simply allowing an employment discrimination or retaliation claim to proceed under the *McDonnell Douglas* scheme does not threaten a Defendant's religious interests or freedoms. [] ([I]n those cases where a defendant proffers a religious purpose for its allegedly discriminatory employment action, a plaintiff will usually be able to challenge as pretextual the employer's justification . . . .') *Id.* at 586 *citing DeMarco v. Holy Cross High School,* 4 F.3d 166 (2d Cir. 1993). *See also Buettner-Hartsoe v. Balt. Lutheran High Sch. Ass'n,* 2021 WL 2580385 at *35 (D. Md. June 23, 2021).

## II. Plaintiff has alleged a meritorious claim for sex discrimination.

Plaintiff has alleged a prima facie case of sex discrimination under Title VII. Compl. ¶¶ 20–24. Liberty's termination letter attached as Exhibit B to Def. Mem. spells out plainly that Plaintiff was terminated because she is transgender. ECF No. 12-2. *See Califano v. Roman Cath. Diocese of Rockville Ctr.*, 2024 U.S. Dist. LEXIS 172627, *10 (E.D. N.Y Sept. 24, 2024). ("[F]rom a pleadings standpoint, Plaintiff has adduced facts demonstrating that Defendants indeed took an adverse action against him in part -- if not solely -- for discriminatory reasons. That is enough in the undersigned's view to state a claim.").

Defendant does not dispute that Ms. Zinski's gender identity, and thus sex, was the basis for her termination. Instead, Defendant has repeatedly argued in its Motion to Dismiss and Motion to

Stay Discovery that Liberty is free to discriminate based on sex due to its sincerely held religious beliefs. Motion to Stay at 10; Def. Mem. at 6–17, 24–37. Liberty misinterprets Sections 702 and 703 of Title VII. The law does not provide, as Liberty University asserts, that it is "exempt from employment discrimination claims as a religious institution generally. . . and as a religious educational institution generally." Motion to Stay at 10. Rather, Title VII creates a carve out for religious employers to discriminate on the basis of an employee's religion. Sections 702 of Title VII. The Fourth Circuit has been abundantly clear that religious institutions are, nevertheless, subject to Title VII's prohibition on sex discrimination. *Rayburn v. General Conference of Seventh-Day Adventists*, 772 F.2d 1164, 1166–67 (4th Cir. 1985) (internal citations omitted); *see also Kennedy v. St. Joseph's Ministries, Inc.*, 657 F.3d 189, 192 (4th Cir. 2011).

As explained in her Opposition to Defendant's Motion to Dismiss, Plaintiff disputes the many grounds upon which Liberty asserts it is immune from suit under Sections 702 and 703 of Title VII, the ecclesiastical abstention doctrine, the Religious Freedom Restoration Act (RFRA), the ministerial exception, and the First Amendment right to expressive association. *See generally* Pl. Opp'n. to Def. Mem. Critically, for the purposes of the instant Motion, Plaintiff's Opposition argues that none of Defendant's defenses bear on this Court's jurisdiction. *Id.* at 21 -23.

The Western District has encountered motions to stay discovery in the context of Title VII claims before and has allowed discovery to proceed despite defendants' motions. *See, e.g., Bennett*, No. CV 7:15-CV-00543, 2016 WL 10721816, at *2. In *Bennett*, the court denied the defendant's motion to stay discovery pending a ruling on the defendant's motion to dismiss the plaintiff's sex discrimination claim. *Id.* Though it did not rule on the motion to dismiss at that time, it reasoned that denying the motion to stay was warranted because "the court certainly cannot say that 'there appears to be an immediate and clear possibility that [dismissal] will be granted.'" *Id.* at *1.

7

Similarly in the case at bar, without any immediate and clear possibility that dismissal will be granted, Plaintiff requests that the Court deny Defendant's Motion to Stay.

Rule 26(c) "creates a rather high hurdle" for the moving party to establish that good cause requires a stay of discovery. *Wymes v. Lustbader*, 2012 WL 1819836, at *14 (D. Ma. May 16, 2012) (internal citations omitted). Among other factors considered to establish good cause, courts ask whether a defendant has made a "strong showing that plaintiff's claim is unmeritorious." *Colonial River Wealth Advisors, LLC* at 1. Liberty has failed to make that showing. "In balancing the harm produced by a delay in discovery against the possibility that the motion will be granted and eliminate the need for such discovery, it may be helpful to take a preliminary peek at the merits of the allegedly dispositive motion to see if on its face there appears to be an immediate and clear possibility that it will be granted." *Bennett v. Fastenal Company*, 2016 U.S. Dist. LEXIS 194431, 2016 WL 10721816, at *1.

