IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Lynchburg Division

| | |
|---|---|
| ELLENOR ZINSKI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Case No. **6:24-cv-41-NKM** |
| | ) |
| LIBERTY UNIVERSITY, INC., | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT LIBERTY UNIVERSITY'S REPLY IN SUPPORT OF MOTION TO STAY DISCOVERY PENDING ADJUDICATION OF MOTION TO DISMISS**

Pursuant to Local Rule 11(c) and the Court's current Scheduling Order (dkt. 15, ¶7), Defendant Liberty University, Inc. ("Liberty University") hereby files this reply in support of its Motion to Stay Discovery Pending Adjudication of its Motion to Dismiss (dkt. 25.) For the reasons that follow and for all those in Liberty University's Memorandum (dkt. 26, "Stay Memorandum"), the Court should stay discovery pending resolution of the motion to dismiss.

**INTRODUCTION**

Plaintiff's Complaint (dkt. 1) seeks to hold Liberty University liable for terminating an employee who knowingly and intentionally flouted the religious employment requirements that Liberty University places on all of its employees—namely, to conform their religious beliefs and conduct to Liberty University's Doctrinal Statement and sincere religious convictions. (*See* dkt. 12, Memorandum in Support of Motion to Dismiss, "MTD Memorandum," 4-7.) Discovery arising from Plaintiff's claims will necessarily require the Court to "intrude upon more than a mere employment decision," *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171, 188 (2012), and "threatens the school's independence in a way that the First Amendment does not allow." *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 592 U.S. 732, 762 (2020). Indeed,

the discovery that Plaintiff is so eager to undertake while the motion to dismiss is pending is "the very process of inquiry" that intrudes upon Liberty University's religious beliefs and employment requirements. *See NLRB v. Catholic Bishop of Chicago*, 440 U.S. 490, 502 (1979); *see also Palmer v. Liberty Univ.*, 72 F.4th 52, 77 (4th Cir. 2023) (Richardson, J., concurring) (same). Indeed, the First Amendment protects Liberty University "not only from ultimate liability, but also from judicial *inquiry* itself." *Palmer*, 72 F.4th at 77 (emphasis original).

Plaintiff suggests that the Court ignore the significant constitutional implications of discovery in this matter for the sole reason that Plaintiff has purportedly alleged a plausible sex discrimination claim that is entitled to proceed to discovery regardless of the constitutional intrusion it represents. (*See* dkt. 29, Response in Opposition to Motion to Stay Discovery Deadlines, "Opp'n," 6.) This is incorrect. If Plaintiff's position was correct, "*every* employment discrimination case against a religious employer would first interrogate the claim's merits – and turn to the [constitutional] exception only after concluding that the religious institution had run afoul of federal law." *Billard v. Charlotte Catholic High Sch.*, 101 F.4th 316, 329 (4th Cir. 2024) (emphasis original). But, that is "not how most of these cases go." *Id.* Nor, should it be. What Plaintiff seeks "requires [the Court] to inquire into [Liberty University's] motives," and "that is precisely what [the Court] should avoid." *Palmer*, 72 F.4th at 79 (Richardson, J., concurring). Liberty University seeks a mere temporary pause in discovery while a potentially dispositive motion is adjudicated. Reason counsels in favor of that pause. As a "prudential matter," *Billard*, 101 F.4th at 329, the Court should decide the motion to dismiss "before going any further." *Palmer*, 72 F.4th at 79 (Richardson, J., concurring).

The relevant considerations compel the conclusion that commencing discovery prior to resolution of the motion to dismiss is inappropriate because the potentially dispositive nature of

the motion to dismiss is likely to make discovery unnecessary, there is no prejudice to Plaintiff from a temporary stay pending adjudication of Liberty University's motion, and the virtual certainty of an interlocutory appeal that will deprive this Court of jurisdiction over any discovery or proceedings in this matter and will necessarily result in a stay of the proceedings anyway compels granting the Motion to Stay (dkt. 25).

## ARGUMENT

I. **LIBERTY UNIVERSITY'S FIRST AMENDMENT DEFENSES ALONE WARRANT A STAY OF DISCOVERY.**

Plaintiff contends that Liberty University's defenses are insufficient to warrant a stay of discovery in this matter because Plaintiff has purportedly made out a prima facie case of sex discrimination. (Opp'n 5-7.) Plaintiff's contention ignores the difference between a typical Title VII case and one involving the constitutionally grounded ministerial exception and ecclesiastical abstention doctrines. As several courts have held, a stay of discovery is warranted while such constitutionally significant defenses are adjudicated on a motion to dismiss. *See, e.g.*, *Willis v. Keen*, No. 4:23-cv-197-DMN-JMV, 2024 WL 1291514, (N.D. Miss. Mar. 26, 2024); *Garrick v. Moody Bible Inst.*, No. 18 CV 573, 2021 WL 5163287 (N.D. Ill. Nov. 5, 2021). The same reasoning warranting a stay in those cases compels a stay here.

