**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**Lynchburg Division**

| | | |
|---|---|---|
| **ELLENOR ZINSKI,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. <u>6:24-cv-41-NKM</u>** |
| | ) | |
| **LIBERTY UNIVERSITY, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**DEFENDANT LIBERTY UNIVERSITY'S OBJECTIONS TO MAGISTRATE JUDGE'S**
**ORDER DENYING MOTION TO STAY DISCOVERY**
<u>**PENDING ADJUDICATION OF ITS MOTION TO DISMISS**</u>

Pursuant to Fed. R. Civ. P. 72 and 28 U.S.C. §636(b)(1)(A), Defendant, Liberty University, Inc. ("Liberty University"), hereby Objects to the Magistrate Judge's Order (dlt. 32, "Order") denying Liberty University's Motion to Stay Discovery Pending Resolution of Motion to Dismiss. For the following reasons, the Court should overrule the Magistrate Judge's Order and enter an order staying discovery pending its resolution of Liberty University's Motion to Dismiss.

## <u>INTRODUCTION</u>

This Court is required to review the Magistrate Judge's determinations and set aside any such portions of the Order that are clearly erroneous or contrary to law. Fed. R. Civ. P. 72(a). The Magistrate Judge's Order is contrary to law for the following reasons: (1) The Magistrate Judge erred by concluding that a stay was unwarranted despite the plainly dispositive nature of every one of Liberty University's five grounds for dismissal. (2) The Magistrate Judge erred by finding that Liberty University would suffer only minimal harm absent a stay. (3) The Magistrate Judge erred by admonishing Liberty University for purportedly citing cases that do not support its conclusion and threatening sanctions because Liberty University did no such thing. (4) The Magistrate Judge

erred by concluding that an interlocutory appeal would not divest this Court of jurisdiction over the subject of the interlocutory appeal.

## <u>OBJECTIONS</u>

A.    **The Magistrate Judge Erred By Concluding That A Stay Was Unwarranted Despite The Plainly Dispositive Nature Of Every One Of Liberty University's Five Grounds For Dismissal.**

Though the Magistrate Judge declined to base her decision on the question of whether Liberty University's Motion to Dismiss is case dispositive (Order, 5), the dispositive nature of the defenses before the Court merit overruling the Magistrate Judge's Order. "A district court has discretion to stay discovery pending the outcome of a dispositive motion." *Blankenship v. Trump*, No. 2:19-CV-00549, 2020 WL 748874, *2 (S.D.W. Va. Feb. 13, 2020). In fact, "[b]ecause the dispositive motion has the potential to dispose of the case without the need for further discovery, it falls within the court's discretion to stay discovery pending resolution of the dispositive motion." *Tilley v. United States*, 270 F. Supp. 2d 731, 735 n.1 (M.D.N.C. 2003). *See also Simpson v. Specialty Retail Concepts, Inc.*, 121 F.R.D. 261, 263 (M.D.N.C. 1988) ("A court has broad inherent power to stay discovery until preliminary issues can be settled which may be dispositive of some important aspect of the case."). Indeed, "[i]t is settled that entry of an order staying discovery pending determination of dispositive motions is an appropriate exercise of the court's discretion." *Chavous v. Dist. of Columbia Fin. Responsibility & Mgmt. Assistance Auth.*, 201 F.R.D. 1, 2 (D.D.C. 2001); *Nat'l Coatings & Supply Co. v. Valley Forge Ins. Co.*, No. 5:20-CV-275-M, 2020 WL 9813550, *1 (E.D.N.C. Oct. 5, 2020) ("A protective order under Rule 26(c) to stay discovery pending determination of a dispositive motion is an appropriate exercise of the court's discretion." (cleaned up)). And, staying discovery where—as here—a dispositive motion is pending before the Court "is an eminently logical means to prevent wasting the time and effort of all concerned, and

to make the most efficient use of judicial resources." *United States v. Daily Gazette Co.*, No. 2:07-0329, 2007 WL 7575700, *2 (S.D. W. Va. Oct. 18, 20017).

Factors relevant to the consideration of a stay pending resolution of a dispositive motion "include the potential for the dispositive motion to terminate all the claims in the case or all the claims against particular defendants, strong support for the dispositive motion on the merits, and irrelevancy of the discovery at issue to the dispositive motion." *Somie v. GEO Grp., Inc.*, No. 5:09-CT-3142-FL, 2011 WL 1831695, *2 (E.D.N.C. May 12, 2011). Here, all factors demonstrate why the Magistrate Judge's Order denying a stay is clearly erroneous and contrary to law.

