IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Lynchburg Division

| | | |
|---|---|---|
| **ELLENOR ZINSKI,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Case No. **6:24-cv-41-NKM** |
| | ) | |
| **LIBERTY UNIVERSITY, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**DEFENDANT LIBERTY UNIVERSITY'S MEMORANDUM IN
SUPPORT OF MOTION TO CERTIFY
INTERLOCUTORY APPEAL ON ORDER DENYING MOTION TO DISMISS**

**and**

**REQUEST FOR EXPEDITED CONSIDERATION**

Pursuant to 28 U.S.C. §1292(b) and Local Rule 11(c), Defendant, Liberty University, Inc. ("Liberty University"), hereby files this Memorandum of Law in Support of its Motion to Certify Order (ECF No. 38) denying Liberty University's Motion to Dismiss for an interlocutory appeal.[1]

---

[1]  The Court's decision is subject to immediate interlocutory appeal under the collateral order doctrine. *See, e.g.*, *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949); *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100 (2009). Liberty University's appeal involves disputed questions of law, are separate from the merits of Plaintiff's claims, and cannot be effectively reviewed after its First Amendment rights have been violated with discovery and a trial. *See In re Grand Jury Subpoenas*, 87 F.4th 229 (4th Cir. 2023) ("Under this doctrine, such non-final orders may be immediately reviewed when they: "(1) conclusively determine a disputed question, (2) resolve an important issue completely separate from the merits of the action, and (3) are effectively unreviewable on appeal from a final judgment." (citing *Cobra Nat. Res., LLC v. Fed. Mine Safety & Health Rev. Comm'n*, 742 F.3d 82, 86 (4th Cir. 2014)). As such, simultaneously with the instant Motion, Liberty University has filed a Notice of Appeal under the collateral order doctrine. Out of an abundance of caution, and to ensure compliance with the timing requirements of 28 U.S.C. §1292(b), Rules 4 and 5 of the Federal Rules of Appellate Procedure, Liberty University advances both the instant Motion and the Notice of Appeal, contending that each are separate and independent bases upon which the Fourth Circuit can take jurisdiction over Liberty University's interlocutory appeal.

## **INTRODUCTION**

On February 21, 2025, the Court entered its Memorandum Opinion (ECF No. 37) and Order (ECF No. 38) denying Defendant Liberty University's Motion to Dismiss. (ECF No. 11.) The Court noted that the parties "do not dispute the central premise" that Liberty University terminated Zinski's employment or the reason for that termination (ECF No. 37, at 1), but that the University's Motion to Dismiss (and the Court's Order adjudicating that Motion) was centered on whether Title VII proscribes Liberty University from terminating an employee who claims to be a gender different than that employee's chromosomal and biological reality and "whether Liberty may claim any statutory or constitutional defenses to Title VII liability" on the basis of its sincerely held religious beliefs and religious doctrinal positions. (ECF No. 37, at 1.) The Court's decision on each of these points involves pure questions of law concerning statutory and constitutional interpretation, and each involves substantial grounds for difference of opinion. The Motion should be granted, and Liberty University's appeal certified under Section 1292(b).

> **A.     The Court's Title VII Discussion Demonstrates Questions of Law for which there is Substantial Ground for Difference of Opinion.**

In its discussion of the issues surrounding Liberty University's Motion to Dismiss, the Court recognized that "few facts" were necessary for the adjudication of Liberty University's defenses. (ECF No. 37, at 3.) In other words, the questions surrounding Liberty University's Motion to Dismiss were pure legal questions surrounding a matter that has not yet been conclusively determined by the Fourth Circuit or Supreme Court. (*See id.* at 6 ("Several of [Liberty University's] defenses present questions of first impression in the Fourth Circuit."); *id.* at 8 ("Liberty's arguments present a novel question of law in the Fourth Circuit: whether Sections 702 and 703 entitled a religious employer to discriminate on the basis of transgender status when such discrimination accords with the employer's religious beliefs and could plausibly constitute

2

religious discrimination."); *id.* at 20 (noting that Liberty University's Section 702 and 703 defenses involve questions "of first impression, unanswered by [prior Fourth Circuit precedent]").)

