CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
4/3/2025
LAURA A. AUSTIN, CLERK
BY: s/ CARMEN AMOS
       DEPUTY CLERK

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
## LYNCHBURG DIVISION

| | |
|---|---|
| ELLENOR ZINSKI,<br><br>        *Plaintiff,*<br><br>v.<br><br>LIBERTY UNIVERSITY, INC.,<br><br>        *Defendant.* | CASE NO. 6:24-cv-00041<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

  Plaintiff Ellenor Zinski sues her former employer, Defendant Liberty University, asserting one count of sex discrimination in violation of Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e *et seq*. After Liberty moved to dismiss Zinksi's complaint based on various statutory and constitutional defenses, this Court denied Liberty's motion on all grounds. *See* Dkt. 38 (order denying motion to dismiss). However, the Court acknowledged that Liberty's motion presented several challenging questions of law for this District and the Fourth Circuit. *See* Dkt. 37 (memorandum opinion).

  Liberty now moves to certify the Court's order for interlocutory appeal under 28 U.S.C. § 1292(b). *See* Dkt. 41 (motion); Dkt. 42 (brief in support). Separately and contemporaneously, Liberty appeals to the Fourth Circuit, contending that interlocutory review is appropriate based on the collateral order doctrine.[1] Upon review of Liberty's motion to certify, as explained below,

---

[1] *See* Dkt. 42, n.1 ("The Court's decision is subject to immediate interlocutory appeal under the collateral order doctrine. Liberty University's appeal involves disputed questions of law, are separate from the merits of Plaintiff's claims, and cannot be effectively reviewed after its First Amendment rights have been violated with discovery and a trial.") (citing *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949); *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100 (2009); *In re Grand Jury Subpoenas*, 87 F.4th 229 (4th Cir. 2023)).

the Court **GRANTS** Liberty's motion, Dkt. 41, and will **certify its prior order** for interlocutory appeal to the Fourth Circuit.

I.  **LEGAL FRAMEWORK**

    **A.  Section 1292(b) Serves as an Exception to the Final Judgment Rule**

Generally, federal appellate courts have jurisdiction only over appeals which arise from *final* decisions of lower courts. *See* 28 U.S.C. § 1291 ("The courts of appeals . . . shall have jurisdiction of appeals from all *final* decisions of the district courts of the United States.") (emphasis added). This principle, known as the final judgment rule, contemplates that "piecemeal review of decisions . . . [is] to be avoided," since decisions can be "more efficiently reviewed together in one appeal from the final judgments." *James v. Jacobson*, 6 F.3d 233, 237 (4th Cir. 1993). A final judgment is one which "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 467 (1978) (cleaned up).

However, there are two exceptions to this general rule: (i) interlocutory appeals provided by statute, and (ii) the collateral order doctrine.

As to interlocutory appeals, 28 U.S.C. § 1292(b) provides that a district court may certify a non-final order for interlocutory appeal when the court finds that the order sought for appeal involves (1) a controlling question of law (2) about which there is substantial ground for difference of opinion and (3) an immediate appeal therefrom may materially advance the termination of the litigation. *See* 28 U.S.C. § 1292(b); *see also Katz v. Carte Blanche Corp.*, 496 F.2d 747, 753–54 (3d Cir.1974) (discussing the legislative history of interlocutory appeals).

Because interlocutory appeals represent an exception to the general rule of appellate litigation, certification is "not to be granted lightly." *Fannin v. CSX Transp., Inc.*, 1989 WL

2

42583, at *2 (4th Cir. Apr. 26, 1989) (unpublished) (per curiam). Section 1292(b) should be used "sparingly," and "its requirements must be strictly construed." *U.S. ex rel. Michaels v. Agape Senior Community, Inc.*, 848 F.3d 330, 340 (4th Cir. 2017). A district court has discretion over a motion to certify in the first instance, and certification by a district court, in turn, "does not require [the appellate court] to grant leave to appeal." *Fannin*, 1989 WL 42583, at *2. Interlocutory review is an "extraordinary remedy, which may be granted or denied at the sole discretion of the court of appeals." *Id*.

### B. Substantive Elements of Section 1292(b)

As noted above, the party seeking certification must demonstrate that the order sought for appeal involves (1) a controlling question of law (2) about which there is substantial ground for difference of opinion and (3) an immediate appeal therefrom may materially advance the termination of the litigation. *See* 28 U.S.C. § 1292(b).