### III. The breadth of discovery in this case is not so burdensome to Defendant as to warrant a stay of discovery.

Evidence readily available to both parties illustrates that discovery is not likely to be overly complicated in the instant case. The parties collectively named only nine people in their initial disclosures with relevant information about the case. And the only discovery requests served thus far have been narrow requests for production of documents concerning Plaintiff's job duties, personnel file, and the like. Further, the period of Ms. Zinski's hiring and employment at Liberty did not last more than seven months, which limits the number of discoverable documents that Plaintiff may request. Rather than seeking relief from genuinely oppressive discovery obligations, it appears Defendant has filed this Motion to block Plaintiff from information that is both discoverable and relevant to her case.

**IV.     Defendant suffers no additional burdens or unconstitutional intrusions by responding to Plaintiff's discovery requests.**

Plaintiff does not ask this Court to weigh in on matters of ecclesiastical concern, such as theological controversy, church discipline, or church government. The Complaint does not ask the Court to decide if Ms. Zinski's interpretation of Scripture or Liberty's doctrinal statement is correct. Rather, the Complaint seeks a determination from the Court that Liberty's termination of Ms. Zinski on the basis of her gender identity constitutes unlawful sex discrimination in violation of Title VII. Plaintiff has every intention of honoring her responsibilities under the Federal Rules of Civil Procedure and the U.S. Constitution by seeking only that discovery which is permitted under those laws.

Liberty argues that it would suffer significant and constitutionally impermissible hardship absent a stay because probing into Liberty's religious beliefs represents an intrusion into its First Amendment liberties. Motion to Stay at 3-4. Liberty's argument is confounding. It argues that its sincerely held religious beliefs are the reason it is permitted to discriminate on the basis on sex, but also that it should not be required to reveal to Plaintiff what those beliefs entail. Nevertheless, as Plaintiff argued in her Opposition to Defendant's Motion to Dismiss, Liberty's religious beliefs are not dispositive of the claim. Pl. Opp'n at 7-10. What is dispositive is whether she was fired based on her sex. Accordingly, Plaintiff seeks permissible discovery "concerning the facts surrounding Plaintiff's separation" and the "nature of the job at issue." *McCallum v. Billy Graham Evangelistic Ass'n*, 824 F. Supp. 2d 644, 652 (W.D.N.C. Aug. 5, 20211) citing *Rayburn v. General Conference of Seventh-Day Adventists*, 772 F.2d 1164, 1165 (4th Cir. 1985). Defendant heavily relies on the ministerial exception. While "[Ms. Zinski] was not a rabbi, priest, or member of the clergy with formal doctrinal training" and "the ministerial and church autonomy doctrines appear to be inapplicable to Plaintiff's claim, at the very least, discovery is necessary to proceed with this

9

case--namely to discern whether the exceptions even apply to Plaintiff's role." *Califano* 2024 U.S. Dist. LEXIS 172627 at 27. Therefore, as in *Califano*, "staying discovery on these critical points would be inappropriate." *Id.* at 27.

Defendant cites several out of circuit, unpublished cases, alongside in-circuit, yet inapplicable cases to support this contention that discovery at this stage would encroach upon its religious freedoms. In *Blankenship v. Trump*, the Plaintiff sought documents and communications from sitting Senators, a state Supreme Court Justice, and the State Attorney General to show that these political figures conspired against him to defeat his candidacy for Senate. *Blankenship v. Trump*, 2020 U.S. Dist. LEXIS 25302, *2 (S.D.W. Va. Feb. 13, 2020). The documents and communications in that case included "sensitive and confidential material" that "spann[ed] national and state political spectrums" *Id.* at 6. Plaintiff is not seeking any documents that would implicate national security concerns or the like. Liberty curiously also cites to *Miranda v. Garland*, where the Court held that the District Court lacked jurisdiction to issue class-wide injunctive relief that enjoined the process used to conduct bond hearings for aliens and on an individual basis the detention procedures satisfied constitutional requirements and thus there was no loss of First Amendment freedoms through the bond hearing and detention process. 34 F.4th 338, 349 (4th Cir. 2022).