In *Moody*, the defendant raised the ministerial exception as a defense to a plaintiff's Title VII sex-discrimination claims. 2021 WL 5163287, at *3-4. The court held that all factors necessitated a stay while the First Amendment defenses were adjudicated. And, significantly, the plaintiff's claims in *Moody* had been pending for *several years*, *id.* at *3, not—as Plaintiff's claims here—for a matter of months. (*Contra* dkt. 1, Compl. ¶7.) On the prejudice consideration, the Court found that the ministerial exception defense overrode any claims of prejudice to the plaintiff. 2021 WL 5163287, at *3 ("[T]his court finds that the prejudice factor favors a stay. Although there

3

has not been any discovery since the case was filed *over three and a half years ago*, Professor Garrick alleges no tactical disadvantage or injury resulting from that or any stay, nor does she otherwise argue that a continued delay would harm her ability to litigate this case." (emphasis added)). The court noted the fact that the motion to dismiss would resolve all claims in the plaintiff's complaint further warranted a stay. *Id.* at *4 ("There can be no doubt that a favorable ruling for Moody may resolve the entire case, rendering any discovery taken to that point meaningless and wasted."). Finally, the court noted that the interests of judicial economy and the parties' resources would be best served by a stay while the ministerial exception defense was adjudicated on dismissal papers. *Id.* ("the burden factor likewise tips in favor of a stay. Staying discovery would preserve the parties' resources if Moody's appeal proves successful.").

In *Willis*, the court likewise noted that the ministerial exception defense warranted a stay of discovery while a motion to dismiss was pending. 2024 WL 1291514, *2-3. As is true here, all factors warranted a stay while the motion to dismiss was decided:

> Here, as Defendants have explained, and the court agrees, the ministerial exception, which serves as the basis for Defendants' motion to dismiss, may dispose of this cause in its entirety should the District Judge find it applicable here. Moreover, Plaintiff does not argue that additional discovery is necessary to decide whether the exception applies. Instead, Plaintiff argues that "completion of discovery in some instances is desirable and necessary . . . before a court can determine that there are genuine issues as to the material facts . . . [on] summary judgment." However, this is not a summary judgment motion, nor does Plaintiff make any showing that this is a case where such discovery is needed in order to decide the 12(b)(6) motion to dismiss, much less, what, if any, specific discovery is necessary.

*Id.* at *3.

All of these considerations are equally present here. (Dkt. 26, Stay Memorandum, 5-10, 15-16.) Favorable adjudication of Liberty University's motion will dispose of the entire case. There is no tactical disadvantage or harm in the ability for Plaintiff to litigate the claims after the Court decides the motion to dismiss. And, should the Court favorably adjudicate Liberty University's

4

motion, as it should, any discovery that took place during the short interim period in which the stay would be operative would be wasteful of the parties' resources, unnecessary to the dismissed claims, and meaningless. While that is bad enough in a typical case, it is all the more problematic when such potentially wasteful, unnecessary, and meaningless discovery takes place in violation of Liberty University's constitutional rights. All the factors that counseled in favor of a stay in the prior ministerial exception cases *supra* are equally present here and compel a temporary stay of discovery while the motion to dismiss pends.

## II. PLAINTIFF'S SUFFERS NO INJURY OR UNDUE PREJUDICE FROM ANY TEMPORARY STAY OF DISCOVERY.

### A. Temporary And Short Stays Are Not Prejudicial To Plaintiff.

"Many district court have granted motions to stay after finding that the plaintiff would not be prejudiced by a slight delay." *Sehler v. Prospect Mgmt., LLC*, No. 1:13cv473(JCC/TRJ), 2013 WL 5184216, *3 (E.D. Va. Sept. 16, 2023) (citing cases); *Kennedy v. Novartis Pharm. Corp.*, CIV.A 02-2331, 2002 WL 31051601, *1 (E.D. La. Sept. 12, 2002) (plaintiff is not prejudiced by temporary delay while motion practice proceeds). "Simply put, delay, in and of itself, does not constitute undue prejudice." *Oil-Dri Corp. of Am. v. Nestle Purina Petcare Co.*, No. 15 CV 1067, 2015 WL 13650951, *2 (N.D. Ill. May 5, 2015). *See also Garrick v. Moody Bible Inst.*, No. 18 CV 573, 2021 WL 5163287, *3 (N.D. Ill. Nov. 5, 2021) (same).