Numerous courts, including within the Fourth Circuit, have stayed discovery when a defendant raises serious and substantial questions concerning the court's jurisdiction in a dispositive motion. *See, e.g.*, *Sheehan v. United States*, No. 5:11CV170, 2012 WL 1142709, at *1 (N.D. W. Va. 2012) (noting that because issues of subject matter jurisdiction "are purely legal," a motion to stay pending adjudication of a motion to dismiss on such grounds is warranted); *S.J. v. Lendlease (US) Public P'ship Holdings, LLC*, No. 7:21-CV-188-D, 2022 WL 138689, *2 (E.D.N.C. Jan. 13, 2022) (staying discovery pending resolution of a motion to dismiss on subject matter jurisdiction); *Bragg v. United States*, No. 2-10-0683, 2010 WL 3835080, *2 (S.D. W. Va. Sept. 29, 2010) (staying discovery pending resolution of a motion to dismiss on subject matter jurisdiction). *See also Sikhs for Justice v. Nath*, 893 F. Supp. 2d, 598, 619 (S.D.N.Y. 2012) ("Because the issue of subject matter jurisdiction is dispositive as to whether this action should proceed . . . the stay is granted."); *Estate of Paolello v. Providence Rest, Inc.*, No. 1:22-cv-9930 (JLR), 2023 WL 172200, at *1 (S.D.N.Y. Jan. 12, 2023) (finding "sufficient cause to stay this action pending decisions . . . which may bear on whether this Court has subject-matter jurisdiction over this case" (cleaned up)); *Boelter v. Hearst Commc'ns, Inc.*, No. 15 Civ. 03934 (AT), 2016

3

WL 361554, at *5 (S.D.N.Y. Jan. 28, 2016) (staying discovery pending resolution of motion to dismiss for lack of subject-matter jurisdiction where "an initial review of the arguments presented in its support suggest that none are frivolous and, because succeeding on each argument alone may warrant dismissal of . . . entire complaint"); *Hong Leong Fin. Ltd. (Singapore) v. Pinnacle Performance Ltd.*, 297 F.R.D. 69, 73–75 (S.D.N.Y. 2013) (staying discovery pending resolution of potentially dispositive motion to dismiss for lack of subject matter jurisdiction); *CC/Devas (Mauritius) Ltd. v. Air India, Ltd.*, No. 21 Civ. 5601 (PGG), 2022 WL 355759, *12 (S.D.N.Y. Feb. 4, 2022) (staying discovery pending resolution of motions to dismiss for lack of subject matter jurisdiction).

Here, Liberty University has raised First Amendment defenses going to the heart of the Court's subject matter jurisdiction. (*See* dkt. 12, 14-17 (noting that it has been settled for over 150 years that the First Amendment ecclesiastical abstention doctrine prohibits Article III courts from entertaining suits arising specifically from the religious doctrinal positions, as such decisions are exclusively within the province of the church); 24-37 (ministerial exception operates as a jurisdictional bar to suit).) Because those questions must, of necessity, be decided before proceeding to discovery or a merits determination, the Court should overrule the Magistrate Judge's Order and grant Liberty University's requested stay. *See, e.g.*, *Jones v. Am. Postal Workers Union*, 192 F.3d 417, 422 (4th Cir. 1999) ("The existence of subject matter jurisdiction is a threshold issue, which this court must address before addressing the merits of [plaintiff's] claim."); *Maret v. Jacob*, No. GJH-20-2417, 2021 WL 347841, *2 (D. Md. Feb. 2, 2021) (same).

Moreover, jurisdictional issues aside, every defense Liberty University raises in its Motion would resolve the case in its entirety. Prevailing on any one of Liberty University's five defenses would require wholesale dismissal of Plaintiff's one-count Complaint. That alone warrants a stay

4

of discovery here. Liberty University has a right not to stand trial for its religiously based employment decisions, a case dispositive matter that must be addressed prior to further pre-trial litigation. "[A] motion that may resolve the entire action, or be fully dispositive as to at least one litigant, favors a stay." *Baltimore Gas & Elec. Co. v. Rand Const. Co.*, No. 1:24-1467-RDB, 2024 WL 4349641, *3 (D. Md. Sept. 30, 2024). *See also Orr v. Nat'l Rifle Assoc. of Am.*, No. 1:17-cv-157 (GBL/MSN), 2017 WL 11501503, *2 (E.D. Va. May 19, 2017) (granting stay of discovery pending potentially dispositive motion because it will "limit unnecessary discovery"); (*Dye v. U.S. Bank. Nat'l Ass'n*, No. 3:15-cv-82-RJC, 2015 WL 5326210, *1 (W.D.N.C. Sept. 11, 2015) (staying discovery pending potentially dispositive motion to dismiss because "the pending Motion to Dismiss, if granted, would dispose of the entire case).

**B.     The Magistrate Judge Erred By Finding That Liberty University Would Suffer Only Minimal Harm Absent A Stay.**

      **1.     The Magistrate Judge erred by finding that Liberty University would suffer minimal First Amendment harm by being subjected to discovery.**

The Magistrate Judge erred by finding that Liberty University would suffer no harm under the First Amendment by being subjected to discovery (Order, 6), and in holding that its reliance on ministerial exception cases is "misplaced." (Order, 8.) The Supreme Court has stated in no uncertain terms that "loss of First Amendment freedoms, for even minimal period of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). The Magistrate Judge rejected this unquestionable legal precedent for the narrow category of discovery impositions, which is clear error and should be overruled. (Order,  6-8.)