As to the questions for which there is a potential difference of opinion, the Court explicitly noted that even the statute appears "torn between two competing purposes," and that the Court was not persuaded that "the Fourth Circuit caselaw on this issue is fully developed or intended to be dispositive of this dispute." (ECF No. 37, at 11-12.) In fact, the Court noted that the Fourth Circuit's prior precedent on this question "sheds little light on what it means for discrimination to occur on a <u>religious basis</u>." (*Id.* at 17 (emphasis original).) Further expounding on this premise, the Court noted that the Fourth Circuit's precedent "does not address, at any granular level, how Title VII should apply where a religious institution's employment decision plausibly constitutes religious discrimination and sex discrimination alike." (*Id.*) It likewise noted that the plain text of the statutory exemptions in Sections 702 and 703 appear to be ambiguous and not directly dispositive of Liberty University's defenses. (*Id.* at 26.) Finally, the Court noted that the question involved was primarily, if not exclusively, one of pure statutory interpretation as to Sections 702 and 703. (*Id.* at 28 ("we conclude that the statute is inconclusive as to the meaning of persons 'of a particular religion.'").)

The Court further concluded that many of the arguments raised by Liberty University in its Motion to Dismiss "carry substantial weight" and that there are federal judges who have adopted the approach taken by Liberty University. (ECF No. 37, at 30.) When discussing the various interpretations of Title VII's exemptions, one held by Liberty University and one held by Plaintiff, it noted "both [are] reasonable" and that "neither interpretation persuades us to the exclusion of the other." (*Id.* at 31.) Though *Bostock v. Clayton County*, 590 U.S. 644 (2020) purported to address *some* of the issues raised by Plaintiff's Complaint here, the Court noted that even "*Bostock*

3

does not address the issue before us" because "*Bostock* does not address the applicability of Sections 702 and 703." (ECF No. 37, at 35-36.)

The Court admits the interpretation and application of Sections 702 and 703 to the instant case is a matter that has split the circuits. (EF No. 37, at 38 (noting the circuit split).)

### B.      The Court's RFRA Discussion Demonstrates Questions of Law for which there is Substantial Ground for Difference of Opinion.

As to whether the Religious Freedom Restoration Act can be applied as a defense to litigation between private parties, the Court noted that this, too, was a question of first impression in the Fourth Circuit. (ECF No. 37, at 42 (noting that neither the Supreme Court nor the Fourth Circuit has "directly addressed this element of the statute").) And, despite this lack of precise precedent controlling the proper interpretation of RFRA, the Court "acknowledge[d] that this theory of decision creates an awkward result," which permits a RFRA defense from a defendant when the EEOC brings a Title VII employment discrimination claim on behalf of an employee but does not permit the same defense, in an identical proceeding, with an identical Title VII discrimination claim brought by a private party. (*Id.*) On RFRA's application to claims such as those raised by Liberty University here, the Court also noted that there is a circuit split on the issue that has resulted in grounds for difference of opinion. (*Id.* at 42.)

### C.      The Court's Constitutional Discussion Demonstrates Questions of Law for which there is Substantial Ground for Difference of Opinion.

As to Liberty University's constitutional defenses, the Court likewise noted that some constitutional defenses present unique questions of first impression in the Fourth Circuit. (ECF No. 37, at 54 ("Noting that the Fourth Circuit has not issued further guidance on the collision of Title VII and expressive association, we find that this question presents a question of first impression for this Court and the Fourth Circuit.").

4

**ARGUMENT**

Interlocutory decisions of this Court that may not be otherwise appealable under the final judgment rule, 28 U.S.C. §1291, may be certified on an interlocutory basis if the order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal may materially advance the ultimate termination of the litigation." 28 U.S.C. §1292(b). This Court's decision easily satisfies the criteria for certification of an immediate interlocutory appeal.

**I.   BINDING PRECEDENT FROM THE FOURTH CIRCUIT REQUIRES A FINDING THAT LIBERTY UNIVERSITY'S TITLE VII STATUTORY EXEMPTIONS ARE SUBJECT TO SECTION 1292(b) APPEAL.**

The Fourth Circuit has unequivocally held that orders involving Title VII's statutory exemptions for religious organizations, 42 U.S.C. §2000e-1 and 42 U.S.C. §2000e-2(a), "clearly satisfy[y]" the requirements of Section 1292(b). *Kennedy v. St. Joseph's Ministries, Inc.*, 657 F.3d 189, 195 (4th Cir. 2011). Sections 702 and 703 of Title VII plainly, as a matter of binding precedent, involve "pure questions of law" and the "resolution of it terminates the case." *Id.* Liberty University's Motion to Dismiss (ECF No. 11) was substantially grounded on these exemptions, and the Court's adjudication of those defenses admittedly involved pure questions of law with substantial grounds for difference of opinion. The instant Motion should be granted.