#### 1. Controlling Question of Law

First, a question must be "controlling." In order for a question to be controlling, "the district court must actually have decided such question." *Virginia ex rel. Integra Rec LLC v. Countrywide Sec. Corp.*, 2015 WL 3540473, at *5 (E.D. Va. June 3, 2015). Controlling questions are those "whose resolution will be completely dispositive of the litigation, either as a legal or practical matter, whichever way it goes." *Fannin*, 1989 WL 42583, at *5. "Conversely, a question of law would not be controlling 'if the litigation would necessarily continue regardless of how that question were decided." *Virginia ex rel. Integra Rec LLC*, 2015 WL 3540473, at *4 (quoting *Wyeth v. Sandoz, Inc.*, 703 F.Supp.2d 508, 525 (E.D.N.C.2010)).

Second, the question must be a "narrow question of pure law." *Fannin*, 1989 WL 42583, at *5. Where a question of law is "heavily freighted with the necessity for factual assessment,"

such a question is "usually improper for interlocutory review. *Id.*; *see, e.g., In re Jemsek Clinic, P.A.*, 2011 WL 3841608, at *3 (W.D.N.C. Aug. 30, 2011) (finding that a question was not a pure question of law when it was "grounded in the specific facts of the case, and [could not] be divorced from those facts"). Pure questions of law, in other words, are those "matters [which] the court of appeals can decide quickly and cleanly without having to study the record." *Long v. CPI Sec. Sys., Inc.*, 2013 WL 3761078, at *2 (W.D.N.C. July 16, 2013) (internal citations omitted).

2. Substantial Ground for Difference of Opinion

"A substantial ground for difference of opinion exists if there is a genuine doubt as to the correct legal standard to be applied." *Gilmore v. Jones*, 2019 WL 4417490, at *4 (W.D. Va. Sept. 16, 2019) (citing S. *U.S. Trade Ass'n v. Unidentified Parties*, 2011 WL 2790182, at *2 (E.D. La. July 14, 2011)). But it must be the "courts, as opposed to parties, [which] disagree on a controlling legal issue." *Lynn v. Monarch Recovery Mgmt. Inc.*, 953 F. Supp. 2d 612, 624 (D. Md. 2013). Amongst courts, "[a] mere lack of unanimity, or opposing decisions outside of the governing circuit, need not persuade a court that a substantial ground for disagreement exists." *Virginia ex rel. Integra Rec, LLC.*, 2015 WL 3540473, at *5. Nor do cases of first impression necessarily create a substantial ground for difference of opinion. *Kennedy v. Villa St. Catherine, Inc.*, 2010 WL 9009364, at *2 (D. Md. June 16, 2010). Rather, a substantial ground for difference of opinion may exist "if there is a 'novel and difficult issue of first impression,' or if there is a circuit split and the controlling circuit has not commented on the conflicting issue." *Hatch v. Demayo*, 2018 WL 4688390, at *2 (M.D.N.C. Sept. 29, 2018) (quoting *Cooke-Bates v. Bayer Corp.*, 2010 WL 4789838, at *2 (E.D. Va. Nov. 16, 2010)).

3. Advance the Ultimate Termination of the Litigation

Finally, the party seeking interlocutory appeal must establish that certification would

4

"materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Congress passed Section 1292(b) at least in part to promote efficiency in the federal court system and to avoid "protracted and expensive litigation." *U. S. Rubber Co. v. Wright*, 359 F.2d 784, 785 (9th Cir. 1966) (citing legislative history of § 1292(b)). Similar to the threshold requirement for a "controlling" question of law, this includes shortening the time that will be later required for trial. *See* 16 Fed. Prac. & Proc. Juris. § 3930 (3d ed.) ("If present appeal promises to advance the time for trial or to shorten the time required for trial, appeal is appropriate."); *see, e.g., Montgomery v. Johnson*, 2008 WL 5422866, at *1 (W.D. Va. Dec. 30, 2008); *Univ. of Virginia Patent Found. v. Gen. Elec. Co.*, 792 F. Supp. 2d 904, 910 (W.D. Va. 2011).