By contrast, other more factually analogous cases lean in Plaintiff's favor on this Motion to Stay. In a strikingly similar case to Ms. Zinski's in which a teacher at a religious school filed a Title VII sex discrimination claim, the defendant asked the Court to limit discovery so that it would not be "forced to endure intrusive, wide-ranging, and high-cost probes into doctrine-related personnel decisions and application of church doctrine to various employment issues." *Ference v. Roman Catholic Diocese of Greensburg*, 2023 U.S. Dist. LEXIS 114407, *3 (W.D. Pa., Jan. 18,

10

2023). In response, the plaintiff argued that the defendant was attempting to exclude basic information relevant to its liability under Title VII and attempting to relitigate its Motion to Dismiss. The Court held that the defendant's discovery motion was not warranted and the plaintiff was entitled to discovery, including about "the allegedly secular nature of Mr. Ference's employment." *Id*. at 4. The court held that bifurcating discovery would result in "delay and additional costs" *Id.* at 5. As in *Ference*, this Court could properly find that Plaintiff's discovery on similar topics is warranted at this stage of litigation in order to avoid delays and unnecessary costs. If Liberty takes issue with any particular discovery request, there is a mechanism built into the discovery process where it may object, and or file a narrower motion if such a dispute arises.

In another case involving a teacher who brought a Title VII suit against a religious school, the defendant filed a Motion to Stay arguing the same as Defendant does here: that Plaintiff's claims are barred by the church autonomy doctrine and the ministerial exception, and that discovery would be contentious, lengthy, and expensive. *Califano*, 2024 U.S. Dist. LEXIS 172627 at 5. The court held that discovery would not be costly or "cause a substantial burden" because the plaintiff was employed by the defendant for less than two years. *Id*. at 25–26. Here, Ms. Zinski was terminated after being employed by Liberty for less than one year. Comp. ¶¶ 1, 10. In line with the *Califano* court's reasoning, discovery does not present a substantial burden here either.

**V.      Plaintiff faces a great risk of unfair prejudice if the Court grants Defendant's request for a stay.**

Defendant proposes a stay of indefinite time and in regard to all discovery—essentially asking the Court to completely stay the litigation. This uncertain timeline creates a great risk of unfair prejudice to the Plaintiff. Staying discovery "delays resolution of the case and doing so without sufficient cause erodes the justness of the ultimate result." *Flynn v. Nevada*, 345 F.R.D. 338, 349 (D. Nev. Dec. 14, 2023) (citing *Dietrich v. Boeing Co.*, 14 F.4th 1089, 1095 (9th Cir.

11

2021) (noting that delays "conflict with one of the basic principles of our legal system—justice delayed is justice denied")). Ms. Zinski has waited long enough for an ultimate result. Ms. Zinski had every expectation that, given her positive performance reviews, her employment would continue long beyond her probationary period so that she could continue to develop her skills as an IT professional. Compl. ¶¶ 12–13, 15. She lost her job over one year ago. *Id*. ¶¶ 17–18. She has already waited to exhaust her remedies with the EEOC. ECF No. 12-3. Delaying discovery now may result in further delays down the line. If the Court were to grant the stay, once it was lifted, Defendant will likely need time to brush up on the facts and formulate a discovery plan, creating an even longer waiting period than if discovery commenced as the Pretrial Order currently commands. *Kennedy v. Fannie Mae*, 2013 U.S. Dist. LEXIS 156425, *2 (E.D.N.C. Oct. 31, 2013) ("Motions to stay are generally disfavored because delaying discovery may cause case management problems as the case progresses or impede the court's responsibility to expedite discovery."). Furthermore, the current discovery period is, naturally, closer in time to the facts at the center of this dispute. Delaying discovery until some uncertain date when the Motion to Dismiss is decided only creates greater risks to critical discovery elements, such as accurate witness recollections and proper document retention. In other cases, courts have denied motions to stay discovery for even a period of just a few months. *See, e.g., Sehler v. Prospect Mortg., LLC*, No. 1:13CV473 JCC/TRJ, 2013 WL 5184216, at *3 (E.D. Va. Sept. 16, 2013).

In order to issue a stay, a court must be satisfied that a "pressing need" exists, and that "the need for a stay outweighs any possible harm to the nonmovant." *Elite Const. Team, Inc. v. Wal-Mart Stores, Inc.*, JKB-14-2358, 2015 U.S. Dist. LEXIS 25231, 2015 WL 925927, at *3 (D. Md. Mar. 2, 2015); *Hunt Valley Baptist Church, Inc. v. Balt. Cty.*, 2018 U.S. Dist. LEXIS 54081, *6 (D. Md. Mar. 29, 2018) (denying a motion to stay discovery where the plaintiff claimed that the