This is particularly true where, as here, the issues involved in the litigation are mostly legal questions. *E.g.*, *Mount v. PulsePoint, Inc.*, No. 13 Civ. 6592 (NRB), 2014 WL 902965, *2 (S.D.N.Y. Mar. 5, 2014) ("A temporary stay, which imposes minimal prejudice on plaintiffs given the predominance of legal issues, serves the interests of judicial administration and efficiency."); *Goldstein v. Costco Wholesale Corp.*, No. 21-80601, 2021 WL 2827757, *2 (S.D. Fla. July 8, 2021) ("When faced with legitimate challenges to the legal theory upon which [Plaintiff's]

complaint rests, a temporary stay of discovery is the proper course until such challenges are resolved."); *Skuraskis v. NationsBenefits Holdings, LLC*, 717 F. Supp. 3d 1221, 1228-31 (S.D. Fla. 2023) (same). And, it is also true where there are significant legal issues that could be dispositive of the entire litigation. *Harris v. Sexon*, No. 1:18-cv-80-DAD-SAB (PC), 2019 WL 4298036, *2 (E.D. Cal. Sept. 11, 2019) ("There is minimal prejudice to Plaintiff as the temporary stay will only be imposed until the [dispositive] issue is resolved."). (*See* dkt. 26, Stay Memorandum, 5, 7-10.)

### B. Plaintiff's Opposition Fails To Demonstrate Unfair Prejudice.

Plaintiff contends that a stay of discovery is prejudicial because any discovery efforts now are "closer in time to the facts at the center of this dispute." (Opp'n 12.) "Undue prejudice does not arise from a delay in the gathering of evidence . . . because delay is an inherent part of every stay of discovery." *NECA-IBEW Pension Trust Fund v. Bank of America Corp.*, No. 10 Civ. 440(LAK)(HBP), 2011 WL 6844456, *2 (S.D.N.Y. Dec. 29, 2011). As such, "the mere delay in Plaintiff's ability to proceed to discovery caused by the stay amounts to little, if any, prejudice." *Roa v. JPMorgan Chase Bank, N.A.*, No. 21 C 1361, 2021 WL 4927415, *1 (N.D. Ill. May 12, 2021); *Akishev v. Kapustin*, 23 F. Supp. 3d 440, 447 (D.N.J. 2014) ("Delay inherently results from the issuance of a stay, but mere delay does not, without more, necessitate a finding of undue prejudice and clear tactical advantage.").

In an effort to bolster the non-existent prejudice in this matter, Plaintiff contends that there are "risks to critical discovery elements, such as witness recollection and proper document retention." (Opp'n 12.) This is irrelevant legally and incorrect factually. Specifically, Plaintiff's contention is belied by the record before the Court already. First, "any passage of time could theoretically result in memories fading, but without more, such assertion is not sufficient to show that staying these proceedings would unduly prejudice Plaintiffs." *Orr v. Nat'l Rifle Assoc. of Am.*,

6

No. 1:17-cv-157 (GBL/MSN), 2017 WL 11501503, *3 (E.D. Va. May 19, 2017). *See also VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1319 (Fed. Cir. 2014) ("It is undoubtedly true, as many courts have observed, that with age and the passage of time, memories may fade and witnesses may become unavailable. Without more, however, these assertions here are not sufficient to justify a conclusion of undue prejudice."); *Campbell v. Sims*, No. TDC-20-2590, 2021 WL 4342039, *4 (D. Md. Sept. 23, 2021) (rejecting plaintiff's claims that a stay was prejudicial because memories could fade because "the risk of loss of evidence is inherent in all stays").