Importantly, it is the very *process* of inquiry that Plaintiff is so eager to arrive at that works the injury on Liberty University. "Indeed, the burden-shifting framework of *McDonnell Douglas* . . . from which the prima facie case derives, is just a way of dividing intermediate evidentiary

burdens that serves to bring the litigants and the court expeditiously and fairly to this ultimate question: What *motivated* the employer's decision?" *Palmer v. Liberty Univ.*, 72 F.4th 52, 79 (4th Cir. 2023) (Richardson, J., concurring) (quoting *Tex. Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)) (emphasis original). "And that process of inquiry—not only the conclusions—is what risks entanglement, and is what we ought to steer clear of." *Id.* (quoting *NLRB v. Catholic Bishop of Chicago*, 440 U.S. 490, 502 (1979)) (cleaned up).

As Judge Richardson highlighted in *Palmer*, the injury imposed on Liberty University is being forced to submit to discovery of its religious motives while its motion to dismiss is pending. Plaintiff's desire to begin the probing inquiry and demands of discovery involves inquiries into more than just typical employment records and documents. Rather, it is

> [t]he sort of "inquiry" that entangles us in matters of faith [and] encompasses more than just digging through a religious institution's employment files and deposing its leaders. In my view . . . the mere act of *questioning* the institution's motives – even if the court ultimately decides that those motives are "pure" – cheapens its authority over ecclesiastical affairs.

*Id.* (emphasis original).

The following example provided by Judge Richardson in *Palmer*, proves the problem with Plaintiff's rationale here.

> Suppose that a Baptist church fires one of its elderly preachers, saying that his sermons weren't quite "fire-y" enough. For the previous three years, the church had consistently warned him about the problem, reporting that congregants were dozing off while he was at the pulpit. But the preacher nonetheless turns around and sues, claiming age discrimination. We would rightly dismiss that suit as barred by the First Amendment; we would not, for a moment, entertain wading into the merits of the preacher's claim. And we certainly would not deign to decide whether he was "meeting his employer's legitimate expectations" when he was let go, and thus whether he could make out a prima facie case of discrimination. We would recognize that even asking that question goes too far.

*Id.* (emphasis added).

6

Plaintiff has already informed the Court that Plaintiff intends to probe precisely these matters and to ask the Court scrutinize whether Plaintiff was "meeting his employer's legitimate expectations," *id.*, because Plaintiff has already stated that Plaintiff's purported "expectation" of continued employment – albeit, as noted *supra*, not a legitimate one – is entirely premised on Plaintiff's claimed "positive performance reviews" and a concomitant expectation of employment "long beyond" Plaintiff's revelation of fundamentally contrary religious beliefs and conduct. (*See* dkt. 25, Opp'n 12.). Moreover, Plaintiff notes that the sought-after discovery in this case will be aimed at Plaintiff's contention that Liberty University's religious beliefs are somehow a "pretext for discrimination." (Dkt. 25, Opp'n 6.). But, that desired discovery is aimed at precisely the question in Judge Richardson's example of whether the preacher was fired for being insufficiently "fire-y" or whether his lack of sizzle was a pretext for age discrimination. *Palmer*, 72 F.4th at 78. This Court should not, for a moment, consider whether that claim can proceed where – as here – Liberty University has already demonstrated that its basis for terminating Plaintiff was entirely religious. (Dkt. 12-2, Exhibit B, 1-3; dkt. 12, MTD Memorandum, 4-6.).

The Supreme Court deems any violation of a religious institutions First Amendment rights, a "drastic measure" that requires "serious examination." *Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 20 (2020). The Court held that there could be "no question" that First Amendment violations "cause irreparable harm." *Id.* "'The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Id.* at 19 (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion)).

The Magistrate Judge's Order ignores the significant constitutional implications at issue in Liberty University's Motion and compels Liberty University to proceed to discovery because "any potential hardship Liberty may face is minimal." (*See* Order, 6.) Despite the Magistrate Judge's

clearly erroneous treatment Liberty University's First Amendment concerns and painting cited Supreme Court precedent as mere suggestion, Liberty University's legitimate First Amendment rights are plainly at issue. (*See* Order, 6 ("Liberty repeatedly makes the *blanket* assertion that it would suffer a 'significant and constitutionally impermissibly hardship' in the absence of a stay because it would be 'forced' to respond to 'probing inquiries regarding its religious beliefs, mission, and employment decisions,' which is *argues* intrudes on its First Amendment religious freedoms." (emphasis added).) Liberty University's "blanket" assertion is made under the blanket of decades of First Amendment law, and that litany of First Amendment precedent compels a conclusion that Liberty University will be injured by unnecessary discovery.