**A.   Sections 702 and 703 Involve Controlling Questions of Law.**

A "controlling question of law" under Section 1292(b) is "a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine." *Clark Const. Grp., Inc. v. Allglass Sys., Inc.*, 2005 WL 736606, *2 (D. Md. Mar. 30, 2005) (quoting *Ahrenholz v. Bd. of Trustees of the Univ. of Ill.*, 219 F.3d 674, 676 (7th Cir. 2000)). *See also Kennedy v. Villa St.*

5

*Catherine, Inc.*, 2010 WL 9009364, *1 (D. Md. June 16, 2010), *rev'd in part sub nom Kennedy v. St. Joseph's Ministries, Inc.*, 657 F.3d 189 (4th Cir. 2011) (same).

In *Kennedy*, the district court noted that "the Order addressed whether a statute, 42 U.S.C. §2000e-1(a), exempts a religious institution from liability when the religious discrimination it purportedly commits take the form of religious harassment." 2010 WL 9009364, at *1. In other words, the District of Maryland was faced with the question of the proper interpretation of Section 702 of Title VII and its application in a particular termination decision. *Id.* The court unequivocally held that the proper interpretation of Section 702 is a controlling question of law. *See id.* ("It is clear that in this case the question posed is indeed a controlling question of law."). The Fourth Circuit affirmed that conclusion with equal clarity. *See Kennedy*, 657 F.3d at 195 (noting that "the requirements of Section 1292(b) are clearly satisfied in this case").

Here, because Liberty University has raised Sections 702 and 703 as a defense to Plaintiff's claims, the proper interpretation of those defenses presents pure questions of law identical to that certified for an appeal in *Kennedy*. Indeed, as the Court's own order recognized, to adjudicate Liberty University's Motion to Dismiss on Sections 702 and 703, the Court was necessarily required to review "the statutory text," "draw from legislative history," and "interpret[] the statute." (ECF No. 37, at 25.) In other words, this Court's decision plainly noted that adjudication of Liberty University's defenses involved "a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine." *Clark Const. Grp., Inc. v. Allglass Sys., Inc.*, 2005 WL 736606, *2. Moreover, as the Court explicitly noted, its adjudication of Liberty University's Motion to Dismissed required "few facts." (ECF No. 37, at 3.) The Court's Order involves a controlling question of law which "clearly satisfies" the requirements of Section 1292(b). *Kennedy*, 657 F.3d at 195.

### B. There Is Substantial Ground for Difference of Opinion with the Court's Construction of Sections 702 and 703.

#### 1. The settled law on this question is unclear and the Fourth Circuit has not addressed this issue yet, so there is substantial ground for difference of opinion as to the Court's interpretation of Sections 702 and 703.

Courts frequently find substantial grounds for a difference of opinion where, as the Court recognized here (ECF No. 37, at 38), "the court of appeals of the circuit has not spoken on the issue," or also—as here—novel and difficult questions of first impression are presented." *Ekstrom v. Congressional Bank*, 2021 WL 119000, *3 (D. Md. Jan. 13, 2021) (quoting *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010). *See also Bradley v. DentalPlans.com*, 2024 WL 5158791, *6 (D. Md. Dec. 18, 2024) (same); *Franklin v. Clea AI Inc.*, 2024 WL 4457975, *5 (D. Md. Oct. 10, 2024) (same). Put another way, "[i]f controlling law is unclear, there may be substantial grounds for difference of opinion for purposes of §1292(b)." *Int'l Refugee Assistance Project v. Trump*, 404 F. Supp. 3d 946, 950 (D. Md. 2019) (quoting *Couch*, 611 F.3d at 633). *See also Doe v. Dewees*, 2022 WL 2195187, *2 (D. Md. June 17, 2022) (same).