However, "[t]he mere fact that [the resolution of the question sought to be certified] . . . **may** save pre-trial and trial effort and expense is not determinative," since that "can be said of any interlocutory appeal." *Fannin*, 1989 WL 42583, at *5 (citation omitted) (emphasis in original). Thus, courts analyzing the third element of Section 1292(b) should focus on whether interlocutory review "might avoid *protracted* and *expensive* litigation." *Xoom, Inc. v. Imageline, Inc.*, 1999 WL 1611444, at *1 (E.D. Va. Sept. 3, 1999) (citations omitted) (emphasis added); *see In re Va. Elec. & Power Co.*, 539 F.2d 357, 364 (4th Cir.1976) (finding interlocutory appeal would advance the ultimate termination of the litigation because the decision would prevent needless waste of "much time, expense and effort").

### C. Notes on Procedure

If the district court does not certify its order contemporaneously, the court may amend the order later to include the certification. *See* Fed. R. App. P. 5(a)(3). Once the district court certifies an order for interlocutory appeal, the appellant has ten days after the entry of the certification to petition the court of appeals for review. *Id*. § 1292(b); *see also Myles v. Laffitte*,

881 F.2d 125, 127 (4th Cir. 1989) (holding that failure to file within the prescribed ten day period deprives the appellate court of jurisdiction to consider the appeal). A party's application for interlocutory appeal does not stay proceedings in the district court "unless the district judge or the Court of Appeals or a judge thereof shall so order." *Id*. § 1292(b).

After electing to exercise jurisdiction over an interlocutory appeal, the appellate court's jurisdiction "applies to the *order* certified to the court of appeals, and is not tied to the particular question formulated by the district court." *Smith v. Murphy*, 634 Fed. Appx. 914, 915 (4th Cir. 2015) (unpublished) (quoting *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 205 (1996)) (emphasis in original). The appellate court may address "any issue fairly included within the certified order because it is the order that is appealable, and not the controlling question identified by the district court." *Yamaha Motor Corp.,* 516 U.S. at 205 (internal quotations omitted).

## II. DISCUSSION

Liberty seeks to certify the Court's order on the grounds that it involved three controlling questions of law which satisfy the elements of Section 1292(b). Specifically, Liberty contends that the following questions, directly addressed by the Court's prior order and opinion, satisfy the statute:

(1) Whether Sections 702 and 703 of Title VII permit religious organizations to discriminate on the basis of transgender status;

(2) Whether the Religious Freedom Restoration Act applies to suits between private parties; and

(3) Whether requiring Liberty to employ a transgender person (and/or subjecting Liberty to Title VII for failure to do so) violates Liberty's First Amendment freedom of

expressive association.

To each of these questions, the Court's prior order and opinion answered in the negative. We now must determine whether any of them satisfy the requirements of Section 1292(b). As explained herein, we conclude that the first question, regarding Sections 702 and 703 of Title VII, alone satisfies the statute and is appropriate for interlocutory appeal. Accordingly, the Court will certify its order pursuant to Section 1292(b).

### A. Sections 702 and 703 of Title VII

The first question is whether Sections 702 and 703 of Title VII permit religious organizations to discriminate on the basis of transgender status. The Court previously found for Zinksi on this issue and answered in the negative. *See* Dkt. 37 at 37 ("[W]e conclude that Sections 702 and 703 must be narrowly construed so as to permit discrimination only on the basis of an employee's espoused religious belief or practice . . . . Where a religious employer discriminates on the basis of any other protected class in a but-for fashion, a statutory violation occurs, even if the decision was religiously motivated.").

We now conclude that this question constitutes a controlling question of law generating a substantial difference of opinion, the resolution of which by the Fourth Circuit may terminate this litigation.

#### 1. Controlling Question of Law

As to the first requirement of Section 1292(b), we are easily persuaded that this question is a "controlling question of law." First, it is **controlling** because (i) the Court "actually [] decided" the issue, *Virginia ex rel. Integra Rec LLC*, 2015 WL 3540473, at *5, and, (ii) had the Court reached the opposite result—*i.e.*, by deciding that Sections 702 and 703 <u>do</u> exempt religious institutions from the sex discrimination provisions of Title VII—Liberty would be

7

wholly immune from liability. In other words, resolution of this question in Liberty's favor is "completely dispositive of the litigation." *Fannin*, 1989 WL 42583, at *5.

Second, this question is a **pure question of law**. To apply Sections 702 and 703 in this case (or, to decide that these provisions did *not* apply), the Court engaged in extensive statutory interpretation and analyzed the statutory text, legislative history, and relevant caselaw. *See* Dkt. 37, Part III. The Court's inquiry required little to no assessment of the record, other than the limited inquiry necessary to determine whether Title VII and its exemptions were relevant at a threshold level. Namely, the Court needed only determine that Zinksi plausibly alleged that she is a transgender woman who was fired for her transgender status (prompting Title VII's sex discrimination provision), and that Liberty is a religious institution (prompting Sections 702 and 703). These facts were not even in dispute. From there, our analysis turned strictly on the law.