defendants violated the free exercise clause). Defendant has failed to identify any pressing need to stay discovery, yet Defendant seeks an all-encompassing stay of discovery for an indefinite amount of time. Liberty presents the Court with only two paths forward: either it prevails on its Motion to Dismiss and the case is dismissed, or, alternatively, Liberty does not prevail on its Motion to Dismiss and, as indicated in its Motion to Stay Discovery, Liberty will seek an immediate interlocutory appeal to the Fourth Circuit. Motion to Stay at 17. Liberty's attempt to force the Court's hand to rule in its favor through its characterization of potential outcomes has no impact on this Court's ability to deny the Motion to Stay. Further in the event that the Court does not grant Liberty's Motion to Dismiss and grant the Motion to Stay, Plaintiff would lose valuable time collecting documents, taking depositions, and otherwise preparing her case. As the Supreme Court has held: a trial court abuses its discretion when it grants "a stay of indefinite duration in the absence of a pressing need." *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936); *see also ePlus, Inc. v. Lawson Software, Inc.*, 2010 U.S. Dist. LEXIS 31322, *10 (E.D. Va Mar. 31, 2010). Defendant's assertion does not show a pressing need to pause discovery.

In contrast to Defendant's arguments, several district courts in the Fourth Circuit have cautioned against staying discovery citing case management problems and delays. "Such motions are not favored because when discovery is delayed or prolonged it can create case management problems which impede the Court's responsibility to expedite discovery and cause unnecessary litigation expenses and problems." *Simpson v. Specialty Retail Concepts, Inc.*, 121 F.R.D. 261, 263 (M.D.N.C. 1988); *Kron Medical Corp. v. Groth,* 119 F.R.D. 636 (M.D.N.C. 1988) (same). (These courts agree that a stay of discovery may be antithetical to judicial economy. *Id.* ("Disruption or prolongation of the discovery schedule is normally in no one's interest. A stay of discovery duplicates costs because counsel must reacquaint themselves with the case once the stay

13

is lifted. Matters of importance may be mislaid or avenues unexplored. A case becomes more of a management problem to the Court when it leaves the normal track. While time may heal some disputes, in others it merely permits more opportunity for festering."); *see also Wymes v. Lustbader*, 2012 WL 1819836, at *16-17.

Liberty argues that the discovery process would be "time-consuming", "expensive" and "fruitless" without any reasoning for justification to support its contentions. Motion to Stay at 5. The nature and complexity of this action and the posture and stage of the litigation do not warrant a stay. This is a fairly straightforward, single-plaintiff, single-defendant, single-claim case and should not require resource-intensive discovery. Even Liberty admits this, stating "[t]his is not a complex matter, as it involves a single-count complaint alleging a violation of Title VII." Motion to Stay at 14.

This Court is "well-versed in the costs of discovery and the desire for inexpensive resolution of cases, but the Court must be equally cognizant that a plaintiff has a significant 'interest in pursuing [the] case without delay.' Delaying a plaintiff's pursuit of justice premised on a bare desire to avoid the ordinary cost or inconvenience of discovery is an unjustifiable disservice to those coming to this courthouse as a forum to right a perceived wrong." *Flynn v. Nevada*, 345 F.R.D. 338, 349 (D. Nev. 2023) (internal citations omitted). As well, there is "nothing inexpensive about staying discovery pending resolution of an unmeritorious motion to dismiss. When that motion to dismiss is denied, the same discovery costs will be incurred despite the case stagnating in contradiction of the Rule 1 goals for a just and speedy resolution." *Id*. at 349-50. This case is well on its way and is ripe for discovery to proceed. The Court has already issued a pretrial order. ECF No. 15. The parties have completed their Rule 26(f) conference, filed their joint 26(f) report

14

(ECF No. 24), and exchanged initial disclosures. Plaintiff sees no reason to further delay this case and delay her pursuit of justice.

## CONCLUSION

For the foregoing reasons, and because neither of the factors nor common law support granting a Motion to Stay, the Plaintiff respectfully requests that the Court deny Defendant's Motion to Stay.

Respectfully submitted,

*/s/ Samantha R. Galina*
Paul M. Falabella (VSB No. 81199)
Samantha R. Galina (VSB No. 96981)
Butler Curwood, PLC
140 Virginia Street, Suite 302
Richmond, Virginia 23219
Telephone: (804) 648-4848
Facsimile: (804) 237-0413
Email: paul@butlercurwood.com
samantha@butlercurwood.com

Wyatt S.M. Rolla (VSB No. 85625)
Samantha C. Westrum (VSB No. 98453)
ACLU of Virginia
P.O. Box 26464
Richmond, Virginia 23261
Telephone: (804) 418-1980
Email: wrolla@acluva.org
swestrum@acluva.org

*Counsel for Plaintiff*

15

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 22, 2024, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record.

                                                    */s/ Samantha R. Galina*