Second, the reasons Plaintiff was terminated by Liberty University is clearly articulated in Liberty University's Motion to Dismiss, and it has been provided to the Court in its entirety. (*See* dkt. 12-2.) Even Plaintiff acknowledges that Liberty University's letter (dkt. 12-2) provides the basis for Plaintiff's termination and forms the basis of Plaintiff's entire claim. (*See* dkt. 1, Compl., ¶18 (noting that Liberty University provided Plaintiff with a letter "advising [Plaintiff] that [Plaintiff's] employment was terminated effective immediately" and that "[t]he letter makes clear" the basis for the termination).) The seminal document at issue in this case is already preserved as part of the record before the Court, and little witness testimony is necessary to establish Liberty University's basis for its termination of Plaintiff. And, where—as here—other evidence preserves the salient issues, there is no prejudice from the delay inherent in all stays. *See Campbell*, 2021 WL 4342039, at *4. Thus, "there is no concern that delaying discovery might cause case management problems as the case progresses." *Rivers v. United States*, No. 6:18-cv-61, 2020 WL 1469475, *1 (W.D. Va. Jan. 24, 2020).

Moreover, a "speculative belief that [plaintiff] risks losing access to unidentified information is not evidence that [plaintiff] will be irreparably harmed by delaying discovery," *id.* (quoting *Dimension Data N.A., Inc. v. NetStar-1, Inc.*, 226 F.R.D. 528, 532 (E.D.N.C. 2005)), and

7

"plaintiff has not alleged that the discovery sought will be unavailable in the future or is subject to pending destruction if it is not taken now." *Dimension Data*, 226 F.R.D. at 532. Rather, as this Court found in *Rivers*, the Court can remain "confident each party to this case will honor its obligations to 'preserve what it knows, or reasonably should know is reasonably likely to be requested once discovery begins." *Rivers*, 2020 WL 1469475, at *1.

Plaintiff also contends that a stay here delays Plaintiff's ability to obtain "an ultimate result" in the litigation. (Opp'n 12.) What Plaintiff seeks in this action as an ultimate resolution is monetary damages for Plaintiff's alleged injuries. (Dkt. 1, Compl., 5.) And, Plaintiff's pursuit of monetary damages claims is not unduly prejudiced by temporary delays in discovery. *See, e.g.*, *Crossroads Sys., Inc. v. Dot Hill Sys. Corp.*, No. A-13-CA-1025-SS, 2015 WL 3773014, *2 (W.D. Tex. June 16, 2015). (*See also* dkt. 26, Stay Memorandum, 6.) Indeed,

> The Court is not moved by these vague assertions of hardship, but even accepting these contentions as true, the Court does not find they amount to the sort of "undue" prejudice that would lead this Court to deny the requested stay. Every day this Court interacts with litigants desperate to collect money which they believe is rightfully theirs and which they often times immediately need. Yet the wheels of justice often grind slowly, and Crossroads must wait as long as it takes just as all others do. *The fact of the matter is Crossroads seeks exclusively monetary damages, and mere delay in collecting those damages does not constitute undue prejudice.*

*Id.* at *2 (emphasis added). *See also Kingdom of Sweden v. Melius*, No. CV 14-04492 RSWL (Ex.), 2015 WL 7574463, *3 (C.D. Cal. Nov. 25, 2015) ("delay in the recovery of monetary damages is not sufficient to warrant the denial of a stay"); *Centripetal Net., LLC v. Keysight Tech., Inc.*, No. 2:22-CV-2, 2023 WL 5127163, *6 (E.D. Va. Mar. 20, 2023) (plaintiff not prejudiced by stay of ability to collect money damages). Thus, a temporary delay in the commencement of discovery does not unduly prejudice Plaintiff or Plaintiff's ability to collect the damages sought in the Complaint.

8

Finally, Plaintiff contends that there was a delay in the administrative proceedings that causes additional prejudice to Plaintiff from a delay in discovery here. (Opp'n 12.) Plaintiff cannot seriously be heard to suggest a delay in legally required EEOC proceedings can serve as justification for commencing discovery in this matter. All plaintiffs in employment disputes are required to engage in the EEOC process. *Chacko v. Patuxent Inst.*, 429 F.3d 505, 508 (4th Cir. 2005) ("An individual alleging discrimination in violation of Title VII must first file an administrative charge with the EEOC."). And, "[t]he filing of an administrative charge is not simply a formality to be rushed through so that an individual can quickly file his subsequent lawsuit." *Id.* at 510. Thus, Plaintiff cannot contend that legally required proceedings cause prejudice in the litigation (if any) that follows.