Indeed, as even the Magistrate Judge recognizes, the Supreme Court has—time and again—prevented discovery when it implicated significant First Amendment rights. (Order, 6.) As the Supreme Court said decades ago, "*[i]t is hardly a novel perception that compelled disclosure of affiliation with groups engaged in advocacy may constitute [an] effective restraint on freedom of association.*" *NAACP v. Alabama*, 357 U.S. 449, 462 (1958) (emphasis added); *see also UAW v. Nat'l Right to Work Legal Def. and Educ. Found., Inc.*, 590 F.2d 1139, 1152 (D.C. Cir. 1978) (same). The premise behind this protection is that there is a "vital relationship between freedom to associate and privacy in one's association." *NAACP*, 357 U.S. at 462. Additionally, this protection extends to organizations advocating for all manner of interests. The Magistrate Judge stated that these particular First Amendment interests did not extend beyond the Free Speech Clause. (Order, 6-7.) But, as the Supreme Court noted, it is "immaterial whether the beliefs sought to be advanced by association pertain to political, economic, religious, or cultural matters." 357 U.S. at 462.

Simply put, the burden on Liberty University is significant because subjecting Liberty University to probing inquiries regarding its religious beliefs, mission, and employment decisions

represents a significant intrusion into Liberty University's First Amendment liberties. *See, e.g.*, *Blankenship v. Trump*, No. 2:19-CV-00549, 2020 WL 748874, *2 (S.D.W. Va. Feb. 13, 2020) ("the potential hardship to the defendant favors granting a stay of discovery, especially in light of the First Amendment issues involved in the case"). The Magistrate Judge's Order to the contrary ignores decades of First Amendment precedent, clearly errs, and should be overturned.

> **2.    The Magistrate Judge erred by finding that Plaintiff would suffer significant harm by virtue of a brief stay pending resolution of Liberty University's Motion to Dismiss.**

The Magistrate Judge found that Plaintiff would "face hardship by the potential spoliation of evidence and by being precluded from developing facts that would help determine whether the ministerial exception or ecclesiastical abstention doctrine apply to this case." (Order, 8.) The Magistrate Judge's conclusions regarding potential loss of evidence are clearly erroneous legally and factually and should be overturned.

First, "[u]ndue prejudice does not arise from a delay in the gathering of evidence . . . because delay is an inherent part of every stay of discovery." *NECA-IBEW Pension Trust Fund v. Bank of America Corp.*, No. 10 Civ. 440(LAK)(HBP), 2011 WL 6844456, *2 (S.D.N.Y. Dec. 29, 2011). As such, "the mere delay in Plaintiff's ability to proceed to discovery caused by the stay amounts to little, if any, prejudice." *Roa v. JPMorgan Chase Bank, N.A.*, No. 21 C 1361, 2021 WL 4927415, *1 (N.D. Ill. May 12, 2021); *Akishev v. Kapustin*, 23 F. Supp. 3d 440, 447 (D.N.J. 2014) ("Delay inherently results from the issuance of a stay, but mere delay does not, without more, necessitate a finding of undue prejudice and clear tactical advantage.").

Second, any passage of time could theoretically result in memories fading, but without more, such assertion is not sufficient to show that staying these proceedings would unduly prejudice Plaintiffs." *Orr v. Nat'l Rifle Assoc. of Am.*, No. 1:17-cv-157 (GBL/MSN), 2017 WL

11501503, *3 (E.D. Va. May 19, 2017). *See also VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1319 (Fed. Cir. 2014) ("It is undoubtedly true, as many courts have observed, that with age and the passage of time, memories may fade and witnesses may become unavailable. Without more, however, these assertions here are not sufficient to justify a conclusion of undue prejudice."); *Campbell v. Sims*, No. TDC-20-2590, 2021 WL 4342039, *4 (D. Md. Sept. 23, 2021) (rejecting plaintiff's claims that a stay was prejudicial because memories could fade because "the risk of loss of evidence is inherent in all stays").

Third, the reasons Plaintiff was terminated by Liberty University is clearly articulated in Liberty University's Motion to Dismiss, and it has been provided to the Court in its entirety. (*See* dkt. 12-2.) Even Plaintiff acknowledges that Liberty University's letter (dkt. 12-2) provides the basis for Plaintiff's termination and forms the basis of Plaintiff's entire claim. (*See* dkt. 1, Compl., ¶18 (noting that Liberty University provided Plaintiff with a letter "advising [Plaintiff] that [Plaintiff's] employment was terminated effective immediately" and that "[t]he letter makes clear" the basis for the termination).) The seminal document at issue in this case is already preserved as part of the record before the Court, and little witness testimony is necessary to establish Liberty University's basis for its termination of Plaintiff. And, where—as here—other evidence preserves the salient issues, there is no prejudice from the delay inherent in all stays. *See Campbell*, 2021 WL 4342039, at *4. As the Eastern District of Virginia noted in *Smith v. Loudoun Cnty. Pub. Schs.*, a five-year delay in litigation was not deemed prejudicial to a defendant, and when addressing the fading of witnesses' memory, because—as here—" [t]o the extent memories have faded, there is a substantial document record available to refresh recollection. No. 1:15cv956 (JCC/TCB), 2016 WL 659786, *9 (E.D. Va. Feb. 18, 2016). Thus, "there is no concern that delaying discovery might

cause case management problems as the case progresses." *Rivers v. United States*, No. 6:18-cv-61, 2020 WL 1469475, *1 (W.D. Va. Jan. 24, 2020).