Here, as the Court recognized (ECF No. 37, at 38), there is a substantial ground for difference of opinion. While it is certainly true that questions of first impression do not *alone* warrant a finding of substantial grounds for disagreement, *Kennedy*, 2010 WL 9009364, *2, that is not all that is present in Liberty University's motion. The Supreme Court made clear in *Bostock v. Clayton County*, "worries about how Title VII may intersect with religious liberties" gave the Court "deep concern [about] preserving the promise of the free exercise of religion enshrined in our Constitution." 590 U.S. 644, 681-82 (2020) (cleaned up). And, the Court specifically noted that the "express statutory exception for religious organizations" would "*in other cases* . . . merit careful consideration." *Id.* at 682. Indeed, how the Title VII statutory exemptions and the other free exercise defenses "protecting religious liberty interact with Title VII are questions for future

7

cases." *Id.* at 682. Thus, while noting the significant concern for ensuring Title VII's guarantees of religious exercise remains robust, it preserved those questions for a case in which it was directly implicated. This is that case.

Moreover, here, this Court recognized that Liberty University's interpretation of Sections 702 and 703 are the "most textually faithful" to the exemptions of Title VII. (ECF No. 37, at 31.) If Liberty University raised the most textually faithful interpretation of the relevant statutory provisions (a textually faithful conclusion that has been followed by a host of other Article III jurists), yet received a different opinion from the Court on that very interpretation, there are plainly legitimate grounds for difference of opinion between the statute's plain language and its interpretation by various courts.

Given that many courts and judges have reached a different conclusion, the Supreme Court explicitly left open the question at issue, and the Court's own recognition of the textual validity of Liberty University's arguments, there is no doubt substantial grounds for difference of opinion exists under Section 1292(b). Judges and litigants alike have reached contrary conclusions concerning the same question, and there is no binding and conclusive answer to it yet. An immediate appeal would facilitate the quest for clarity on this pure question of law to which there is substantial grounds for difference of opinion.

> **2. Court have disagreed as to what the law is on the question of Sections 702 and 703 of Title VII, warranting a finding of substantial ground for difference of opinion.**

Substantial grounds for difference of opinion exists "if a difference of opinion exists *between courts* on a given controlling question of law, creating the need for interlocutory appeal to resolve the split or clarify the law." *KPMG Peat Marwick, L.L.P. v. Estate of Nelco, Ltd., Inc.*, 250 B.R. 74, 82 (E.D. Va. 2000) (emphasis original). "What matters is whether courts

8

themselves disagree as to what the law is." *Id.* at 83. *See also In re Nichols*, 2014 WL 4094340, *3 (D. Md. Aug. 15, 2014) (same). This is true of the proper interpretation and application of Sections 702 and 703 of Title VII.

As the Court noted (ECF No. 37, at 38), other courts and judges have adopted the identical position to Liberty University here and argued that a religious institution is wholly exempt from Title VII employment claims when the employment-related decision arose from or was connected to its religious beliefs. *See, e.g.*, *Billiard v. Charlotte Catholic High School*, 101 F.4th 316, 335 (4th Cir. 2024) (King, J.) ("a straightforward reading of § 702 of Title VII bars Billard's [sex] discrimination claim."); *Starkey v. Roman Catholic Archdiocese of Indianapolis, Inc.*, 41 F.4th 931, 946 (7th Cir. 2022) (Easterbrook, J., concurring); *Fitzgerald v. Roncalli High Sch., Inc.*, 73 F.4th 529, 534 (7th Cir. 2023) (Brennan, J., concurring) ("So when the exemption applies, all of Title VII drops out." (cleaned up)); *EEOC v. Mississippi Coll.*, 626 F.2d 477, 485 (5th Cir. 1980). Nevertheless, this Court and others have adopted a completely contrary decision on that question. In other words, courts have wrestled with and disagreed about what the law is surrounding Title VII's statutory exemptions. Those separate conclusions *alone* demonstrate substantial grounds for difference of opinion.inion.inion.inion.inion.inion.inion.

> **3. Because Liberty University's defenses involve fundamental First Amendment rights and there is substantial public interest in the correctness of the interpretation, a substantial ground for difference of opinion exists.**

A substantial ground for difference of opinion is also frequently found where—as here—the issue involves fundamental rights. *See Kennedy*, 2010 WL 90099364, *3. And, when such a question is involved, courts have found—despite maintaining the correctness of the underlying order—that interlocutory review was appropriate.