Accordingly, we find that the application of Sections 702 and 703 in this case is a controlling question of law.

### 2. Substantial Ground for Difference of Opinion

Whether this question generates a "substantial ground for difference of opinion" is a harder task. On one hand, this Court acknowledges that "genuine doubt" exists as to the correct legal standard to be applied. As we noted in our opinion, (i) the relevant statutory provisions are susceptible to multiple interpretations, (ii) the legislative history supports our decision but has been rendered less apt by subsequent judicial construction of the statute,[2] (iii) laudable policy outcomes exist on both sides, and (iv) the Fourth Circuit has stated that the question is one of first impression in its jurisdiction. *See Billard v. Charlotte Catholic High Sch.*, 101 F.4th 316,

---

[2] *See Bostock v. Clayton Cnty., Ga*, 590 U.S. 644 (2020) (holding that the Title VII term "sex," as written in 1964, encompasses transgender status).

328 (4th Cir. 2024) (in explaining its decision not to rule on Title VII grounds, stating that Sections 702 and 703 present "novel and complex statutory" questions). These factors, both as a matter of litigation and jurisprudence, strongly suggest that this is no ordinary question, and that genuine doubt exists as to its correct resolution.

On the other hand, evidence of a substantial ground for difference of opinion must generally arise from court decisions. And even then, "[a] mere lack of unanimity, or opposing decisions outside of the governing circuit, need not persuade a court that a substantial ground for disagreement exists." *Virginia ex rel. Integra Rec, LLC.*, 2015 WL 3540473, at *5. Here, no majority of a federal circuit court has endorsed Liberty's view of the issue. Nor has any district court in this circuit supported Liberty's view. The district courts in this circuit which have addressed the issue have held the same as this Court, finding that Sections 702 and 703 do not permit religious institutions to engage in sex discrimination under the banner of religious belief. *See Billard v. Charlotte Catholic High Sch.*, 2021 WL 4037431, at *7 (W.D.N.C. Sept. 3, 2021), *rev'd and remanded on other grounds*, 101 F.4th 316 (4th Cir. 2024); *Doe v. Catholic Relief Services*, 618 F. Supp. 3d 244, 253 (D. Md. 2022), *opinion vacated in part on reconsideration on other grounds*, 2023 WL 155243 (D. Md. Jan. 11, 2023). Finally, the fact that the question is a matter of first impression, as acknowledged by the Fourth Circuit, does not alone create a substantial ground for difference of opinion. *Kennedy*, 2010 WL 9009364, at *2.

Accordingly, the Court is left to weigh these competing considerations. We are ultimately persuaded that this question generates a "substantial ground for difference of opinion" based on the writings of the Fourth Circuit and the Supreme Court. The Fourth Circuit acknowledged that no federal appellate court has yet endorsed Liberty's view of the issue, but, it added, "**that does not mean that the claim is easily dismissed.**" *Billard*, 101 F.4th at 328. The Court noted the

9

dissent of Judge King, who stated that a plaintiff who was fired by a religious school for being gay has no claim for sex discrimination under a "straightforward reading of [Section] 702 of Title VII." *Billard*, 101 F.4th at 335 (King, J., dissenting in part and concurring in the judgment) (citing *Starkey v. Roman Cath. Archdiocese of Indianapolis, Inc.*, 41 F.4th 931, 946 (7th Cir. 2022) (Easterbrook, J., concurring)). Judge King's dissent directly supports Liberty's view and evinces that, within the bench of the Fourth Circuit, disagreement exists as to the correct resolution of this question. Meanwhile, the Court also pointed to the compelling, "separate writings" from Judge Easterbrook and Judge Brennan in the Seventh Circuit. *Id.* at 328 (citing *Starkey*, 41 F.4th at 945-47 (Easterbrook, J., concurring); *Fitzgerald v. Roncalli High Sch., Inc.*, 73 F.4th 529, 534-35 (7th Cir. 2023) (Brennan, J., concurring)). These judges' opinions largely mirror the view of Judge King (or vice versa). And although not binding on this circuit, these opinions demonstrate that other federal appellate courts currently wrestle with the same issue.