      **C.    Plaintiff's Contentions Concerning The Cause Of Plaintiff's Alleged Injury From A Stay Are False And Belied By The Allegations Of The Complaint.**

Plaintiff contends that Plaintiff "had every expectation that . . . [Plaintiff's] employment would continue long beyond [the] probationary period." (Opp'n 12.) This is simply false. Liberty University's Doctrinal Statement was provided to Plaintiff as part of the onboarding process, and Plaintiff was required to acknowledge it upon accepting employment at Liberty University. (*See* dkt. 12-2, Exhibit B, 1.) And, Plaintiff acknowledged Liberty University's sincere religious beliefs and its Doctrinal Statement upon accepting employment at Liberty University (*id.*) and acknowledged that Liberty University "employ[s] a workforce that acts in accordance with [its Doctrinal Statement] in order to protect [its] religious mission." (*Id.*) Plaintiff acknowledged all of this despite knowing that Plaintiff was executing a plan to deny Plaintiff's God-given sex in contravention to the Liberty University's Doctrinal Statement and religious employment requirements. (*Id.*) And, Plaintiff knew full well that Plaintiff was four months into a hormone regimen that specifically contradicts and conflicted with an employment requirement that Plaintiff

9

knew Liberty University considered as a condition of employment. (*See id.* (quoting Liberty University Doctrinal Statement).) Plaintiff ignored that employment requirement, deceptively accepted, acknowledged, and signed a document indicating compliance with the requirement, and flouted Liberty University's sincere religious convictions and practices. (*Id.*) To contend now that Plaintiff had some expectation of continued employment at Liberty University despite knowing Plaintiff's own actions and plans would prohibit such employment is simply false. Plaintiff knew Plaintiff's planned announcement would result in Liberty University terminating Plaintiff's employment, and there could be no merited expectation of long-term employment at Liberty University given Plaintiff's misrepresentations on Plaintiff's employment application and onboarding documents and Plaintiff's religious beliefs that are directly contrary to those required of employees at Liberty University. It cannot serve as a basis to contend prejudice from a temporary adjudication of claims that resulted from Plaintiff's deliberate misrepresentations.

### III. LIBERTY UNIVERSITY WOULD SUFFER SIGNIFICANT INJURY FROM BEING SUBJECTED TO INVASIVE DISCOVERY OF ITS CONSTITUTIONALLY PROTECTED INTERESTS.

Plaintiff contends that "Plaintiff is entitled to challenge the Defendant's religiously motivated explanation . . . under the *McDonnell Douglas* burden-shifting analysis." (Opp'n 6.) Plaintiff's contention ignores the problems inherent in this reasoning. First, Plaintiff's contention begins *in medias res*. "The prima facie case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002). Plaintiff is only entitled to probe Plaintiff's claims under *McDonnell Douglas* if the Complaint survives dismissal, and a plaintiff is "not entitled to discovery prior to dismissal because it is a purpose of Rule 12(b)(6) to allow a defendant to challenge the legal sufficiency of a complaint's

10

allegations without first subjecting itself to discovery." *Clark v. Ziegler*, 210 F. App'x 612, 612 (9th Cir. 2006) (citing *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987)).

Second, and more importantly, it is the very *McDonnell Douglas* framework and inquiry that Plaintiff is so eager to arrive at that works the injury on Liberty University. "Indeed, the burden-shifting framework of *McDonnell Douglas* . . . from which the prima facie case derives, is just a way of dividing intermediate evidentiary burdens that serves to bring the litigants and the court expeditiously and fairly to this ultimate question: What *motivated* the employer's decision?" *Palmer*, 72 F.4th at 79 (Richardson, J., concurring) (quoting *Tex. Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)) (emphasis original). "And that process of inquiry—not only the conclusions—is what risks entanglement, and is what we ought to steer clear of." *Id.* (quoting *NLRB v. Catholic Bishop of Chicago*, 440 U.S. 490, 502 (1979)) (cleaned up).

As Judge Richardson highlights, the injury imposed on Liberty University is being forced to submit to discovery of its religious motives while its motion to dismiss is pending. Plaintiff's desire to begin the probing inquiry and demands of discovery involves inquiries into more than just typical employment records and documents. Rather, it is

> the sort of "inquiry" that entangles us in matters of faith [and] encompasses more than just digging through a religious institution's employment files and deposing its leaders. In my view (and at the risk of sounding too metaphysical), the mere act of *questioning* the institution's motives—even if the court ultimately decides that those motives are "pure"—cheapens its authority over ecclesiastical affairs.

*Palmer*, 72 F.4th at 78 (emphasis original).

An example proves the problem with Plaintiff's rationale here.