Fourth, a "speculative belief that [plaintiff] risks losing access to unidentified information is not evidence that [plaintiff] will be irreparably harmed by delaying discovery," *id.* (quoting *Dimension Data N.A., Inc. v. NetStar-1, Inc.*, 226 F.R.D. 528, 532 (E.D.N.C. 2005)), and "plaintiff has not alleged that the discovery sought will be unavailable in the future or is subject to pending destruction if it is not taken now." *Id.* Rather, as this Court found in *Rivers*, the Court can remain "confident each party to this case will honor its obligations to 'preserve what it knows, or reasonably should know is reasonably likely to be requested once discovery begins." *Rivers*, 2020 WL 1469475, at *1.

The Magistrate Judge credited Plaintiff's statement that Plaintiff would honor obligations under the Federal Rules of Civil Procedure (Order, 9), while in the same breath ignoring the obligations both parties have under those same rules to preserve all of the evidence that Plaintiff and the Magistrate Judge now claim might be spoliated. There is a common law duty to "preserve relevant information when litigation is reasonably foreseeable." *Johns v. Gwinn*, 503 F. Supp. 3d 452, 462 (W.D. Va. 2020). "The duty to preserve evidence includes an obligation to identify, locate, and maintain, information that is relevant to specific, predictable, and identifiable litigation." *Charter Oak Fires Ins. Co. v. Marlow Liquors, LLC*, 908 F. Supp. 2d 673, 678 (D. Md. 2012). "Generally, it is the filing of a lawsuit that triggers the duty to preserve evidence." *Turner v. United States*, 736 F.3d 274, 282 (4th Cir. 2013). Furthermore, Fed. R. Civ. P. 37(e), explicitly mandates the preservation of electronically stored information in anticipation of litigation. Noncompliance carries severe consequences, including issuance of spoliation instructions or dismissal. Even before litigation, "[t]he broad contours of the duty to preserve … are relatively

11

clear," *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217 (S.D.N.Y. 2003), "and flow logically

from a civil litigant's obligation to disclose and produce discoverable [materials] relevant to any

party's claim or defense after a complaint is filed." *Ackerson v. Rector & Visitors of the Univ. of

Va.*, No. 3:17cv11, 2018 WL 3097346, at *6 (W.D. Va. Apr. 11, 2018) (Moon, J). The Magistrate

Judge's decision to ignore the general discovery obligations that preclude the risk of spoliation is

clear error and must be overruled.

**C.    The Magistrate Judge Erred By Admonishing Liberty University For Purportedly
        Citing Cases That Do Not Support Its Conclusion And Threatening Sanctions
        Because Liberty University Did Not Engage in Such Conduct.**

The Magistrate Judge took the extraordinary step of admonishing Liberty University for

"repeatedly citing and quoting from cases in briefing that do not support the proposition asserted."

(Order, 3 n.3.) The Magistrate Judge went so far as to suggest sanctions could be imposed on

Liberty University for this "repeated" error. This criticism is as offensive as it is erroneous, and it

must be overruled by the Court.

The Magistrate Judge's sole basis for the offensive and erroneous contention that Liberty

University repeatedly erred in its citations to authority arises from the fact that Liberty University

pointed out that it would avail itself of its right to appeal any adverse ruling on its Motion to

Dismiss. (*See* dkt. 26, 16-17.) The Magistrate Judge states, "Liberty cites to *Kennedy v. St.

Joseph's Ministries, Inc.* for the proposition that it has a right to immediately appeal the ruling on

the pending motions to dismiss. . . . That is incorrect." (Order, 3-4.) And, the Magistrate Judge's

basis for concluding that *Kennedy* does not entitle Liberty University to an immediate appeal is

that the Fourth Circuit purportedly "did not hold that the ministerial exception or ecclesiastical

abstention defenses provide religious organizations with an immediate right to interlocutory appeal

as Liberty asserts in its briefing." (Order, 4.) The Magistrate Judge's statement is incorrect both factually and legally.

**First**, contrary to the Magistrate Judge's contention, at no point in its moving papers does Liberty University state that the Fourth Circuit's *Kennedy* decision had anything to do with ecclesiastical abstention or that it explicitly stated that an immediate appeal would lie from an ecclesiastical abstention decision. What Liberty University said (dkt. 26, 17), and what the Magistrate Judge erroneously takes issue with (Order, 4), is that *Kennedy*'s holding shows why an immediate interlocutory appeal is permissible on the ministerial exceptions defenses. *It does*.

**Second,** and relatedly, Liberty University did not "cite or quote from any cases that do not support the proposition asserted." (Order, 3 n.3.) The Magistrate Judge's offensive admonition ignores the fact that binding law dictates that Title VII statutory exemptions, which were squarely at issue in *Kennedy*, are constitutionally grounded in the First Amendment. Indeed, "*Title VII's religious exemptions, though statutory, are also constitutionally inspired, implementing the First Amendment*'s command to avoid intrusive inquiry into religious belief." *Billiard v. Charlotte Cnty. High Sch.*, 101 F.4th 316, 329 (4th Cir. 2024) (quoting *Corp. for Presiding Bishop of Church of Jesus Christ of Latter-day Saints v. Amos*, 483 U.S. 327, 339 (1987)) (emphasis added). *See also Shaliehsabou v. Hebrew Home of Greater Washington, Inc.*, 363 F.3d 299, 306 (4th Cir. 2004) (noting that the statutory exemptions in Title VII "are based on constitutional principles"). And, "[w]here a statute rests on constitutional principles, constitutional avoidance becomes more illusory than real." *Billard*, 101 F.4th at 329.