9

>Congress clearly intended to have a protective zone around religious organizations to prevent government entanglement in the internal affairs of religious organizations, and if this case marches forward to its ultimate resolution through trial, which in all likelihood would encompass testimony about religious beliefs, that would be the type of entanglement Congress intended to avoid by enacting the exemption. While I remain convinced of the correctness of the conclusions of law set forth in the April 30, 2010 Order, I recognize that denying the request for an interlocutory appeal and requiring the case to proceed to a final conclusion in this Court permits government intervention into a religious organization. Therefore, I am persuaded that this case presents the sort of unique situation where substantial grounds for difference may be found by virtue of the strong public policy purpose served by 42 U.S.C. § 2000e–1(a), and despite the fact that this Court's order appears to be one of first impression not only in this Circuit but in the entire country. Accordingly, I find that there is "substantial ground for difference of opinion," *see* 28 U.S.C. § 1292(b), and that the second element has been met.

*Id.*

This is particularly true where—as here—there is "a substantial public interest in getting a definitive answer to the question presented." *Hirsch v. Blue Cross & Blue Shield of Md., Inc.*, 1991 WL 502004, *6 (D. Md. Dec. 26, 1991). Thus, "although this Court does not doubt that its decision is correct, there are substantial grounds for a difference of opinion," and when that is true, "even a slight basis for disagreement may suffice to justify certification." *Id.*

Here, not only did the Court's decision involve significant public interest issues and its own admitted grappling with statutory interpretation, but the Court explicitly noted that it was required to "consider the consequences" of its decision (ECF No. 37, at 25) and that its decision could have an impact on hundreds if thousands of people. (ECF No. 37, at 40 & n.42.) In other words, there is significant public policy ramifications, public interest, and fundamental rights all at play in this matter. Each finding warrants granting this Motion.

    **C.**    **The Resolution of Liberty University's Sections 702 and 703 Would Materially Advance the Termination of the Litigation.**

Controlling questions of law that have the potential to materially advance the termination of the litigation are "narrow question[s] of pure law whose resolution will be completely

10

dispositive of the litigation, either in a legal or practical way, whichever way it goes." *Fannin v. CSX Transp. Inc.*, 873 F.2d 1438, *5 (4th Cir. 1989). *See also KPMG Peat Marwick, L.L.P. v. Estate of Nelco, Ltd., Inc.*, 250 B.R. 74, 78 (E.D. Va. 2000) (same). Put another way, "the appellate court's resolution of the controlling question of law should 'serve to avoid a trial or otherwise substantially shorten the litigation.'" *Kennedy*, 2010 WL 9009364, *4 (quoting *Clark Const.*, 2005 WL 736606, *4)). Here, there is no question that an immediate interlocutory appeal decided in Liberty University's favor would materially advance the termination of the litigation. Indeed, if Liberty University's interpretation of Sections 702 and 703 are correct, then—as Judge Easterbrook held—"all of Title VII drops out." *Starkey*, 41 F.4th at 946. And, if Title VII's statutory provisions wholly exempt Liberty University from liability for any claim made on the basis of its religion—which it does—then there would be no trial on Plaintiff's claims. As such, the Fourth Circuit's and Supreme Court's answer to the underlying interpretation of the statute would be dispositive of the entire litigation, and that is true of the Title VII issues regardless of which way those decisions interpret Sections 702 and 703 of Title VII.

\*　　\*　　\*

Liberty University's Title VII defenses, which require the proper interpretation and application of Sections 702 and 703 of Title VII, 42 U.S.C. §2000e-1 and 42 U.S.C. §2000e-2(a), are pure questions of law for which there is substantial ground for difference of opinion, and the resolution of that defense would be dispositive of the entire case. Simply put, the requirements of certifying a. interlocutory appeal under Section 1292(b) are "clearly satisfied." *Kennedy*, 657 F.3d at 195. Liberty University's Motion should be granted.