As to the Supreme Court, the Court in *Bostock* presaged that while "[f]iring employees because of a statutorily protected trait" surely counts as discrimination, it left for "future cases" whether such action might "find justification[] under other provisions of Title VII." *Bostock v. Clayton Cnty.*, 590 U.S. 644, 681 (2020). Furthermore, the Court observed that "Congress included an express statutory exception for religious organizations," *id*. at 682 (citing Section 702), and it warned that how other doctrines "protecting religious liberty interact with Title VII are questions for future cases, too." *Id*. These observations from *Bostock* do not explicitly endorse Liberty's view, as the writings of Judges King, Easterbrook, and Brennan do. But the Court still signals that the issue before us awaits final resolution in "future cases," thereby suggesting that any interim resolution of the issue by lower courts is provisional. Such a warning would not likely accompany this issue if there were no grounds for disagreement.

Together, the writings of the Fourth Circuit and the Supreme Court indicate that courts—rather than just parties—harbor substantial differences of opinion on this question. We therefore conclude that the second element of Section 1292(b) is satisfied.

### 3. Advance the Ultimate End of Litigation

Similar to our analysis of the first element, we conclude that certification of this question would "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Zinksi's sole claim in this litigation is that Liberty violated Title VII by engaging in sex discrimination, and the question to be certified is whether Liberty may be exempt from the prohibition on sex discrimination under Sections 702 and/or 703 as a religious institution. Thus, resolution of this question in Liberty's favor would be "completely dispositive of the litigation." *Fannin*, 1989 WL 42583, at *5. "The mere fact" that resolution of this question "**may** save pre-trial and trial effort and expense" is not "determinative," since that "can be said of any interlocutory appeal." *Fannin*, 1989 WL 42583, at *5 (emphasis in original). But there is no "may" in this case. It is a near certainty that Liberty would be saved from significant pre-trial effort and expense if the Fourth Circuit were to reverse—since Liberty would be thus exempt from Title VII scrutiny as a matter of law, under its view of the case. Though "other possible outcomes exist," "**it is enough that appeal may lead to a possible terminus for the case.**" *Kennedy*, 2010 WL 9009364, at *4 (emphasis added).

Accordingly, we find that this question satisfies the third element of Section 1292(b).

\*\*\*

Therefore, the Court concludes that the proper interpretation of Sections 702 and 703 is (1) a controlling question of law (2) about which there is substantial ground for difference of opinion and (3) an immediate appeal therefrom may materially advance the termination of the

litigation. *See* 28 U.S.C. § 1292(b).

### B. Religious Freedom Restoration Act

Unlike the preceding question regarding Sections 702 and 703, scarce support exists for the claim that the Religious Freedom Restoration Act (RFRA) applies to suits between private parties. *See* Dkt. 37 at 42 ("Although neither the Supreme Court nor the Fourth Circuit has directly addressed this element in the statute, the Fourth Circuit has observed that 'the great weight of court authority' holds RFRA to be inactionable between private parties.") (quoting *Billard v. Charlotte Catholic High Sch.*, 101 F.4th 316, 324 (4th Cir. 2024)). We therefore conclude that a "substantial ground for difference of opinion" does not exist on this question.

### C. First Amendment Freedom of Expressive Association

Finally, unlike the question regarding Sections 702 and 703, the Court's analysis of Liberty's expressive association interest in this case was (and remains) significantly fact bound. *See* Dkt. 37 at 62 ("*[O]n the record before us*, . . . we conclude that Liberty's continued employment of Zinksi does not significantly burden Liberty's ability to maintain its views and associate for its expressed purposes.") (emphasis added). We therefore find that it is not a "question of law" suitable for interlocutory appeal.

### III. Conclusion

For the foregoing reasons, the Court concludes that its prior order, Dkt. 38, involves a controlling question of law that satisfies the requirements of Section 1292(b). The Court therefore **GRANTS** Liberty's motion for interlocutory appeal. *See* Dkt. 41 (motion). By amendment and re-publication in the CM/ECF system, the Court will certify Dkt. 38 for interlocutory appeal to the Fourth Circuit. *See* Fed. R. App. P. 5(a)(3).

The Clerk of Court is directed to send a copy of this Memorandum Opinion to the parties.

Entered this 3rd day of April, 2025.

                                           NORMAN K. MOON
                                           SENIOR UNITED STATES DISTRICT JUDGE