> Suppose that a Baptist church fires one of its elderly preachers, saying that his sermons weren't quite "fire-y" enough. For the previous three years, the church had consistently warned him about the problem, reporting that congregants were dozing off while he was at the pulpit. But the preacher nonetheless turns around and sues, claiming age discrimination. We would rightly dismiss that suit as barred by the First Amendment; *we would not, for a moment, entertain wading into the merits of*

11

> *the preacher's claim*. And we certainly would not deign to decide whether he was "meeting his employer's legitimate expectations" when he was let go, and thus whether he could make out a prima facie case of discrimination. *We would recognize that even asking that question goes too far*.

*Id.* (emphasis added).

Yet, here, this is precisely the intrusive inquiry Plaintiff is so eager to undertake. Plaintiff has already forecasted that Plaintiff's sought-after discovery would force the Court to scrutinize whether Plaintiff was "meeting his employer's legitimate expectations," *id.*, because Plaintiff has already stated that Plaintiff's purported "expectation" of continued employment—albeit, as noted *supra*, not a legitimate one—is entirely premised on Plaintiff's claimed "positive performance reviews" and a concomitant expectation of employment "long beyond" Plaintiff's revelation of fundamentally contrary religious beliefs and conduct. (*See* Opp'n 12.) And, Plaintiff's descriptions of discovery in this matter are aimed at whether Plaintiff "could continue to develop [Plaintiff's] skills as an IT professional" (Opp'n 12), just like Judge Richardson's sample preacher would have requested concerning whether his development as a "fire-y" enough preacher warranted continued employment. *Palmer*, 72 F.4th at 78. Moreover, Plaintiff notes that the sought-after discovery in this case will be aimed at Plaintiff's contention that Liberty University's religious beliefs are somehow a "pretext for discrimination." (Opp'n 6.) But, that desired discovery is aimed at precisely the question in Judge Richardson's example of whether the preacher was fired for being insufficiently "fire-y" or whether his lack of sizzle was a pretext for age discrimination. *Palmer*, 72 F.4th at 78. This Court should not, for a moment, consider whether that claim can proceed where—as here—Liberty University has already demonstrated that its basis for terminating Plaintiff was entirely religious. (Dkt. 12-2, Exhibit B, 1-3; dkt. 12, MTD Memorandum, 4-6.)

A temporary stay of discovery while Liberty University's motion to dismiss prevents this constitutionally injurious process and comports with the First Amendment's demands. This Court

should make the prudential decision to avoid that inquiry while the motion to dismiss pends. Indeed, before permitting probing inquiries into Liberty University's religious beliefs, the Court should adjudicate the motion to dismiss because the reverse order "is – as a prudential matter – a bad idea." *Billard*, 101 F.4th at 329. "In sum, deciding the merits of an age-discrimination case— whether we rule for the employer or not—requires us to "inquire" into that employer's motives [and] that is precisely what we should avoid." *Palmer*, 72 F.4th at 79 (Richardson, J., concurring). "So—at least as a matter of prudence—[the Court] should decide if that's the case before going any further." *Id.*

IV. **A PRELIMINARY PEAK AT THE MERITS OF LIBERTY UNIVERSITY'S MOTION TO DISMISS IS WARRANTED AND DEMONSTRATES THE NEED FOR A STAY OF DISCOVERY PENDING ITS ADJUDICATION.**

Plaintiff chastises Liberty University for relying on the substantial constitutional and statutory bases for dismissal as a justification for staying discovery pending adjudication of that motion. (Opp'n 4.) This errs legally and is rather hypocritical given that Plaintiff's own opposition to a stay largely hinges on the merits of Liberty University's defenses.

First, as a matter of law, "it may be helpful to take a preliminary peek at the merits of the allegedly dispositive motion to see if on its face there appears to be an immediate and clear possibility that it will be granted." *Bennett v. Fastenal Co.*, No. 7:15-cv-00543, 2016 WL 10721816, *1 (S.D. Va. Mar. 8, 2016) (quoting *Simpson v. Specialty Retail Concepts, Inc.*, 121 F.R.D. 261, 263 (M.D.N.C. 1988)). *See also Ario Minerals, LLC v. Diversified Prod. LLC*, No. 1:23-00522, 2024 WL 3488075, *2 (S.D. W. Va. July 19, 2024) (same). Thus, in discussing the merits of its grounds for dismissal, Liberty University was following the relevant factors this Court has identified as necessary to determine whether a stay is appropriate. And, contrary to Plaintiff's criticism of Liberty University, Plaintiff concedes that this is an appropriate basis for moving to

13

stay discovery pending a potentially dispositive motion to dismiss. (Opp'n 8.) The merits of Liberty University's Motion (dkt. 11) plainly show a "clear possibility that it will be granted," *Bennett*, 2016 WL 10721816, at *1, and warrant a stay of discovery in this matter until that motion is adjudicated.