Thus, if Title VII's statutory exemptions are permissible subjects for an immediate interlocutory appeal, as the Fourth Circuit held in *Kennedy*, 657 F.3d at 195, and if those statutory exemptions involve controlling that might resolve the entire case, as both the Magistrate Judge and

13

the Fourth Circuit found, (Order, 4); *Kennedy*, 657 F.3d at 195, then such an appeal is even more appropriate where—as here—the questions are constitutional in nature. Indeed, "[t]he ministerial exception is a constitutional defense," and warrants "exceptions" to ordinary prudential considerations that underlie the finality rule on appeals. *See Billard*, 101 F.4th at 327. This is even more true given the significant implications for fundamental rights, "structural concerns regarding separation of powers," *id.* at 325, the categorical prohibition on Article III courts from involving themselves in religious disputes, *id.*, and intended to avoid unconstitutional inquiry into religious beliefs. *Id.* at 329. Simply put, if the Fourth Circuit has held that Title VII's statutory exemptions are subject to immediate appeal, and those exemptions are grounded in the First Amendment, which they are, then an appeal from a denial of both plainly lies as to both.

**Third**, *Kennedy* itself demonstrates that Liberty University can avail itself of an interlocutory appeal in this matter. The Magistrate Judge notes that *Kennedy* involved a question of whether a religious institution was exempt from an employment discrimination suit "under Title VII's religious exemptions." 657 F.3d at 195. Liberty University, too, raises those exact same defenses in its Motion to Dismiss. (*See* dkt. 12, 7-14.) Thus, if an interlocutory appeal is permissible under the statutory framework and exemptions of Sections 702 and 703, as the Magistrate Judge noted was true of *Kennedy*, then Liberty University would be entitled to avail itself of that same appeal. Thus, contrary to the Magistrate Judge's contention that Liberty University's assertions concerning an appeal are "not grounded in the law" (Order, 3), its assertions about such an appeal are plainly supported by binding precedent and are correct. The Magistrate Judge's admonition and the findings that an appeal is not available to Liberty University must be overruled and the statements stricken from the record.

**Finally**, the Magistrate Judge wholly ignores the opposite side of the equation as to whether an appeal is likely from a decision adverse to Plaintiff dismissing Plaintiff's claims. In that scenario, Plaintiff is also substantially likely to appeal. (*See* dkt. 26, 16-17.) And, there is no questions that Plaintiff would have the right to appeal such a decision. As such, the Magistrate Judge ignored the fact that an interlocutory appeal is substantially likely from party against whom the motion is decided. And, because of the nature of any such appeal, the Court is going be divested of jurisdiction over the case while that appeal pends. (*See infra* Section D.)

**D.    The Magistrate Judge Erred By Concluding That An Interlocutory Appeal Would Not Divest This Court Of Jurisdiction Over The Subject Of The Interlocutory Appeal.**

The Magistrate Judge's reading of *Kennedy* not only erred in determining whether other considerations justify a temporary stay of discovery, which they do (*see* dkt. 26, 16-17), but also led to the erroneous conclusion that this Court would maintain jurisdiction of the case during pendency of appeal. (Order, 3-4.) *It would not*. The filing of a notice of appeal is an event of jurisdictional significance and consequence, and no exceptions to this general rule apply.[1]

As the Supreme Court has made clear,

a federal district court and a federal court of appeals should not attempt to assert jurisdiction over a case simultaneously. The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the courts of appeals and divests the district court of its control over those aspects of the case involved in the appeal.

---

[1] The rule of jurisdictional divestment is not without exceptions, but none of those exceptions are applicable here. "One exception is the rule that a district court does not lose jurisdiction to proceed as to matters that aid in the appeal." *Grand Jury Proceedings*, 947 F.2d at 1190. Additionally, as the Fourth Circuit has recognized, "our case law amply demonstrates [that] these exceptions are confined to a narrow class of actions that promote judicial efficiency and facilitate the division of labor between trial and appellate courts." Enumerated examples were limited to modifying injunctions, *Lytle v. Griffith*, 240 F.3d 404, 407 n.2 (4th Cir. 2001), ruling on Rule 60(b) motions, *Fobian v. Storage Tech. Corp.*, 164 F.3d 887, 890 (4th Cir. 1999), memorializing prior oral opinions, *Grand Jury Proceedings Under Seal v. United States*, 947 F.2d 1188, 1190 (4th Cir. 1991), and calculating attorney's fees, *Langham-Hill Petroleum, Inc. v. S. Fuels Co.*, 813 F.2d 1327, 1330-31 (4th Cir. 1987). *See Doe v. Public Citizen*, 749 F.3d at 258.