11

## II. THIS COURT'S ORDER MAKES CLEAR THAT LIBERTY UNIVERSITY'S OTHER BASES FOR APPEAL SATISFY SECTION 1292(b).

Though there is no binding precedent in the Fourth Circuit conclusively establishing—as *Kennedy* did for Sections 702 and 703 of Title VII—Liberty University's other defenses as immediately appealable under Section 1292(b), the Fourth Circuit has made clear that it "would not necessarily be limited to only those questions expressly or implicitly identified as controlling," but—rather—"would be free to consider all grounds properly advanced in the district court for and against the order." *Fannin v. CSX Trans., Inc.*, 873 F.2d 1438, *3 (4th Cir. 1989). Indeed, a certified appeal under Section 1292 is to the Court's order, not the "isolated legal questions" involved in the order. *Miller v. Bolger*, 802 F.2d 660, 666 (3d Cir. 1986). *See also Walsh v. Ford Motor Co.*, 807 F.2d 1000, n.2 (D.C. Cir. 1986) (holding that Section 1292(b) "explicitly provides, however, that the appeal is from an *order* of the district court, not from the particular question that the district court found controlling. We are therefore called upon to decide an appeal, not a single question of law. Accordingly, we must decide *all* questions of law necessary to the proper disposition of this appeal." (emphasis original).) Thus, Liberty University's First Amendment, expressive association, and RFRA defenses should all be certified for interlocutory appeal.

### A. This Court's Determination Of Liberty University's First Amendment Association Claims Satisfies Section 1292(b).

As to the Court's decision on Liberty University's First Amendment expressive association defenses, that analysis itself satisfies Section 1292(b). As to Liberty University's constitutional defenses, the Court likewise noted that some constitutional defenses present unique questions of first impression in the Fourth Circuit. (ECF No. 37, at 54 ("Noting that the Fourth Circuit has not issued further guidance on the collision of Title VII and expressive association, we find that this question presents a question of first impression for this Court and the Fourth Circuit."). And, there

12

are certainly cases that have reached contrary conclusions to the Court's concerning whether a religious entity may terminate an employee whose religious beliefs contradict the religious mission of the institution. *E.g.*, *Slattery v. Hochul*, 61 F.4th 278 (2d Cir. 2023); *Darren Patterson Christian Academy v. Roy*, 699 F. Supp. 3d 1163, 1184-85 (D. Colo. 2023); *Bear Creek Bible Church v. EEOC*, 571 F. Supp. 3d 571, (N.D. Tex. 2021), *aff'd in part Braidwood Mgmt., Inc. v. EEOC*, 70 F.4th 914 (5th Cir. 2023). Thus, the appeal involves a controlling question of law that is subject to a difference of opinion among federal courts, and its resolution would terminate the instant litigation.

      **B.    This Court's Determination Of Liberty University's Religious Freedom Restoration Act Defenses Satisfies Section 1292(b).**

Liberty University's RFRA defense is likewise subject to certification under Section 1292(b). As the Court noted, RFRA's application in this type of litigation is a question of first impression in the Fourth Circuit. (ECF No. 37, at 42 (noting that neither the Supreme Court nor the Fourth Circuit has "directly addressed this element of the statute").) And, despite this lack of precise precedent controlling the proper interpretation of RFRA, the Court "acknowledge[d] that this theory of decision creates an awkward result," which permits a RFRA defense from a defendant when the EEOC brings an claim but does not permit the same defense, in an identical proceeding, with identical claims brought by a private party. (*Id.*)

On RFRA's application to claims such as those raised by Liberty University here, the Court also noted that there is a circuit split on the issue that has resulted in grounds for difference of opinion. (*Id.* at 42.) And, there are substantial grounds to believe that RFRA does apply in suits between private parties for the same "awkward results" that adjudicating it differently would produce. *See, e.g.*, *EEOC v. Catholic Univ. of Am.*, 83 F.3d 455 (D.C. Cir. 1996); *Hankins v. Lyght*, 441 F.3d 96 (2d Cir. 2006).

13

## CONCLUSION

Because the Court's decision on Liberty University's Motion to Dismiss involves controlling questions of law for which there is a substantial ground for different opinions, and ultimate adjudication of those issues would materially advance the termination of this litigation, the Court should certify its Memorandum Opinion (ECF No. 37) and Order (ECF No. 38) for an immediate interlocutory appeal.

Respectfully submitted,

/s/ Daniel J. Schmid
Mathew D. Staver*
Horatio G. Mihet*
Daniel J. Schmid (VA Bar 84415)
*Attorneys for Defendant Liberty University, Inc.*
LIBERTY COUNSEL
P.O. Box 540774
Orlando, FL 32854
Phone: (407) 875-1776
Email: court@LC.org
          hmihet@LC.org
          dschmid@LC.org

*Admitted pro hac vice

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of March, 2025, I caused a true and correct copy of the foregoing to be electronically filed with this Court. Service will be effectuated on all counsel of record via this Court's ECF/electronic notification system.

/s/ Daniel J. Schmid
Daniel J. Schmid