Second, Plaintiff's contention is rather hypocritical given that Plaintiff discusses the merits of Liberty University's Motion to Dismiss as a basis to deny a stay of discovery now. (*See* Opp'n 4-8.) Plaintiff contends that there should be no stay because Liberty University's motion on ministerial exception grounds is an affirmative defense that cannot be raised on a motion to dismiss. (Opp'n 4-5.) This is incorrect and irrelevant because, even assuming Plaintiff's contention is correct that the ministerial exception is an affirmative defense, that does not preclude the Court from adjudicating it on a motion to dismiss. (*See* dkt. 27, Reply in Support of Motion to Dismiss, 21-22.) Additionally, even Plaintiff's discussion of the issue demonstrates the need to look at the merits of Liberty University's Motion to Dismiss because Plaintiff—while chastising Liberty University for discussing the ministerial exception—argues that "Plaintiff, as an Information Services Apprentice at the IT helpdesk, is not a minister." (Opp'n 5.) In other words, while claiming that the merits should not be considered to determine whether a stay of discovery is warranted, Plaintiff exclusively relies on the merits of Liberty University's defenses.

More importantly, however, Plaintiff cannot contend—because it is not accurate—that the ecclesiastical abstention doctrine is an affirmative defense rather than a jurisdictional prohibition. Instead, Plaintiff contends that the Court can adjudicate Plaintiff's claims without "resolving an ecclesiastical controversy" (Opp'n 5), so the ecclesiastical abstention doctrine does not warrant a stay. But, that is a merits consideration, which the Court can and must look at to determine whether Liberty University's grounds for dismissal are likely to result in a termination of Plaintiff's claims.

As demonstrated in Liberty University's moving papers, resolution of Plaintiff's claims necessarily requires an adjudication of strictly ecclesiastical matters on Liberty University's religious justification for terminating Plaintiff's employment. (*See* dkt. 27, Reply in Support of Motion to Dismiss, 16-19; dkt. 12, MTD Memorandum, 14-17.)

Finally, Plaintiff contends that Liberty University's statutory defenses requiring dismissal are unmerited. (Opp'n 7.) Obviously, that objection to staying discovery requires Plaintiff to necessarily delve into the merits of Liberty University's Motion. But, more problematic for Plaintiff, Plaintiff's own formulation of the statutory exemptions in Sections 702 and 703 of Title VII are plainly misguided. Plaintiff contends that "[t]he law does not provide, as Liberty University asserts, that it is "exempt from employment discrimination claims as a religious institution generally . . . and as a religious educational institution generally [sic]." (Opp'n 7.) But, that is precisely what the law provides. *See* 42 U.S.C. §2000e-1(a) ("This subchapter *shall not apply* . . . to a religious corporation, association, educational institution, or society with respect to the employment of individuals of a particular religion to perform work connected with the carrying on by such corporation, association, educational institution, or society of its activities." (emphasis added)); 42 U.S.C. §2000e-2(e) ("it *shall not be an unlawful* employment practice for a school, college, university, or other educational institution or institution of learning to hire and employ employees of a particular religion if such school, college, university, or other educational institution or institution of learning is, in whole or in substantial part, owned, supported, controlled, or managed by a particular religion or by a particular religious corporation, association, or society, or if the curriculum of such school, college, university, or other educational institution or institution of learning is directed toward the propagation of a particular religion." (emphasis added)).

15

And, even the primary case upon which Plaintiff has based the claims at issue here unequivocally states, "Section 702 of the Civil Rights Act of 1964, 42 U.S.C. §2000e-1, *exempts* religious organizations from Title VII"s prohibition against discrimination in employment on the basis of religion." *Bostock v. Clayton Cnty.*, 590 U.S. 644, 682 (2020) (emphasis added). Plaintiff's construction of the defenses at issue here demonstrates the need for a stay of discovery because the plain text of those statutory exemptions compels a dismissal of Plaintiff's Complaint. (*See* dkt. 12, MTD Memorandum, 7-14.)

Thus, not only is it appropriate for the Court to preliminarily peek at the merits of Liberty University's dismissal grounds, doing so demonstrates that Plaintiff's claims face significant obstacles under the First Amendment and express statutory exemptions. Such a sneak peek plainly dictates that those defenses be adjudicated before any discovery commences on Plaintiff's constitutionally and statutorily doomed claims.