15

*Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982). *See also Grand Jury Proceedings Under Seal v. United States*, 947 F.2d 1188, 1190 (4th Cir. 1991) (same). Indeed, once an appeal is filed with the circuit court, it "strips the district court of jurisdiction to rule on *any matters* involved in the appeal." *Doe v. Public Citizen*, 749 F.3d 246, 258 (4th Cir. 2014) (emphasis added).

Proceeding to discovery concerning claims that are no doubt subject to the interlocutory appeal would violate *Griggs*' plain holding. Indeed, "because the district court lacks jurisdiction over 'those aspects of the case involved in the appeal,' it must necessarily lack jurisdiction over the continuation of any proceedings relating to the claims at issue." *Levin v. Alms & Assocs, Inc.*, 634 F.3d 260, 264 (4th Cir. 2011) (quoting *Griggs*, 459 U.S. at 58). "*That the present case involves only the continuation of discovery does not change that rationale. Discovery is a vital part of the litigation process and permitting discovery constitutes permitting the continuation of the litigation, over which the district court lacks jurisdiction*." *Id.* (emphasis added).

The Magistrate Judge limited the analysis to whether there is an "automatic stay" of the litigation once an interlocutory appeal is permitted under 28 U.S.C. §1292(b). (*See* Order, 4.) A general stay of discovery pending an interlocutory appeal is certainly subject to the district court's discretion under the statute. 28 U.S.C. §1292(b). But, a discretionary stay pending a traditional interlocutory appeal versus one involving threshold questions of subject matter jurisdiction compel two different conclusions. Indeed, "[s]ubject matter jurisdiction is a threshold inquiry for suit." *Reeves v. Md. Dep't of Transp., Motor Vehicle Admin.*, No. 23-2017-BAH, 2024 WL 3252975, *3 (D. Md. July , 2024) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95 (1998)). *See also Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) ("Determining the existence of subject matter jurisdiction is a threshold inquiry and a claim is properly dismissed for

16

lack of subject matter jurisdiction . . . ." (cleaned up)). Where, as here, the Court's jurisdiction is in question in a pending motion to dismiss, a stay of discovery is appropriate until that threshold inquiry is adjudicated. And, any appeal of an adverse ruling on that ground would necessarily bind up the entirety of the case concerning that threshold jurisdictional inquiry.

The Magistrate Judge's Order also ignores the larger jurisdictional problems that are at issue in allowing a case to proceed in two separate courts when the district court has been divested of jurisdiction. Here, Liberty University's Motion to Dismiss raised significant constitutional and statutory grounds for prohibiting the Court from exercising any jurisdiction against Liberty University. (*See* dkt. 12, 7-14 (noting that Sections 702 and 703 of Title VII, 42 U.S.C. §§2000e-1(a), 2000e-2(e), exempt Liberty University from employment discrimination claims as a religious institution generally, and a religious educational institution, specifically); *id.* at 14-17 (noting that the First Amendment ecclesiastical abstention doctrine precludes civil courts from exercising any jurisdiction over claims that relate to Liberty University religiously based employment decisions); *id.* at 24-37 (noting that the First Amendment ministerial exception precludes civil courts from exercising any jurisdiction over claims that relate to Liberty University religiously based employment decisions).) Under each of these defenses, Liberty University is entitled to dismissal of Plaintiff's claims against it.

A denial of Liberty University's Motion to Dismiss would require the Court to reject each of these defenses and assert jurisdiction over claims for which Liberty University alleges there is no jurisdiction. The questions at issue in Liberty University's Motion—and that would necessarily be involved in any appeal from an adverse determination of those defenses—essentially ask the fundamental question of whether the case belongs in the district court at all. In such a scenario, "the entire case is essentially 'involved in the appeal.'" *Coinbase, Inc. v. Bielski*, 599 U.S. 736,

741 (2023) (quoting *Griggs*, 459 U.S. at 58). In essence, Liberty University's defenses compel an

answer "to the question of whether 'the case should be litigated in the district court,'" which is

"the mirror image of the question presented on appeal." *Id.* (quoting *Bradford-Scott Data Corp. v.*

*Physician Computer Net., Inc.*, 128 F.3d 504, 506 (7th Cir. 1997)).

　　As such, "continuation of proceedings in the district court 'largely defeats the point of the

appeal." *Id.* (quoting *Bradford-Scott*, 128 F.3d at 505). Any potential interlocutory appeal from

either party would necessarily involve threshold questions of jurisdiction and whether Plaintiff's

claims can proceed to discovery and a merits determination at all. Permitting discovery to

commence when any such appeal is substantially likely to be filed be the party against whom it is

adjudicated "is therefore like a lock without a key, a bat without a ball, a computer without a

keyboard—in other words, not especially sensible." *Id.* This is why "the background *Griggs*

principle already requires an automatic stay of district court proceedings that relate to *any aspect*

*of the case involved in the appeal*." *Id.* at 744 (emphasis added).