## V.     THE OTHER FACTORS WARRANT A STAY.

Plaintiff contends that Liberty University is attempting to "force the Court's hand to rule in its favor" by suggesting an interlocutory appeal is likely to be taken from the Court's resolution of the motion to dismiss. (Opp'n 13.) That is neither a fair nor accurate representation of Liberty University's contentions concerning the substantial likelihood of an interlocutory appeal. First, Liberty University was merely articulating that there are "other relevant circumstances" that warrant a stay in this matter. *Citynet, LLC v. Frontier W. Va. Inc.*, No. 2:14-cv-15947, 2016 WL 6133844, at *1 (S.D.W. Va. 2016). Second, and more importantly, Liberty University's contentions regarding the significant likelihood of an interlocutory appeal were an expression that there is a forthcoming delay of almost inevitable certainty and that "staying discovery now is an eminently logical means to prevent wasting the time and effort of all concerned, and to make the most

16

efficient use of judicial resources in this case." *Wymes v. Lustbader*, No WDQ-10-1629, 2012 WL 1819836, *4 (D. Md. May 16, 2012). *See also Rivers v. United States*, No. 6:18-cv-61, 2020 WL 1469475, *1 (W.D. Va. Jan. 24, 2020) (same). Liberty University's point was that should it not prevail on its motion to dismiss, it will certainly avail itself of its options for an interlocutory appeal to preserve it cherished First Amendment liberties and statutory rights. (*See* dkt. 26, Stay Memorandum, 16.) And, though Liberty University cannot speak for Plaintiff, it seems unlikely that Plaintiff would simply depart the field after having gone to the trouble of fraudulently misrepresenting agreement with Liberty University's employment requirements and Doctrinal Statement in order to gain employment that Plaintiff knew would be terminated to set a precedent on the claims at issue in the Complaint. Thus, given the all-but-certain interlocutory appeal from the party against whom the motion is decided and the divestment of jurisdiction over the subject of that interlocutory appeal (*see* dkt. 26, Stay Memorandum, 17), it is an inherent waste of the parties and the Court's resources to proceed to discovery on claims that will be inevitably paused once the motion is decided.

And, a stay of discovery when an interlocutory appeal is a virtual certainty makes eminent sense and best fosters judicial economy. If the motion to dismiss is granted, then no discovery will commence. Thus, it would make little sense to commence discovery that could very well become unnecessary and irrelevant. "[A] motion that may resolve the entire action, or by fully dispositive as to at least one litigant, favors a stay." *Baltimore Gas & Elec. Co. v. Rand Constr. Co.*, No. 1:24-1467-RDB, 2024 WL 4349641, *3 (D. Md. Sept. 30, 2024). *See also Orr v. Nat'l Rifle Assoc. of Am.*, No. 1:17-cv-157 (GBL/MSN), 2017 WL 11501503, *2 (E.D. Va. May 19, 2017) (granting stay of discovery pending potentially dispositive motion because it will "limit unnecessary discovery"); *Dye v. U.S. Bank Nat'l Ass'n*, No. 3:15-cv-82-RJC, 2015 WL 5326210, *1 (W.D.N.C.

17

Sept. 11, 2015) (staying discovery pending potentially dispositive motion to dismiss because "the pending Motion to Dismiss, if granted, would dispose of the entire case"). And, if it is not dismissed, then discovery still will not commence because the Court would lose jurisdiction over the aspect of the case pertaining to the appeal, which is the entirety of the claims here. (*See* dkt. 26, Stay Memorandum, 16-17.) Thus, prudence dictates that discovery be stayed pending resolution of Liberty University's Motion to Dismiss.

## CONCLUSION

For the foregoing reasons and for all those in Liberty University's Memorandum (dkt. 26), the Court should stay discovery pending resolution of the motion to dismiss

Respectfully submitted,

/s/ Daniel J. Schmid
Mathew D. Staver*
Horatio G. Mihet*
Daniel J. Schmid (VA Bar 84415)
*Attorneys for Defendant Liberty University, Inc.*
LIBERTY COUNSEL
P.O. Box 540774
Orlando, FL 32854
Phone: (407) 875-1776
Email: court@LC.org
　　　　hmihet@LC.org
　　　　dschmid@LC.org

*Admitted pro hac vice

18

## CERTIFICATE OF SERVICE

      I hereby certify that on this 27th day of November, 2024, I caused a true and correct copy of the foregoing to be electronically filed with this Court. Service will be effectuated on all counsel of record via this Court's ECF/electronic notification system.

                                          /s/ Daniel J. Schmid
                                          Daniel J. Schmid