　　Demonstrating even more the error of the Order, the Magistrate Judge's rationale

essentially mirrors that of the dissent in *Coinbase*. There, Justice Jackson also disfavored

application of the *Griggs* principle that interlocutory appeals divest the district court of jurisdiction

over the entire case, suggesting that the Majority turned *Griggs* into a supercharged stay rule. *Id.*

at 755 (Jackson, J., dissenting). Justice Jackson, like the Magistrate Judge, suggested that discovery

and a merits determination were not part of the general *Griggs* principle. *Id.* But, Justice Jackson's

view (reflected tacitly in the Magistrate Judge's Order) was rejected by the *Coinbase* Majority. As

Justice Jackson put it,

　　　　The majority opinion, however, transmogrifies *Griggs* into a sweeping stay of "pre-
　　　　trial and trial proceedings" on not just arbitrability, but also the merits. According
　　　　to the majority, if the question on appeal is "whether the litigation may go forward
　　　　in the district court," then the district court loses control over "*the entire case*."

> That rule far surpasses the statement in *Griggs*—the sole statement on which the
> majority relies—that a district court loses "control over those aspects of the case
> involved in the appeal." . . . Only the arbitrability order is on appeal, not the merits.
> And those matters are distinct.

*Id.* at 755 (Jackson, J, dissenting) (cleaned up).

Liberty University's defenses here are much like those involved in questions of arbitrability

(like *Coinbase*) or issues involving qualified immunity (like *Mitchell v. Forsyth*, *infra*). That is,

the defenses arise in the context of the right not to be subjected to the invasive inquiries of

discovery and trial. The Seventh Circuit's decision in *Apostol v. Gallion* is particularly instructive

on this point. 870 F.2d 1335 (7th Cir. 1989). There, the Seventh Circuit started with the *Griggs*

principle that a notice of appeal is jurisdictionally significant and deprives the district court of

jurisdiction to entertain those aspects of a case that are properly included in the scope of the appeal.

*Id.* at 1337. As is true here, the Seventh Circuit noted that "[t]he trial is inextricably tied to the

question of immunity," *id.* at 1338, so that "question on appeal . . . is whether the defendant may

be subjected to trial." *Id.* (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

> The justification for the interlocutory appeal is that the trial destroys rights created
> by the immunity. . . . It makes no sense for trial to go forward while the court of
> appeals cogitates on whether there should be one. *Griggs* says that the notice of
> appeal "divests the district court of its control over those aspects of the case
> involved in the appeal." Whether there shall be a trial is precisely the "aspect[ ] of
> the case involved in the appeal" under *Forsyth* appeal divests the district court of
> jurisdiction (that is, authority) to require the appealing defendants to appeal for trial.

*Id.* (cleaned up).

Much like qualified immunity, the ministerial exception and the Title VII exemptions

grounded in the First Amendment implicate Liberty University's right not to stand trial at all. As

the Fourth Circuit has noted, the employment decisions of religious entities are totally "'beyond

the ken of civil courts.'" *Billard*, 101 F.4th at 325 (quoting *Bell v. Presbyterian Church (U.S.A.)*,

19

126 F.3d 328, 331 (4th Cir. 1997)). As such, an appeal from any decision on that defense would necessarily involve the entirety of the case, and vice versa from any appeal of a dismissal of Plaintiff's claims. Under *Coinbase* and *Griggs*, jurisdiction over those questions and the discovery that such questions entail is divested from the Court.

Here, the question before the Court in Liberty University's Motion to Dismiss is whether the litigation may go forward" at all, and—more generally—whether it has a right not to stand trial for its religious employment decisions. (*See* dkt. 12, 7-40.) Any appeal of an adverse determination on any of those grounds would therefore deprive the Court of jurisdiction over "the entire case." *Coinbase*, 599 U.S. at 71. And, because any appeal from an adverse determination—against either party—would involve essentially the entire case, it makes little sense to proceed with discovery until the threshold questions are adjudicated. Such a stay "fosters judicial economy and guards against the confusion and inefficiency that would result if two courts simultaneously were considering the same issues." *Doe v. Public Citizen*, 746 F.3d 246, 258 (4th Cir. 2014). Thus, this Court should overrule the Magistrate Judge and order the proceedings stayed pending resolution of Liberty University's motion to dismiss.

## <u>CONCLUSION</u>

For the foregoing reasons, and for those articulated in Liberty University's Memorandum (dkt. 26) and its Reply (dkt. 30), the Court should overrule the Magistrate Judge and grant Liberty University's Motion to Stay discovery pending resolution of its motion to dismiss.

Respectfully submitted,

/s/ Daniel J. Schmid
Mathew D. Staver*
Horatio G. Mihet*
Daniel J. Schmid (VA Bar 84415)
*Attorneys for Defendant Liberty University, Inc.*
LIBERTY COUNSEL
P.O. Box 540774
Orlando, FL 32854
Phone: (407) 875-1776
Email: court@LC.org
       hmihet@LC.org
       dschmid@LC.org

*Admitted pro hac vice

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of January, 2025 I caused a true and correct copy of

the foregoing to be electronically filed with this Court. Service will be effectuated on all counsel

of record via this Court's ECF/electronic notification system.

/s/ Daniel J. Schmid
Daniel J. Schmid